**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 1 9 2019

JAMES W. McCORMACK, CLERK

By:_____ **DEP CLERK**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

Farm Credit Leasing Services Corporation,

        Plaintiff,

  v.

Todd Weldon Smith,

        Defendant.

Case No.: \_

**COMPLAINT**  4:19-cv-280-KGB

### INTRODUCTION

    Plaintiff Farm Credit Leasing Services Corporation ("Farm Credit Leasing"), as and for its Complaint against Defendant Todd Weldon Smith ("Defendant"), states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

    1.    Farm Credit Leasing is a federally chartered instrumentality of the United States with its principal place of business at 1665 Utica Avenue South, Suite 400, Minneapolis, Minnesota 55416.

    2.    Defendant is an individual citizen of the State of Arkansas residing at 138 Baxley Road, McRae, Arkansas 72102.

    3.    This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and the parties are citizens of different states.

    4.    Venue is appropriate in the Eastern District of Arkansas pursuant to 28 U.S.C. § 1391 because the Defendant resides, and the personal property at issue is located, in this district.

### FACTS COMMON TO ALL COUNTS

    5.    Farm Credit Leasing is engaged, among other things, in the business of leasing equipment and other personal property to businesses and sole proprietors in the agriculture

1

This case assigned to District Judge Baker
and to Magistrate Judge Harris

industry. Defendant is a customer of Farm Credit Leasing who obtained possession of agriculture equipment from Farm Credit Leasing pursuant to certain commercial equipment lease agreements.

<div align="center">The Master Lease</div>

6.      On or about July 24, 2017, Defendant entered into a lease agreement with Farm Credit Leasing as evidenced by that certain Lease Agreement dated on July 24, 2017, executed and delivered by Defendant in favor of Farm Credit Leasing (the "Master Lease"), for the purpose of leasing certain equipment more specifically identified in related lease schedules, pursuant to the terms and conditions as more specifically identified therein. A true and correct copy of the Master Lease is attached as **Exhibit 1** and is incorporated by reference.

7.      According to Paragraph 8 of the Master Lease, Defendant agreed that the equipment would remain at the address identified in the applicable lease schedule and that, according to Paragraph 9 of the Master Lease, "all Equipment[1] will only be used in [Defendant's] trade or business . . . in accordance with applicable operating instructions, laws, government regulations, and applicable insurance policies."

8.      Pursuant to Paragraph 18 of the Master Lease, Defendant shall be in default if he:

- Shall fail to pay all or any part of a rental payment or any other payment within 10 days after due and payable;

- Shall be in material default under any other agreement executed with Farm Credit Leasing at any time; or

- Shall be in material default under any obligation for the payment of borrowed money, for the deferred purchase price of property or any payment under any lease agreement.

---

[1] As defined herein.

CORE/3009126.0221/151706605.1

9.      Paragraph 19 of the Master Lease further provides that upon a default, Farm Credit Leasing shall have the right, in its sole discretion, to exercise its remedies, which include but are not limited to:

- Declaring the entire amount of rental and other charges due and to become due hereunder for the entire Lease Term immediately due and payable;

- Taking immediate possession of any and all Equipment without notice;

- Selling or leasing any Equipment or otherwise disposing, holding, or using such Equipment at Farm Credit Leasing's sole discretion;

- Demanding payment of all costs incurred by Farm Credit Leasing in the course of correcting any default (including attorneys' fees and costs);

- Exercising any other right or remedy available to Farm Credit Leasing under the Uniform Commercial Code or any other applicable law; and

- Recovering from Defendant an amount equal to the sum of:

  - Any accrued and unpaid rentals as of the date Farm Credit Leasing obtains possession of the Equipment following Defendant's default; plus

  - The present value of all future rentals reserved in the Lease[2] and contracted to be paid over the unexpired term of the Lease discounted at a rate equal to the 6 month U.S. Treasury Bill rate as of the repossession date; plus

  - All costs and expenses incurred by Farm Credit Leasing in any repossession, recovery, storage, repair, sale, re-lease, or other disposition of the Equipment including reasonable attorney's fees resulting from Defendant's default; plus

  - The present value of the estimated residual value of the Equipment as of the expiration of the Lease, discounted at a rate equal to the 6 month U.S. Treasury Bill Rate as of the

---

[2] As defined therein.

repossession date; less the amount received by Farm Credit Leasing upon the sale or re-lease of the Equipment, if any.

<u>The 88777 Schedule</u>

10.     On or about July 24, 2017, Defendant entered into a lease schedule with Farm Credit Leasing in connection with the Master Lease, as evidenced by that certain Schedule A identified as contract 001-0088777-000 dated on July 24, 2017, executed and delivered by Defendant in favor of Farm Credit Leasing (the "88777 Schedule"), for the purpose of leasing a 2015 Deutz Fahr Agrotron Tractor, model number 7250, serial number WSXV910200ID01109 (the "88777 Tractor"), pursuant to the terms and conditions as more specifically identified therein. A true and correct copy of the 88777 Schedule is attached as **<u>Exhibit 2</u>** and is incorporated by reference.

11.     Pursuant to the 88777 Schedule, Defendant agreed to make one payment of $47,700.00 in July 2017, followed by five consecutive annual payments of $46,829.17 commencing in July 2018. According to the plain language of the Master Lease and 88777 Schedule, Defendant's right to possession of the 88777 Tractor expires upon the earlier of Defendant defaulting on the Master Lease or 88777 Schedule, or Farm Credit Leasing's receipt of Defendant's final lease payment at the end of the term in August 2022. Defendant agreed to an end-of-lease residual and purchase option price of $1.00.

12.     To perfect its interest in the 88777 Tractor, on or about July 25, 2017, Farm Credit Leasing caused a UCC-1 Financing Statement identifying the 88777 Tractor to be filed with the Arkansas Secretary of State, file number 40000152664452 (the "88777 Financing Statement"). A true and correct copy of the 88777 Financing Statement is attached as **<u>Exhibit 3</u>** and is incorporated by reference.

4

13.     Defendant failed to adhere to his payment obligations under the 88777 Schedule and is in default. Accordingly, and pursuant to the terms and conditions set forth in the Master Lease, Farm Credit Leasing is entitled to recover the amounts due under the terms of the 88777 Schedule, as of January 4, 2019, of not less than $238,361.49, in addition to prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred, and Farm Credit Leasing is entitled to recover the 88777 Tractor.

<div align="center">The 16538 Lease</div>

14.     On or about August 1, 2017, Defendant entered into an equipment lease agreement with Northland Capital Financial Services, LLC ("Northland Capital") as evidenced by that certain Equipment Master Lease Agreement dated August 1, 2017, identified as contract number 16538-001, executed and delivered by Defendant in favor of Northland Capital (the "16538 Lease"; collectively with the Master Lease and 88777 Schedule, the "Leases"), for the purpose of leasing a 2015 Deutz Fahr Agrotron Tractor, model number 7250, serial number WSXV910200ID10724 (the "16538 Tractor"; together with the 88777 Tractor, the "Equipment"), pursuant to the terms and conditions as are more specifically identified therein. A true and correct copy of the 16538 Lease is attached as **Exhibit 4** and is incorporated by reference.

15.     Subsequent to entering the 16538 Lease, Northland Capital assigned the 16538 Lease to Farm Credit Leasing as evidenced by that certain Participation Agreement by and between Northland Capital and Farm Credit Leasing dated July 14, 2009, and that certain Participation Certificate identifying the 16538 Tractor. A true and correct copy of the Participation Certificate evidencing the assignment to Farm Credit Leasing is attached as **Exhibit 5** and is incorporated by reference.

<div align="center">5</div>

16.     According to Paragraph 8 of the 16538 Lease, Defendant agreed that he will "cause the Equipment[3] to be installed, operated and maintained: (i) SOLELY FOR BUSINESS AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (ii) only in the ordinary course of [Defendant's] business . . . (iv) in accordance with applicable manuals and instructions . . . ."

17.     According to Paragraph 9 of the 16538 Lease, Defendant agreed that the 16538 Tractor would remain at the address identified in the 16538 Lease.

18.     Pursuant to Paragraph 16 of the 16538 Lease, Defendant shall be in default if:

- He fails to pay rent or any other sum to be paid under the 16538 Lease as and when due; or

- An event of default shall occur under any Lease or other obligation Defendant owes to Farm Credit Leasing.

19.     Paragraph 17 of the 16538 Lease further provides that upon a default, Farm Credit Leasing shall have the right, in its sole discretion, to exercise its remedies, which include but are not limited to:

- Declaring all amounts payable and to become payable to be immediately due and payable and to exercise all rights and remedies available in the 16538 Lease or otherwise available by law;

- Proceeding by appropriate court actions to enforce performance by Defendant or to recover from Defendant any and all damages and expenses which Farm Credit Leasing sustains by reason of Defendant's default or on account of Farm Credit Leasing's enforcement of remedies under the 16538 Lease, including without limitation reasonable attorneys' fees; and

- Taking possession of or disabling the 16538 Tractor.

---

[3] As defined herein.

CORE/3009126.0221/151706605.1

20.     Pursuant to the 16538 Lease, Defendant agreed to make one payment of $50,000.00 in August 2017, followed by five consecutive annual payments of $46,481.68 commencing in July 2018. According to the plain language of the 16538 Lease, Defendant's right to possession of the 16538 Tractor expires upon the earlier of the Defendant defaulting on the 16538 Lease, or Farm Credit Leasing's receipt of Defendant's final lease payment at the end of the term in July 2022. Defendant agreed to an end-of-lease residual and purchase option price of $101.00.

21.     To perfect its interest in the 16538 Tractor, a UCC-1 Financing Statement identifying the 16538 Tractor was filed with the Arkansas Secretary of State on August 29, 2017, file number 40000154575899 (the "16538 Financing Statement"). A true and correct copy of the 16538 Financing Statement is attached as **Exhibit 6** and is incorporated by reference.

22.     Defendant failed to adhere to his payment obligations under the 16538 Lease and is in default. Accordingly, and pursuant to the terms and conditions set forth in the 16538 Lease, Farm Credit Leasing is entitled to recover the amounts due under the terms of the 16538 Lease, as of January 4, 2019, of not less than $232,509.40, in addition to prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred, and Farm Credit Leasing is entitled to recover the 16538 Tractor.

### Defendant's Defaults

23.     As a consequence of Defendant's defaults, Farm Credit Leasing issued a Notice of Default to Defendant's counsel on January 24, 2019. Defendant failed to cure the defaults. A true and correct copy of the Notice of Default is attached as **Exhibit 7** and is incorporated by reference.

7

24.     Defendant is in default and is in breach of the Leases. Consequently, Farm Credit Leasing is entitled to exercise its remedies afforded under the Leases and state and federal law. Such remedies include, without limitation, recovering the total amounts due under the terms of the Leases as of January 4, 2019, of not less than $470,870.89, plus prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred, and taking possession of the Equipment.

## COUNT I
## BREACH OF CONTRACT

25.     Farm Credit Leasing restates, realleges, and adopts by reference all allegations contained in Paragraphs 1 through 24 as though fully set forth herein.

26.     Farm Credit Leasing and Defendant are parties to the Leases, each of which constitutes an enforceable contract.

27.     Farm Credit Leasing has performed all conditions precedent as required of it pursuant to the Leases.

28.     Defendant has breached the Leases by failing to make the required payments due to Farm Credit Leasing.

29.     As a direct and proximate result of Defendant's ongoing and uncured defaults, Farm Credit Leasing has suffered damages as of January 4, 2019, of not less than $470,870.89, plus prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred, and it is entitled to possession of the Equipment.

## COUNT II
## ALTERNATIVE COUNT - UNJUST ENRICHMENT

30.     Farm Credit Leasing restates, realleges, and adopts by reference all allegations contained in Paragraphs 1 through 29 as though fully set forth herein.

8

31.     Farm Credit Leasing leased the Equipment to Defendant, who received and utilized, and continues to utilize, the Equipment.

32.     Demand has been made for payment but Defendant has failed and refused to make payment.

33.     As a result, Defendant has been unjustly enriched in the amount as of January 4, 2019, of not less than $470,870.89, plus prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred, and it would be unjust for Defendant to retain the benefits received from Farm Credit Leasing without payment.

<div align="center">

**COUNT III**
**CLAIM FOR REPLEVIN PURSUANT TO ARK. CODE ANN. § 18-60-801, et seq.**
**AND FED. R. CIV. P. 64**

</div>

34.     Farm Credit Leasing restates, realleges, and adopts by reference all allegations contained in Paragraphs 1 through 33 as though fully set forth herein.

35.     Pursuant to the terms and conditions of the Leases, Farm Credit Leasing is entitled to possession of the Equipment upon a default of Defendant's obligations to Farm Credit Leasing.

36.     Defendant took possession of the Equipment at or about the time he signed acceptance certificates, as evidenced by that certain: (a) Delivery and Acceptance Certificate for the 88777 Tractor, executed by Defendant and dated July 24, 2017; and (b) Delivery and Acceptance Certificate for the 16538 Tractor, executed by Defendant and dated August 25, 2017 (collectively, the "Delivery Certificates"). True and correct copies of the Delivery Certificates are attached as **Exhibit 8** and is incorporated by reference.

37.     Defendant is in breach of his obligations under the Leases by virtue of his failure to make payments to Farm Credit Leasing.

<div align="center">9</div>

38.     Defendant has not cured the defaults under the Leases.

39.     By virtue of Defendant's breach of his obligations under the Leases, Defendant is no longer entitled to use and possess the Equipment, he is wrongfully detaining it, he is seriously impairing Farm Credit Leasing's ownership interest in the Equipment, and he is using the Equipment in a manner that is inconsistent with the parties' contractual arrangement.

40.     The Equipment can be easily transferred, disassembled, separated, moved at will, concealed in numerous locations, and sold, all of which to frustrate the exercise of Farm Credit Leasing's bargained-for remedies.

41.     The Equipment is of such a nature that it will depreciate in value through continued use and as it ages. Thus, its resale value will steadily decline as it is used over a period of time. Farm Credit Leasing therefore expects that if Defendant continues to possess and use the Equipment, the value of Farm Credit Leasing's interest in the Equipment will steadily and irretrievably erode, which harms Farm Credit Leasing and its efforts to recover and preserve the economic usefulness of the Equipment.

42.     Farm Credit Leasing is entitled to an order (i) directing Defendant to deliver, or cause to be delivered, the Equipment to a location to be designated by Farm Credit Leasing, or such other locations as agreed by the parties; (ii) directing that the Equipment be immediately and permanently seized and taken from the possession of Defendant; and (iii) directing that the Equipment be delivered to Farm Credit Leasing or its designated agent.

## **PRAYER FOR RELIEF**

WHEREFORE, Farm Credit Leasing prays that the Court:

A.     Enter a judgment and order directing Defendant to deliver, or cause to be delivered, the Equipment to a location to be designated by Farm Credit Leasing or the Court;

B.    Enter a judgment and seizure order directing law enforcement to seize the Equipment and deliver possession to Farm Credit Leasing or its agent;

C.    Enter a judgment and order granting Farm Credit Leasing the exclusive right to possession of the Equipment;

D.    Enter a judgment and order declaring that Farm Credit Leasing is allowed to dispose of the Equipment;

E.    Subject to the disposition of the Equipment, enter judgment against Defendant and in favor of Farm Credit Leasing for damages for Defendant's breach of the Leases and/or unjust enrichment in an amount to be proven at trial, but not less than, as of January 4, 2019, $470,870.89, plus prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred; and

F.    Award Farm Credit Leasing such other and further relief as the Court deems just and equitable.

Dated: April *18*, 2019          By: _____
                                      Henry C. Shelton, III (2010015)
                                      ADAMS AND REESE LLP
                                      6075 Poplar Avenue, Suite 700
                                      Memphis, Tennessee 38819
                                      (901) 524-5271
                                      hank.shelton@arlaw.com

                                 **ATTORNEYS FOR FARM CREDIT LEASING
                                 SERVICES CORPORATION**

# Exhibit 1

 **COBANK**™

**Lease Agreement**
Customer Number: ████9576

600 Highway 169 South, Suite 300
Minneapolis, MN 55426

Dated as of:  July 24, 2017

**Lessor and Lessee have executed this Lease Agreement,** and hereby agree to the terms contained below and in any attachments made a part of this Lease Agreement.

This Lease and the attachments hereto constitute the entire agreement of the parties with respect to the leasing of the Equipment and the other subject matter of this Lease. This Lease supersedes all prior written and/or oral understandings or agreements with respect to the subject matter hereof; and no change, modification, addition, or termination of this Lease shall be enforceable unless in writing and signed by Lessor and Lessee.

**Lessor: FARM CREDIT LEASING SERVICES CORPORATION**

By:

| _Tanya Simmer_ | **Tanya Simmer** | **Supervisor, Leasing Delivery Services** |
|---|---|---|
| *Signature* | *Name* | *Title* |

**Address:**
600 Highway 169 South, Suite 300
Minneapolis, MN 55426

**Lessee(s): TODD W. SMITH**

| _Todd W. Smith_ | **Todd W. Smith** | **Individual** |
|---|---|---|
| *Signature* | *Name* | *Title* |

**Address:**
138 Baxley Road
McRae, ARKANSAS 72102

STATE OF INCORPORATION/ORGANIZATION:  ARKANSAS

In consideration of the mutual covenants hereinafter contained, the parties hereby agree as follows:

1. LEASE OF EQUIPMENT. Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, subject to the terms of this Lease Agreement ("Lease" or "Lease Agreement"), the equipment and other property (collectively, the "Equipment", any one Item of which may be referred to individually as an "Item of Equipment") described in any Schedule A ("Schedule A") executed by Lessor and Lessee and made a part hereof. Lessee hereby authorizes Lessor to include in any Schedule A the serial number and other information identifying the Equipment when determined by Lessor. Time is of the essence in Lessee's payment and performance of each of its obligations under this Lease.

Each such Schedule A when executed by the parties shall be deemed to be a part of this Lease, it being understood and agreed that this Lease shall be a Master Lease. All Schedules, addenda or other attachments to this Lease executed by Lessor and Lessee are hereby incorporated herein and made a part hereof. Each Schedule A, incorporating the terms and conditions of this Lease, shall constitute a separate instrument of lease.

2. RENTALS/LEASE TERM. Lessee agrees to pay Lessor rentals for each Item of Equipment leased under this Lease as set forth in the Schedule A applicable to such Item of Equipment. All rentals shall be payable as described to Lessor at Lessor's mailing address set forth in such Schedule A, or to such other person or at such other place as Lessor may from time to time designate in writing. "Scheduled Lease Commencement Date" for purposes of this Lease shall be the first day of the month following the In-Service Date; provided, however, in the event the Daily Billing Option is selected on the applicable Schedule A, the Scheduled Lease Commencement Date shall be the In-Service Date. "In-Service Date" shall be the date Equipment is delivered and accepted by Lessee for lease as provided herein. The "Scheduled Lease Term" shall be as set forth in the applicable Schedule A. Rentals for each Item of Equipment shall commence on the Scheduled Lease Commencement Date with respect to each Item of Equipment. If the In-Service Date occurs prior to the Scheduled Lease Commencement Date, Lessor shall be entitled to a rental ("Interim Rent") for the period from such In-Service Date to the Scheduled Lease Commencement Date (the "Interim Period"). Interim Rent shall be computed by dividing all rentals other than Interim Rent due under the Lease by the actual number of days in the Scheduled Lease Term and multiplying this result by the actual number of days from In-Service Date to Scheduled Lease Commencement Date. Interim Rent (if any) shall be due on the Scheduled Lease Commencement Date. The Scheduled Lease Term, including any Minimum Term as described in Paragraph 3 below, together with the Interim Period, if any, and any renewal period(s) shall constitute the Lease Term ("Lease Term") for each Item of Equipment. Lessee agrees to pay Lessor at the expiration or other termination of the Lease Term, additional rents, as described in the Schedule A or any other document executed in connection with this Lease. The termination of this Lease with respect to certain Items of Equipment shall not affect the continuation of this Lease with respect to other Items of Equipment not subject to such termination. Unless otherwise provided in the event the Lessee exercises the option to renew the Lease, rentals for the renewal period shall be agreed to by the parties at the time of renewal.

3. MINIMUM LEASE TERM. The Minimum Lease Term, if any, ("Minimum Term") shall be set forth in the Schedule A for each Item of Equipment and shall commence on the Scheduled Lease Commencement Date. If the Minimum Term is less than the

Scheduled Lease Term, upon completion of the Minimum Term, the Lessee is deemed to have continued the Lease on a month-to-month basis, until completion of the Scheduled Lease Term unless the Lessee notifies the Lessor in writing 60 days prior to the end of the Minimum Term that it desires to terminate the Lease.

4. FLOATING RENTAL RATE. Notwithstanding any provision to the contrary contained in Paragraph 2 above, if Floating Rate is specified on the Schedule A applicable to an Item of Equipment, the Lessee's rental obligation for such Item of Equipment shall be adjusted at each rental due date based on the Index specified on such Schedule A. Rental adjustments will be calculated based on monthly changes in the index up or down. Monthly changes in the index and the outstanding lease balance for each Item of Equipment will be used to compute an adjusted rental amount. Rental adjustments will be compounded and accumulated monthly and billed to the Lessee based on the Rental frequency specified on the appropriate Schedule A.

5. LATE CHARGES. If Lessee fails to pay any rental or other amount required to be paid by Lessee to Lessor, within 5 days after the due date thereof, Lessee shall (in addition to all other amounts due Lessor) pay Lessor the lesser of 1.5% per month, or, if less, the maximum amount allowed by law until paid on such unpaid amounts.

6. SECURITY DEPOSIT. If a Security Deposit amount is specified in the Schedule A, Lessee agrees to pay such amount to Lessor prior to the Scheduled Lease Commencement Date. If Lessee has fulfilled all terms and conditions herein, the Security Deposit shall be returned to Lessee without interest or it may be applied to any purchase option exercised by Lessee at the expiration of the Lease.

7. NO WARRANTIES/LESSEE'S OBLIGATIONS (VENDOR NOT AN AGENT).LESSEE ACKNOWLEDGES THAT: LESSOR IS NOT THE MANUFACTURER OF THE EQUIPMENT NOR THE MANUFACTURER'S AGENT NOR A DEALER THEREIN; THE EQUIPMENT IS OF A SIZE, DESIGN, CAPACITY, DESCRIPTION AND MANUFACTURE SELECTED BY LESSEE; LESSEE IS SATISFIED THAT THE EQUIPMENT IS SUITABLE AND FIT FOR ITS PURPOSES; LESSOR HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF THE EQUIPMENT, ITS FITNESS FOR ANY PARTICULAR PURPOSE, THE QUALITY OR CAPACITY OF THE MATERIALS IN THE EQUIPMENT OR WORKMANSHIP IN THE EQUIPMENT NOR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER; LESSOR SHALL NOT BE LIABLE TO LESSEE AND LESSEE HEREBY WAIVES ANY CLAIM IT MAY HAVE AGAINST LESSOR FOR ANY LOSS, DAMAGE (CONSEQUENTIAL OR OTHERWISE) OR EXPENSE CAUSED DIRECTLY OR INDIRECTLY BY THE EQUIPMENT LEASED HEREUNDER. NO DEFECT OR UNFITNESS OF THE EQUIPMENT NOR ANY REPRESENTATION AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE VENDOR SHALL RELIEVE LESSEE OF THE OBLIGATION TO PAY ANY RENTALS OR PERFORM ANY OTHER OBLIGATION UNDER THIS LEASE. LESSEE UNDERSTANDS AND AGREES THAT

TS.

NEITHER VENDOR NOR ANY SALES REPRESENTATIVE OR OTHER AGENT OF VENDOR, IS AN AGENT OF LESSOR. NO SALES REPRESENTATIVE OR AGENT OF VENDOR IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE. Lessor hereby assigns to Lessee for the duration of this Lease all warranties received by Lessor with respect to the Equipment, to the extent assignable, and Lessor shall have no obligation whatsoever to make any claim on such warranty.

**8. LOCATION/INSPECTION/MARKING.** The Equipment at all times shall be located at the address specified in the applicable Schedule A unless Lessee has notified Lessor in writing of a change of location for each Item of Equipment and Lessor consents to such change. Lessee shall make the Equipment available for inspection by Lessor's representatives during Lessee's normal business hours and shall make Lessee's log, maintenance and other records pertaining to the Equipment available for inspection and duplication by Lessor's representatives. Lessee shall affix to or place on the Equipment such labels, plates, or other markings indicating Lessor's ownership in the Equipment as may be directed and supplied by Lessor.

**9. USE.** Lessee agrees all Equipment will only be used in Lessee's trade or business and will be operated by competent and qualified personnel only and in accordance with applicable operating instructions, laws, government regulations, and applicable insurance policies.

**10. RISK OF LOSS/GENERAL INDEMNITY.** Lessee hereby assumes the entire risk of and responsibility for bodily injury or death, and of damage to property, including the Equipment, and the loss of such property, from whatsoever cause during the Lease Term. Lessee shall indemnify and hold Lessor harmless from and against any and all claims, losses, liabilities (including, without limitation, patent infringement, negligence, tort and strict liability), damages, judgments, suits, and all legal proceedings, and any and all costs and expenses in connection therewith (including attorneys' fees) arising out of or in any manner connected with the manufacture, sale, purchase, financing, ownership, delivery, rejection, non-delivery, possession, use, transportation, storage, condition, operation, maintenance, repair, return or other disposition of the Equipment or with this Lease, including, without limitation, claims for injury to or death of persons, for damage to property, for violation of any law, rule or regulation of any public authority, and for environmental damage and clean-up. Lessee shall give Lessor prompt notice of any such claim or liability. The provisions of this Paragraph shall survive the expiration or termination of this Lease. Lessee agrees that upon written notice by Lessor of the assertion of any claim, action, damage, obligation, liability, or lien, Lessee shall, at its own cost and expense, at Lessor's written request, assume the full responsibility for the defense thereof. Any payment pursuant to this Paragraph shall include an amount equal to any taxes required to be paid by Lessor as a result of the receipt of such payment.

**11. ALTERATIONS/REPAIRS/PERSONAL PROPERTY.** Any improvement, replacement, addition, accessory, or repair part for the Equipment shall become the property of Lessor free of all liens and encumbrances and shall be deemed part of the Equipment. The Equipment is, and shall at all times be and remain, personal property, notwithstanding that any Item of Equipment or any part thereof shall now be or hereafter become in any manner affixed or attached to real property or any improvements thereof.

**12. MAINTENANCE.** Lessee shall pay all costs and expenses of whatever nature resulting from the use and operation of each Item of Equipment. Lessee, at its expense, shall keep the Equipment in good repair, condition and working order, in full compliance with all applicable manufacturer's recommendations, ordinary wear and tear excepted.

**13. TAXES.** Lessee shall pay when due, be responsible for and reimburse Lessor for all charges, taxes, fees and assessments (hereafter "Taxes") imposed, levied or assessed by any governmental body, authority, or agency (hereafter "Tax Jurisdiction"), required to be paid or collected by Lessor, on or relating to the Equipment leased hereunder and the sale, purchase, rental, operation, maintenance or use thereof (excluding any taxes on or measured by the net income or capital of Lessor) together with any penalties or interest applicable thereto, whether the same be payable by or assessed to Lessee or Lessor. Lessor shall report any and all necessary information for assessment of the Equipment regarding Taxes to the Tax Jurisdiction(s) relevant to the address specified in the applicable Schedule A, or any other address of which Lessee has notified Lessor in accordance with Paragraph 8 of this Lease Agreement. Lessor is under no obligation to notify Lessee of, defend against, nor contest any assessment imposed by any Tax Jurisdiction(s) with assessment authority under its governing law. Lessee shall also reimburse Lessor any costs and expenses incurred by Lessor (including reasonable attorneys' fees), as a result of Lessee's failure to reimburse Lessor for such Taxes. Lessee will reimburse Lessor for any reasonable costs incurred for the accurate assessment of the Equipment; however the Lessor is not obligated under this Lease Agreement to take any action on either the Lessee's or Lessor's behalf. The provisions of this Paragraph shall survive the expiration or termination of this Lease.

**14. [RESERVED]**

**15. INSURANCE.** Lessee shall at its own expense acquire and maintain, during the term hereof, with such insurers, in such form and under such policies as shall be satisfactory to Lessor, both:

a) all risk property insurance, naming Lessor as loss payee, in amounts and under coverages to provide for rebuilding, repairing or replacing the Equipment in the event of any damage, destruction, loss or theft of the Equipment. The amount of such insurance shall be at least equal to the Equipment Cost described in the Schedule A for each Item of Equipment; and

b) comprehensive general liability insurance including coverage for any bodily injury, death, or property damage which may be caused by or related to the Equipment or its operation, in amounts satisfactory to Lessor. Such insurance shall name Lessor as an additional insured.

If any loss occurs it shall be paid by check or draft payable to Lessor. Lessor may endorse Lessee's name thereon as Lessee's agent. Lessee shall furnish to Lessor a certificate of insurance indicating that such insurance coverages are in effect at the time the Equipment is delivered and shall deliver to Lessor, prior to the scheduled expiration or lapse of such insurance coverage evidence satisfactory to Lessor of renewal or replacement coverage. Such certificate shall provide that, (i) such insurance cannot be canceled or altered without at least 30 days prior written notice to Lessor, and (ii) insurance as to the interest of any named additional insured or loss payee other than Lessee shall not be invalidated by any actions, inactions, breach of warranty or conditions or negligence of Lessee or any other person other than Lessor with

*T.S.*

respect to such policy or policies. If Lessee fails to pay insurance required to be provided by Lessee under this Lease, Lessor may, but is not obligated to provide such insurance. Lessee shall, upon demand reimburse Lessor for any costs, fees, or expenses incurred in providing such insurance.

### 16. CASUALTY OCCURRENCE.

a) For purposes of this Lease, a "Casualty Occurrence" shall mean any Item of Equipment destroyed, irreparably damaged, lost, stolen, unaccounted for, or taken or requisitioned by condemnation or otherwise during the term of this Lease or while in transit.

b) In the event that any Item of Equipment shall suffer a Casualty Occurrence, Lessee shall promptly and fully inform Lessor with respect thereto. Lessee shall pay to Lessor, on the first day of the month following the giving of such notice, an amount ("Casualty Loss Value") equal to the sum of: (i) the amount which will cause the Lessor to realize the same rate of return up to the date of the Casualty Occurrence that the Lessor would have realized had the Lease of the Equipment been in effect for the entire Lease Term; and (ii) all installments of rental then due with respect to that Item of Equipment. The total rental described in the Schedule A which contained an Item of Equipment for which a Casualty Loss Value was paid shall be reduced by a percentage derived by dividing the Cost of the Item of Equipment experiencing the Casualty Occurrence by the Total Equipment Cost described in such Schedule A. Lessor shall be entitled to receive and retain any proceeds from any insurance with respect to such Item of Equipment up to the amount of the Casualty Loss Value. Provided an Event of Default has not occurred and is continuing, Lessor shall pay over such insurance proceeds to Lessee to the extent such amounts exceed the Casualty Loss Value or the entire insurance proceeds received if Lessee has previously paid the Lessor the Casualty Loss Value. Upon Lessor's receipt of such payment, Lessee shall be entitled to whatever interest Lessor may have in said Item of Equipment, in its then condition and location, without warranties, express or implied, and this Lease shall terminate with respect to such Item of Equipment.

### 17. LOSS AND DAMAGE.

No loss, theft, damage, or destruction of Equipment shall relieve Lessee of the obligation to pay rent or perform any other obligation under this Lease. In the event of damage to any Item of Equipment which does not constitute a Casualty Occurrence, whether during the term of the Lease or while in transit, Lessee shall at its sole cost and expense immediately repair and restore such Item of Equipment to the condition required by this Lease. Upon receipt of evidence reasonably satisfactory to Lessor of completion of such repairs, Lessor will reimburse Lessee any insurance proceeds received by Lessor on account of such loss.

### 18. EVENTS OF DEFAULT.

The following shall constitute Events of Default:

a) Lessee shall fail to pay all or any part of a rental payment or any other payment within 10 days after due and payable; or

b) Lessee shall fail to obtain and maintain the insurance required herein; or

c) Lessee shall fail to perform or shall breach any of the other covenants herein and shall continue to fail to observe or perform the same for a period of 10 days after written notice thereof by Lessor; or

d) Without Lessor's prior written consent, Lessee removes, sells, transfers, assigns, parts with possession, or sublets any Item

of Equipment; or

e) Lessee creates, incurs, or suffers to exist any mortgage, lien, or other encumbrance or attachment of any kind whatsoever upon or affecting the Equipment or this Lease or any of Lessor's interests thereunder; or

f) Lessee becomes insolvent, makes an assignment for the benefit of creditors, ceases or suspends its business, admits in writing its inability to pay its debts as they mature; or bankruptcy, reorganization or other proceedings for the relief of debtors or benefit of creditors shall be instituted by or against Lessee; or

g) Any representation or warranty made by Lessee herein or in any document or certificate furnished to Lessor proves to be incorrect in any material respect when made; or

h) Without Lessor's prior written consent, Lessee terminates its existence, changes its legal or organizational status, consolidates with, merges into, or conveys or leases substantially all of its assets as an entirety to any person, or, without 60 days prior written notice to Lessor, changes its legal name; or

i) Lessee shall be in material default under any other agreement executed with Lessor at any time; or

j) Lessee shall be in material default under any obligation for the payment of borrowed money, for the deferred purchase price of property or any payment under any lease agreement.

The occurrence of an Event of Default with respect to any Schedule A shall, at the sole discretion of Lessor, constitute an Event of Default with respect to any or all Schedule As to which Lessor is then a party. Notwithstanding the foregoing, Lessor may exercise all rights and remedies independently with respect to each Schedule A.

In this Paragraph 18, "Lessee" also means any guarantor of Lessee's obligations under the Lease and "Lease" also means any guaranty of those obligations.

### 19. REMEDIES UPON DEFAULT.

Upon the occurrence of an Event of Default and at any time thereafter, Lessor may do any one or more of the following with or without terminating this Lease:

a) Declare the entire amount of rental and other charges due and to become due hereunder for the entire Lease Term immediately due and payable;

b) Take immediate possession of any and all Equipment without notice;

c) Sell or lease any Equipment or otherwise dispose, hold, or use such Equipment at Lessor's sole discretion;

d) Demand payment of all costs incurred by Lessor in the course of correcting any default (including attorneys' fees and costs as described in Paragraph 28 herein);

e) Proceed against any or all security given in connection herewith which includes but is not limited to sureties and guarantors;

f) Upon notice to Lessee, cancel this Lease and any or all Schedules executed pursuant hereto. Any cancellation or any termination hereunder shall only occur upon such notice by Lessor and only as to such Items of Equipment included in such notice. This Lease shall continue in full force and effect as to the remaining Items of Equipment, if any;

g) Exercise any other right or remedy available to Lessor under the Uniform Commercial Code ("UCC") or any other applicable law. If this Lease is deemed at any time to be one intended as security or otherwise, Lessee agrees that the Equipment shall secure all amounts whatsoever owing by Lessee to Lessor;

h) Recover from Lessee, not as a penalty but as liquidated damages, an amount equal to the sum of: (i) any accrued and unpaid rentals as of the date the Lessor obtains possession of the Equipment following Lessee's default ("Repossession Date"); plus (ii) the present value of all future rentals reserved in the Lease and contracted to be paid over the unexpired term of the Lease discounted at a rate equal to the 6 month U.S. Treasury Bill rate as of the Repossession Date; plus (iii) all costs and expenses incurred by Lessor in any repossession, recovery, storage, repair, sale, re-lease or other disposition of the Equipment including reasonable attorney's fees and costs incurred in connection with or otherwise resulting from the Lessee's default; plus (iv) the present value of the estimated residual value of the Equipment as of the expiration of the Lease, discounted at a rate equal to the 6 month U.S. Treasury Bill Rate as of the Repossession Date; Less the amount received by Lessor upon sale or re-lease of such Items of Equipment, if any.

Notwithstanding Paragraph 19(h) above, Lessor and Lessee agree that in the event it is adjudged or otherwise determined that following an Event of Default, Lessor is entitled to the present value of any damages owed to Lessor, the discount rate shall be equal to the 6 month U.S. Treasury Bill rate in effect at the time the Event of Default occurred. Lessor's rights and remedies provided hereunder or by law shall be cumulative and shall be in addition to all other rights and remedies available to Lessor. Lessor's failure to strictly enforce any provisions of this Lease or any other right available to Lessor shall not be construed as a waiver thereof or as excusing Lessee from future performance.

With respect to any exercise by Lessor of its right to recover and/or dispose of any Equipment or other Collateral (as such term is defined in Paragraph 25 herein) securing Lessee's obligations hereunder, Lessee acknowledges and agrees as follows: (i) Lessor shall have no obligations, subject to the requirements of commercial reasonableness, to clean-up or otherwise prepare the Equipment or any other Collateral for disposition, (ii) Lessor may comply with any applicable state or Federal law requirements in connection with any disposition of the Equipment or other Collateral, and any actions taken in connection therewith shall not be deemed to have adversely affected the commercial reasonableness of any disposition of such Equipment and/or other Collateral, and (iii) Lessor may sell the Equipment or Collateral at public or private sale at which Lessor may purchase the Equipment or Collateral for its own account and apply the net proceeds (after deducting all reasonable expenses of Lessor) to amounts owed to Lessor after an Event of Default with Lessee remaining liable for any deficiency.

**20. ASSIGNMENT/SUBLEASE.**

a) **LESSEE SHALL NOT ASSIGN OR IN ANY WAY DISPOSE OF ALL OR ANY PART OF ITS RIGHTS OR OBLIGATIONS UNDER THIS LEASE OR ENTER INTO ANY SUBLEASE OF ALL OR ANY PART OF THE EQUIPMENT WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR. ANY ATTEMPTED ASSIGNMENT BY LESSEE WITHOUT SUCH CONSENT SHALL BE NULL AND VOID AND SHALL BE AN EVENT OF DEFAULT UNDER THIS LEASE.** No sale, assignment or sublease, whether authorized in this Lease or in violation of the terms hereof, shall relieve Lessee of its obligations, and Lessee shall remain primarily liable hereunder.

b) Lessor shall have the right, without notice to Lessee, to assign or create a security interest in this Lease, or assign any of its rights or interests in this Lease, or in the Equipment. If Lessee is given notice of such assignment or security interest, Lessee shall acknowledge such assignment or security interest in writing upon terms satisfactory to Lessor. Upon written notice to Lessee from Lessor of any assignment or of any security interest created by Lessor hereunder, Lessee shall pay rentals directly to such assignee if directed by Lessor to do so. Lessee agrees to confirm in writing receipt of any notice of assignment, syndication, participation or placement, as reasonably may be requested by Lessor or any such assignee or participant (collectively, the "Assignee"). Lessee hereby waives and agrees not to assert against any such Assignee any defense, setoff, recoupment, claim or counterclaim which Lessee has or may at any time hereinafter have against Lessor or any person other than such Assignee, for any reason whatsoever. Lessee will provide reasonable assistance to Lessor in whatever manner necessary in order to permit Lessor to complete any resale, syndication, assignment, participation or placement of the transaction contemplated by this Lease. Upon such assignment and except as may otherwise be provided therein all references in this Lease to Lessor shall include such Assignee. Lessee acknowledges that any assignment or transfer by Lessor shall not materially change Lessee's duties or obligations under this Lease nor materially increase the burdens or risks imposed on Lessee.

**21. OWNERSHIP.** Title to the Equipment shall remain with Lessor at all times and Lessee shall have no right, title, or interest therein except as expressly set forth in this Lease.

**22. RETURN OF EQUIPMENT.** If Lessee does not exercise any purchase option provided in this Lease, at the expiration of the Lease Term or other termination of this Lease, Lessee shall, at its own expense, deliver the Equipment to such location as may be designated by Lessor. The Equipment shall be delivered by Lessee to Lessor in the same condition as it was when delivered to Lessee, normal wear and tear excepted. Lessor and Lessee agree that, notwithstanding terms contained in the Lease to the contrary, the Lease Term shall not expire until the Equipment is returned to Lessor as provided in this Paragraph. In addition to Lessor's other rights and remedies, if the Equipment is not returned in a timely fashion, or if repairs are necessary to place any Item of Equipment in the condition required under this Lease, Lessee shall continue to pay to Lessor per diem rent at the last prevailing rate under the applicable Schedule A with respect to such Item of Equipment, for the period of delay in redelivery, or for the period of time reasonably necessary to accomplish such repairs, as applicable. Lessor's acceptance of such rent on account of such delay or repair does not constitute a renewal of the term of the related Equipment or Schedule A or a waiver of Lessor's right to prompt return of the Equipment in proper condition.

**23. LESSEE'S OPTIONS.** So long as all amounts due Lessor have been paid and no Event of Default has occurred and is continuing, Lessee may, upon at least 60 days advance written notice to Lessor, have the option at the expiration of the Minimum Term to: (i) purchase the Equipment at fair market value; (ii) continue the Lease as provided in Paragraph 3 of this Lease; or (iii) return the Equipment to Lessor as provided in Paragraph 22 herein. So long as all amounts due Lessor have been paid and no Event of Default has occurred and is continuing, Lessee may, upon at least 60 days advance written notice to Lessor, have the option at the expiration of the Scheduled Lease Term to: (i) purchase the Equipment at the Purchase Option Amount specified on the applicable Schedule A or if no such amount is specified, at fair market value; (ii) renew the Lease as provided in Paragraph 2 herein; or (iii) return the Equipment to Lessor as provided in Paragraph 22 herein. As used

*T.S.*

in this Paragraph 23, Equipment shall mean all, but not less than all, of the Equipment described in any Schedule A.

## 24. NOTICES.

a) Any requirement of the UCC or other applicable statute of reasonable notice shall be met if such notice is given at least 10 days before the time of sale, disposition, or other event or thing giving rise to the requirement of notice.

b) All notices or communications hereunder shall be in writing, personally delivered, delivered by overnight courier service, sent by facsimile or other electronic transmission (with confirmation of receipt), or sent by certified mail, return receipt requested, addressed to the other party at its respective address stated below the signature of such party or at such other address as such party shall from time to time designate in writing to the other party, and shall be effective from the date of receipt.

c) Lessor and Lessee may in writing at any time, and from time to time, change the address to which notice shall be delivered or mailed.

## 25. FURTHER ASSURANCES/FINANCING STATEMENTS/SECURITY INTEREST. Lessee will promptly execute, or otherwise authenticate, and deliver to Lessor such further documents, instruments, assurances and other records, and take such further action as Lessor may from time to time reasonably request in order to carry out the intent and purpose of this Lease and to establish and protect the rights and remedies created or intended to be created in favor of Lessor under this Lease (including, without limitation (i) lien searches, (ii) certificates of title, and (iii) such UCC financing statements, fixture filings and waivers as reasonably may be required by Lessor in connection with any Item of Equipment, any change in circumstances relating to Lessee, or otherwise); provided, however, Lessee hereby authorizes Lessor to file any and all of the same without Lessee's authentication, to the extent permitted by applicable law. Lessee shall provide written notice to Lessor not less than 30 days prior to any contemplated change in the name, the jurisdiction of organization, or address of the chief executive office, of Lessee and Lessee shall pay to Lessor all costs incurred by Lessor including reasonable attorneys' fees, to prepare and file any documents, including UCC financing statements, relating to any such change. In order to secure the prompt payment of the rentals and all of the other amounts from time to time outstanding under and with respect to this Lease, and the performance and observance by Lessee of all the agreements, covenants and provisions hereof, or in the event this Lease should be construed as a lease intended as security, or otherwise, Lessee hereby grants to Lessor a first priority security interest in the Equipment together with, all additions, attachments, accessories and accessions thereto, whether or not furnished by the supplier of the Equipment, any intangibles, including software, all security deposits, and any and all substitutions, replacements or changes for any Item of Equipment (collectively, the "Collateral"), and any and all insurance and/or other proceeds of the Equipment and the Collateral and in such event Lessor shall have all of the rights and remedies of a secured party under the UCC.

## 26. NON-CANCELABLE LEASE/OBLIGATIONS UNCONDITIONAL/ WAIVER.THIS LEASE CANNOT BE CANCELLED OR TERMINATED EXCEPT AS EXPRESSLY PROVIDED HEREIN. LESSEE HEREBY AGREES THAT LESSEE'S OBLIGATION TO PAY ALL RENTALS AND PERFORM ALL OTHER OBLIGATIONS HEREUNDER SHALL BE ABSOLUTE, IRREVOCABLE, UNCONDITIONAL AND INDEPENDENT AND SHALL BE PAID AND PERFORMED WITHOUT ABATEMENT, DEDUCTION OR OFFSET OF ANY KIND OR NATURE WHATSOEVER.

## 27. REPRESENTATIONS AND WARRANTIES OF LESSEE. Lessee represents and warrants that: (i) Lessee is duly organized, validly existing and in good standing under the laws of the jurisdiction specified below the signature of Lessee, and the organizational number assigned to Lessee by such jurisdiction, if any, is as specified below the Lessee's signature; (ii) Lessee's full and accurate legal name is as first provided above; (iii) Lessee is duly qualified to do business wherever necessary to carry on its present business and operations; (iv) Lessee has full power, authority and legal right to enter into and perform this Lease and the execution, delivery and performance of such documents have been duly authorized, do not require the approval of any governmental body, will not violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's certificate of incorporation or bylaws, if any, or constitute a default under, or result in the creation of any lien, charge, encumbrance or security interest upon any assets of the Lessee under any agreement or instrument to which Lessee is a party or by which Lessee or its assets may be bound or affected; (v) this Lease and all schedules and attachments shall have been duly entered into, delivered and shall constitute, legal, valid and binding obligations of Lessee, enforceable in accordance with their terms when executed by Lessor and Lessee; (vi) there are no pending or threatened actions or proceedings to which Lessee is a party, and there are no threatened actions or proceedings of which Lessee has knowledge, which either individually or in the aggregate would have a material adverse effect on the business or operations of Lessee.

## 28. ATTORNEYS' FEES AND COSTS. Lessee acknowledges that Lessee shall be liable for all reasonable attorneys' and other legal fees (including consultation, drafting documents, sending notices or instituting, prosecuting or defending litigation or arbitration) and other enforcement costs and expenses (including court costs and other related litigation costs) incurred by reason of any default, Event of Default, the exercise of Lessor's rights or remedies, Lessor's enforcement or defense of any other provisions of this Lease, including all expenses incurred in connection with the return or other recovery of any Equipment or other Collateral, the sale, re-lease or other disposition thereof (including but not limited to costs of transportation, possession, storage, refurbishing, advertising and brokers' fees) and all other pre-judgment and post-judgment enforcement related actions taken by Lessor, and/or any actions taken by Lessor in any bankruptcy case involving Lessee, the Equipment or any other Collateral.

## 29. FINANCIAL STATEMENTS. Lessee shall promptly furnish Lessor with Lessee's annual certified financial statements. Lessee shall also furnish Lessor with other financial information as Lessor may reasonably request. If Lessee does not have certified financial statements available in the normal course of business, Lessee shall provide uncertified financial statements that accurately reflect Lessee's financial condition including copies of its most recent federal income tax returns.

## 30. ENFORCEABILITY/CAPTIONS.

a) If any part, term, or provision of this Lease is held by any court to be unenforceable or prohibited by law, the rights and obligations of the parties shall be construed and enforced with that

*J.S.*   Page 6 of 8

part, term, or provision limited so as to make it enforceable to the greatest extent allowed by law, or if it is totally unenforceable, as if this Lease did not contain that particular part, term, or provision.

b) This Lease shall not be effective unless and until accepted by execution by Lessor at the address as set forth below the signature of Lessor.

c) This Lease may be modified only by a written instrument executed by Lessor and Lessee.

d) This Lease shall inure to the benefit of Lessor, its successors, and assigns, and all obligations of Lessee shall bind its permitted successors and assigns.

e) The headings in this Lease have been included for ease of reference only and shall not be considered in the construction or interpretation of this Lease.

f) This Lease may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page of this Lease by facsimile or email shall be as effective as delivery of a manually executed counterpart of this Lease.

31. GOVERNING LAW - WAIVER OF JURY TRIAL. THIS LEASE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER, SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF MINNESOTA (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE EQUIPMENT. LESSEE AND LESSOR HEREBY IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION OR PROCEEDING TO WHICH LESSEE AND/OR LESSOR MAY BE A PARTY ON ANY MATTER WHATSOEVER BASED UPON, ARISING OUT OF, OR IN ANY WAY PERTAINING OR RELATED TO, OR CONNECTED WITH, THIS LEASE OR ANY OTHER AGREEMENT OR INSTRUMENT EXECUTED IN CONNECTION HEREWITH OR ANY OBLIGATIONS HEREUNDER OR THEREUNDER. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY LESSEE AND LESSOR, WHO ACKNOWLEDGE THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS LEASE OR SUCH OTHER AGREEMENTS OR INSTRUMENTS.

32. POSSESSION OF EQUIPMENT. The parties acknowledge that circumstances may from time to time arise in which it becomes necessary or practical for Lessee to take possession, custody, and/or control of equipment and other property, intended by the parties to be leased hereunder (or arrange for shipment thereof by the vendor) prior to formal execution of a Schedule A and/or delivery and acceptance of equipment and other property. In such circumstances, and in absence of an Interim Funding Agreement, the following additional terms and conditions shall apply:

a) Such equipment and other property shall be deemed to be "Equipment" as defined in Paragraph 1 of this Lease immediately upon the earlier to occur of the following: (i) the Lessee takes

possession, custody, or control of such Equipment, or (ii) if shipment is made under terms that pass title and/or risk of loss to the purchaser upon the vendor's delivery to the carrier, upon delivery to the carrier. At that time, such Equipment shall immediately be subject to the terms and conditions of this Lease, including without limitation Paragraph 10 on Indemnification and Paragraph 15 on Insurance, and Lessee shall be fully responsible for such Equipment in accordance with this Lease, provided, however, that the In-Service Date for purposes of determining the commencement of Interim Rent and the Scheduled Lease Commencement Date under Paragraph 2 of this Lease shall remain governed by the date of delivery and acceptance, as provided therein.

b) To the extent that the foregoing occurs prior to the formal execution of a Schedule A for such Equipment, and the parties have not executed a Schedule A for such Equipment on terms and conditions acceptable to Lessor within 30 days thereafter, then Lessee shall, upon Lessor's demand, purchase such Equipment from Lessor for an amount equal to the total of (i) the purchase price paid by Lessor, (ii) all applicable taxes, fees, and other charges paid by Lessor in connection with the acquisition of such Equipment, (iii) any other amounts paid, and expenses incurred, by Lessor in connection with the Equipment, and (iv) rental from the In Service Date through the date of purchase in an amount per month equal to 1% of the purchase price of such Equipment, plus all applicable taxes thereon. In addition, Lessee will pay all applicable taxes, fees, and other charges associated with the transfer of title to such Equipment from Lessor to Lessee. Nothing in this Paragraph 32 shall be construed to authorize Lessee to operate any motor vehicle leased hereunder prior to satisfaction of applicable legal requirements with respect to titling, registration, and insurance

33. FAIR MARKET VALUE. "Fair market value," as to each Item of Equipment for all purposes in connection with this Lease, shall have the meaning and shall be determined in accordance with the procedure set forth in this Paragraph 33. Fair market value shall be determined on the basis of, and be equal in amount to, the value which would be obtained in an arm's length transaction between an informed and willing buyer-user (other than a lessee currently in possession or a used equipment dealer) under no compulsion to buy, and an informed and willing seller under no compulsion to sell, and, in such determination, costs or removal from the location of current use shall not be a deduction from such value.

In the event Lessor and Lessee shall be unable to agree upon the fair market value of an Item of Equipment, a determination of fair market value shall be made under the provisions of this Paragraph 33. The party requesting such determination shall deliver a written notice to the other party so indicating and appointing an appraiser selected by the requesting party to determine the fair market value. Within 15 days after the receipt of such written notice the party receiving such notice shall deliver to the requesting party a written notice appointing an appraiser of its selection to make such determination. The two appraisers appointed in such written notices shall meet promptly to determine the fair market value of such Item of Equipment as of the applicable date. If within 30 days after the initial written notice the two appraisers so appointed by Lessor and Lessee shall be unable to agree upon the fair market value of such Item of Equipment, such appraisers shall within 5 days thereafter appoint a third appraiser. The decision of the three appraisers so appointed shall be given within a period of 10 days after the appointment of such third appraiser. Any decision in which any two appraisers so appointed and acting hereunder concur shall in all cases be binding and conclusive upon Lessor and Lessee. The fees and expenses of the appraisers shall be borne

Lease Agreement- MT (03/20/2019)     T.S.     Page 1 of 5

equally by Lessee and Lessor, unless the Lease shall have been terminated pursuant to Paragraph 19 hereof, in which case Lessee shall pay all such fees and expenses.

34. POWER OF ATTORNEY. Lessee hereby authorizes Lessor, in Lessee's name and as Lessee's attorney-in-fact, to take any of the following actions in connection with this Lease of any transactions or documents contemplated hereby: (a) insert or correct the date of any document; (b) correct the Lessee's legal name; (c) correct or update any applicable description of Equipment; and (d) directly contact Lessee's insurer(s) for information on applicable insurance coverages and/or to obtain certifications of insurance coverage.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

*T·S·*

# Exhibit 2

 **COBANK**

**Schedule A**
Contract Number:
001-0028777-000
Customer Number: ▮▮▮4576

600 Highway 169 South, Suite 300
Minneapolis, MN 55426

**Dated as of: July 24, 2017**

Lessee:  **TODD W. SMITH ("LESSEE")**
138 Baxley Road
McRae, AR 72102

This Schedule A, when executed by both Lessee and Lessor shall be made a part of that Lease Agreement dated as of July 24, 2017 ("Lease"), between Lessee and Lessor.

In addition to authorities granted to Lessor under the Lease, Lessee further authorizes Lessor, as Lessee's attorney-in-fact, to correct any manifest errors in any of the information set forth on Page 1 of this Schedule A or any attachment thereto, including without limitation any amounts, percentages, options, terms, dates, and locations (collectively the "Information") as well as to make any other modifications to the Information resulting from changed circumstances occurring after the date hereof, provided, however, that Lessor shall give Lessee prompt written notice of any such modifications. Unless Lessee objects in writing within 5 business days after receipt of such notice, such modifications shall be deemed to be accepted and agreed by, and binding upon, Lessee.

### EQUIPMENT AND LOCATIONS

| # | New/Used | Qty | Equipment Description | Serial Number | Equipment Location | Equipment Cost | Tax |
|---|----------|-----|----------------------|---------------|-------------------|----------------|-----|
| 1 | Used | 1 | 2015 DEUTZ FAHR 7250 Agrotron Tractor | WSXV9102001D01109 | 138 Baxley Road McRae, AR 72102 WHITE County | $238,500.00 | |
| | | | | | Totals | $238,500.00 | $0.00 |
| | | | | | Total Equipment Cost | $238,500.00 | |

### METERED USAGE

| # | At Delivery Date | "Max Annual Usage" | "Usage Measure" | "Excess Usage Rate" |
|---|------------------|--------------------|-----------------|---------------------|
| 1 | 0 | N/A | Engine Hours | N/A |

### LEASE PRICING

| Security Deposit | Scheduled Lease Term | Minimum Lease Term | Lease Rate Factor | Rental Amount * (Exclusive of applicable taxes) | Rentals | Rental Frequency | Total Number of Rentals |
|------------------|---------------------|-------------------|-------------------|------------------------------------------------|---------|------------------|------------------------|
| $0.00 | 61 Months | N/A | 0.000000 | See Irregular Rent Detail below | In Advance | Annual | 6 |

| Daily Billing Option? Yes | | Floating Rate: No | |
|---|---|---|---|

**Irregular Rent Detail** (Exclusive of applicable sales tax)

| Month/Year | Amount | # of Payments |
|------------|--------|---------------|
| July 2017 | $47,700.00 | 1 |
| July 2018 | $46,829.17 | 5 |

| Vendor Deposit: | $47,700.00 | | |
|---|---|---|---|
| End of Term Type: | $1 | End of Lease Purchase Amount: $1.00 | FMV Cap %: N/A |

Notice is hereby given that the rights, but not the obligations, of Farm Credit Leasing Services Corporation to purchase and/or sell the assets contained herein have been assigned to Farm Credit Leasing Exchange Inc. pursuant to an agreement between Farm Credit Leasing Services Corporation and Farm Credit Leasing Exchange Inc.

Lessee agrees that (i) Lessor may provide Lessee's Information on a confidential basis to its third-party service provider, which is an institution of the Farm Credit System.

*T.S.*

(ii) such third-party service provider may provide the information on a confidential basis to other Farm Credit System institutions, or entities controlled or owned by Farm Credit System Institutions, and (iii) the information may be used by such recipients for credit analysis and administration purposes as well as for direct marketing purposes or for any lawful purpose.

This Schedule A may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page of this Schedule A by facsimile or email shall be as effective as delivery of a manually executed counterpart of this Schedule A.

## ADDITIONAL TERMS AND CONDITIONS

**End-of Term Options:**

**1. PUT or Dollar-Out**

Paragraph 22 of the Lease is deleted in its entirety for purposes of this Schedule A.

Paragraph 23 of the Lease, as applicable to this Schedule A, is hereby amended to read in its entirety as follows:

23. Purchase of Equipment. At the expiration of the Scheduled Lease Term, Lessee shall purchase all but not less than all of the Equipment from Lessor in an amount equal to the End of Term Purchase Amount specified in Schedule A (including any attached Equipment List), plus all applicable taxes. Upon receipt of the End of Term Purchase Amount, Lessor shall transfer to Lessee all of Lessor's right, title, and interest in the Equipment AS-IS, WHERE IS, without any warranties, expressed or implied, whatsoever.

**Other Terms and Conditions:**

**2. Daily Billing Option**

In the event that Lessee has a previous Schedule A under the Daily Billing Option, Lessee hereby requests Lessor to adjust the regular payment date for this Schedule A to match the regular payment date of the previous Schedule A as a convenience to Lessee. In such case, a full rental payment shall be due on the Scheduled Lease Commencement Date, followed by another full rental payment on such adjusted regular payment date (even though such adjusted regular payment date may be less than a full rental period after the Scheduled Lease Commencement Date). The resulting excess rental amount paid will be credited against the final rental payment. As compensation for Lessor's willingness to provide this accommodation to the Lessee, no interest will be paid on such excess rental amount.

Lessor: FARM CREDIT LEASING SERVICES CORPORATION
By: _____ **Tanya Simmer** | **Supervisor, Leasing Delivery Services**
Signature | Name | Title

Lessee(s): TODD W. SMITH
_____ Todd W. Smith | Individual
Signature | Name | Title

| Lessee Address | City, State, Zip | Contact | Phone |
| --- | --- | --- | --- |
| 138 Baxley Road | McRae AR 72102 | Todd Smith | 501-940-3475 |

# Exhibit 3

# Arkansas Secretary of State

State Capitol / Little Rock, AR 72201 / 501.682.5078

## UCC ONLINE FILING

### UCC - New Filing

| | |
|---|---|
| Filing Number: | 40000152664452 |
| Filing Time: | 7/25/2017 05:25 PM |
| Expiration Date: | 7/25/2022 12:00 AM |
| Reference Number: | 134168993 |
| Optional Filer Reference Data: | 001-0088777-000*69935-CUC-1 134168993 |

---

**Debtor (1)**

| | |
|---|---|
| Surname: | SMITH |
| First Personal Name: | TODD |
| Additional Name(s)/Initial(s): | WELDON |
| Suffix: | |
| Mailing Address: | 138 BAXLEY ROAD |
| City: | MCRAE |
| State: | AR |
| Zip Code: | 72102 |
| Country: | USA |

---

**Secured Party (3)**

| | |
|---|---|
| Company Name: | FARM CREDIT LEASING SERVICES CORPORATION |
| Mailing Address: | 600 HWY 169 S, SUITE #300 |
| City: | MINNEAPOLIS |
| State: | MN |
| Zip Code: | 55426 |
| Country: | USA |

---

Description of Collateral: USED 1 2015 DEUTZ FAHR 7250 AGROTRON TRACTOR WSXV910200ID01109 THIS FINANCING STATEMENT IS FILED FOR PRECAUTIONARY PURPOSES ONLY. THE ASSETS DESCRIBED IN THE COLLATERAL DESCRIPTION ABOVE ARE OWNED BY THE SECURED PARTY AND ARE LEASED (OR ARE INTENDED TO BE LEASED) TO THE DEBTOR PURSUANT TO THE TERMS AND CONDITIONS OF THE APPLICABLE LEASE DOCUMENTS BETWEEN THE SECURED PARTY (AS LESSOR THEREUNDER) AND THE DEBTOR (AS LESSEE THEREUNDER) NOW IN EFFECT OR ANTICIPATED TO BE EXECUTED BY THE PARTIES. THE SECURED PARTY AND THE DEBTOR REGARD SUCH LEASE TO BE A TRUE LEASE AND NOT A LEASE INTENDED AS SECURITY.

---

Alternative Designation (if applicable):

X    Lessee/Lessor

Consignee/Consignor

Bailee/Bailor

Seller/Buyer

Licensee/Licensor

This FINANCING STATEMENT is to be filed [for record](or recorded) in the REAL ESTATE RECORDS.

This FINANCING STATEMENT covers:

timber to be cut

as-extracted collateral

is filed as a fixture filing.

Description of Real Estate:

Name and address of a
RECORD OWNER of
above-described real
estate (if Debtor does not
have a record interest):

Collateral is:

held in a trust

being administered by a Decedent's Personal Representative

X   Not Applicable

Ag. Lien

Non-UCC Filing

X   Not Applicable

Debtor is a Transmitting Utility

Filed in connection with a Manufactured-Home Transaction - effective 30 years.

Filed in connection with a Public-Finance Transaction - effective 30 years.

# Exhibit 4



**NORTHLAND CAPITAL**

Master Contract # __16538M__          Contract # __16538-001__

V12.15 Ref#: 72906

LESSOR: Northland Capital Financial Services, LLC
333 33rd Ave S. St. Cloud, MN 56301
PO Box 7278 St. Cloud, MN 56302
(800) 471-2122 . Fax (320) 252-2111

**EQUIPMENT MASTER LEASE AGREEMENT** - Page 1 of 4

| LESSEE: (hereinafter referred to as "You" or "Your") | | | | | |
|---|---|---|---|---|---|
| FULL LEGAL NAME: Todd W. Smith | | | | | |
| ADDRESS: 138 Baxley Road | CITY: Mc Rae | | STATE: AR | ZIP: 72102 | |
| BILL-TO ADDRESS: 138 Baxley Road | CITY: Mc Rae | | STATE: AR | ZIP: 72102 | |

| QUANTITY | EQUIPMENT  ☐ See attached Schedule "A" for additional equipment, if checked | TERM AND PAYMENT SCHEDULE |
|---|---|---|
| 1 | 2015 Deutz Fahr 7250 Agrotron Tractor  SN: WSXV910200ID0144  10724 TWS | 5 Annual Payments beginning July 2018 |
| | | Rent Payment: __$46,481.68__ (Plus applicable taxes) |
| | | You agree to pay at the time you sign the lease: An Advance Payment of $50,000.00 plus sales tax of $0.00 = $50,000.00 |

| EQUIPMENT LOCATION | | | | | | |
|---|---|---|---|---|---|---|
| Address:  138 Baxley Road | City:  Mc Rae | State:  AR | Zip:  72102 | County:  White | | |

**END OF LEASE OPTIONS:** You will have the following options at the end of the original term, provided the lease has not terminated early and no event of default under the Lease has occurred and is continuing.
1.  Renew the Lease per Paragraph 5.
2.  Return the Equipment as provided in Paragraph 5 of this Lease.
3.  Purchase the Equipment as provided in Paragraph 5 of this Lease for a Purchase Option Price of $101.00.

**LEASE**

This Lease is written in plain English as a convenience to you (the Lessee). References to us, we or our are to the Lessor. DO NOT SIGN IF YOU HAVE NOT READ OR DO NOT UNDERSTAND THIS LEASE. You agree to all the terms and conditions shown on this first page hereof and the Additional Terms and Conditions set forth on the attached pages, which such Additional Terms and Conditions are hereby incorporated by reference as if fully set forth herein. You acknowledge receipt of a copy of this Lease (including the Additional Terms and Conditions).

Todd W. Smith                                                          Northland Capital Financial Services, LLC

| | LESSEE | | LESSOR | |
|---|---|---|---|---|
| SIGN & DATE | X _Todd W. Smith_ | X 8/1/2017 | X _Rick Nelson_ | 8-20-17 |
| | SIGNATURE  Todd W. Smith | DATE | SIGNATURE | DATE |
| | | | _Operations Manager_ TITLE | |

**ACCEPTANCE CERTIFICATE**

YOU FURTHER HEREBY ACKNOWLEDGE THAT THE EQUIPMENT HAS BEEN RECEIVED IN OPERATING CONDITION AND REPAIR AND HEREBY ACCEPT IT AS SATISFACTORY IN ALL RESPECTS FOR ITS PURPOSE UNDER THIS LEASE.

Todd W. Smith

| | LESSEE | |
|---|---|---|
| SIGN & DATE | X _Todd W. Smith_ | X 8/1/2017 |
| | SIGNATURE  Todd W. Smith | DATE |

**ADDITIONAL TERMS AND CONDITIONS-EQUIPMENT MASTER LEASE AGREEMENT Page 2 of 4**

**1. Lease:** Subject to the terms and conditions of this Lease, we agree to lease to you, and you agree to lease from us, the equipment described above and on any attached Equipment Schedule A, together with all attachments, replacements, parts, additions, repairs and accessories incorporated in or now or hereafter affixed to said equipment (hereinafter collectively the "Equipment"). If you and we execute more than one Equipment Lease Agreement Schedule that incorporates these Additional Terms and Conditions, each such Equipment Lease Agreement shall be a separate "Lease" for all legal purposes.

**2. Term:** The term ("Term") of this Lease with respect to each item of Equipment shall: (a) commence upon a date (the "Commencement Date") which is, at our option, either (i) that you execute an Acceptance Certificate for the Equipment, (ii) three (3) days after delivery of the Equipment if you do not notify us of a reason you cannot accept it, (iii) the date we pay the vendor for the Equipment after delivery or (iv) your first use of the Equipment; and (b) continue thereafter for the number of consecutive months set forth on the first page hereof or on the Payment Addendum unless otherwise extended in accordance with Paragraph 5 below.

**3. Rent:** You shall pay all rent under this Lease in the amount set forth on the first page hereof or on the Payment Addendum, plus applicable taxes as increased from time to time ("Rent"). The first payment of Rent shall be due and payable, in advance, on the Commencement Date and thereafter, each payment of Rent shall be due and payable monthly on the same day of the month as the Commencement Date, or at a later date we designate in writing. If we elect, you shall pay interim rent calculated on a per diem basis (1/30th of a Rent payment) until a date we specify not more than 30 days after the Commencement Date and the Term shall be extended by such interim period. Rent shall be payable to us, without invoice or other written demand, at the address specified on the first page hereof or to any other address that we subsequently give you in writing for purposes of making payment.

**4. Collection Charges, Application of Payments:** Should you fail to pay any Rent or other sum required to be paid by you to us hereunder, within ten (10) days after the due date of such payment, you shall pay to us a late charge equal to the lesser of (a) at our option, either: (i) fifteen percent (15%) of the payment which is late, or (ii) one and one half percent (1.5%) per month on such amount; and (b) the highest rate permitted by applicable law (the "Late Charge Rate"). You also agree to pay a collection charge to make up for the time and expense in making any call or generating a letter, of up to $50.00 per call and per letter. You agree to pay a charge of up to $50.00 for each check returned for non-sufficient funds or other reasons. All payments shall, at our option, be applied first to any costs of collection, second to any late charges, third to delinquent payments and the remainder thereof to Rent or other payments you owe us. You also agree to pay us a documentation fee at lease origination of $0.00 and, if the Equipment is one or more titled vehicles, a fee of $99.00 per month after the end of the third month of the Term if we do not receive properly issued titles for each such vehicle.

**5. End of Lease Options:** At the end of the Term, you may choose one of the following options as to all, but not less than all, of the Equipment:

a. **Automatic Renewal:** Should you choose #1 of the "END OF LEASE OPTIONS" stated on the first page of this Lease, this Lease will automatically renew for successive thirty (30) day renewal terms on the same terms and conditions and the same Rent payment unless you send us written notice that you do not want the Lease to renew at least thirty (30) days before the end of the Term or any renewal term. We may cancel the renewal terms by sending you notice that we do not want this Lease to renew at least fifteen (15) days before the end of the Term or any renewal term. IF YOU DO NOT PROPERLY CHOOSE ANOTHER OPTION, THIS OPTION #1 WILL BE DEEMED YOUR CHOICE.

b. **Return of Equipment:** Should you at the end of this Term, choose #2 of the "END OF LEASE OPTIONS" stated on the first page of this Lease, you shall provide us with not more than one hundred twenty (120) days and not less than sixty (60) days prior written notice and will, on the last day of the Term, immediately deliver the Equipment to us in a condition as good as received, less normal wear and tear, to any place in the United States designated by us. You will prepay all expenses of crating and shipping by means we designate, and you will properly insure the shipment. You also agree to pay us a reasonable administration fee for processing the Equipment not to exceed $500.00.

c. **Purchase Option Price:** Should you at the end of this Term, choose #3 of the "END OF LEASE OPTIONS" stated on the first page of this Lease and if you are not in default under this Lease, you have the option of purchasing all, but not less than all, of the Equipment at the expiration of the Term (or, with our consent any renewal term) for an amount (the "Purchase Option Price") equal to the Total Cost of the Equipment multiplied by the Purchase Option Percentage or amount as specified on this first page of this Lease together with all applicable sales, use or similar taxes. Upon payment of the purchase price, we will transfer the Equipment to you on an "AS-IS" basis. The conveyance of the Equipment from us to you will be without warranty or

representation of any kind and will be completed by our execution of a bill of sale in form and substance satisfactory to us.

**6. Ownership of Equipment:** The Equipment is, and shall at all times be and remain, our sole and exclusive property, and you shall have no right, title or interest therein or thereto except as expressly set forth in this Lease. You agree to keep Equipment free from all liens.

**7. No Warranties:** You acknowledge and agree that you have selected both the Equipment and the vendor, supplier or manufacturer thereof (the "Supplier") and that we have not participated in any way in your selection of the Equipment or the Supplier. All Equipment is provided in "AS IS" condition with NO WARRANTY OR GUARANTY OF ANY KIND OR NATURE WHATSOEVER, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE AND WE DISCLAIM ANY AND ALL SUCH WARRANTIES. OUR SOLE AND EXCLUSIVE LIABILITY HEREUNDER AND IN ANY WAY RELATED TO THIS LEASE SHALL NOT EXCEED THE TOTAL RENTS FOR LEASE OF THE EQUIPMENT. IN NO EVENT SHALL WE BE LIABLE FOR ANY INTERRUPTION OF BUSINESS, LOST PROFITS, OR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL LOSSES OR DAMAGES OF ANY KIND OR NATURE WHATSOEVER EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGE. NO WAIVER, ALTERATION OR MODIFICATION OF THIS LIMITATION OF WARRANTY SHALL BE BINDING AGAINST US UNLESS IN WRITING AND SIGNED BY OUR EXECUTIVE OFFICER. To the extent they are transferable and so long as you are not in default hereunder, we assign to you for the Term all warranties, if any, made by manufacturer or supplier to us. We are not liable to you for any modification or rescission of supplier or manufacturer warranties. You agree to continue making payments under this Lease regardless of any claims you may have against the Supplier. WE ARE NOT AFFILIATED WITH OR PRINCIPALS OR AGENTS OF THE SUPPLIER AND NO PERSON OTHER THAN OUR OFFICERS MAY BIND US TO ANY AGREEMENT OR WAIVE THE TERMS OF THE LEASE.

**8. Use, Maintenance and Installation:** You will: (a) cause the Equipment to be installed, operated and maintained: (i) SOLELY FOR BUSINESS AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (ii) only in the ordinary course of your business; (iii) with due care to prevent injury to any person or property; (iv) in accordance with applicable manuals and instructions; and (v) by competent and duly qualified and authorized agents or employees only; (b) comply with all applicable regulatory rules and laws and the other terms and conditions of this Lease; (c) maintain the Equipment at your sole cost and expense in at least the operating order, repair and condition as when delivered to and accepted by you, reasonable wear and tear from the proper use thereof alone excepted, and (d) furnish at your sole cost and expense, all parts, supplies, services and utilities necessary for the operation or maintenance of the Equipment, all of which will immediately become our property. You may not modify the Equipment without our prior written consent. You assume all risk for the use, operation and storage of the Equipment and for damages and injuries incident thereto, whether to agents, employees, customers, consumers, invitees and guests of you, us or of third parties and whether or not occasioned by our or your negligence or malfeasance. You acknowledge for purposes of occupational safety, environmental and other laws and liability, that we have no participation in the maintenance or use of the Equipment and you are its sole operator, with discretion and control as to its selection, operation and management. You may not use the Equipment in any unsafe manner, in violation of any law or regulation or to haul, store or otherwise deal with any hazardous materials and you will obtain any and all licenses or permits applicable to your use of the Equipment.

**9. Location of Equipment:** The Equipment must at all times be located at the location specified in the Lease, except during periods when the Equipment is being used for its intended purpose at other locations, under the direction or control of you, or when the Equipment is being maintained or repaired at the location of your service providers. We shall have the right to enter upon your premises to inspect the Equipment at any time upon reasonable notice or during normal business hours and you will ensure that we have similar rights wherever the Equipment may be located. You must promptly advise us of any circumstances with respect to the location of the Equipment which may in any manner affect our title to the Equipment. You will not allow the Equipment to be used outside of the United States without our prior written consent.

**10. Personal Property:** The Equipment is, and shall at all times be and remain, personal property and shall not constitute fixtures notwithstanding that the Equipment or any part thereof may now be, or hereafter become, in any manner affixed, attached to, imbedded in, permanently resting upon, real property or any building thereon, or attached in any manner to what is permanent as by means of cement, plaster, nails, bolts, screws or otherwise. It is the intention of the parties hereto, and the reality, that the Equipment shall consist solely of personal property and that the same shall not constitute fixtures under the laws of the state where the Equipment is located at any time.

**11. Insurance:** You shall obtain and maintain on or with respect to the Equipment at your own expense (a) liability insurance insuring against liability for bodily injury and property damage with a minimum limit of $1,000,000.00 combined single limit and/or occurrence and (b) physical damage insurance insuring against loss or damage to the Equipment in an amount not less than the greater of the total of all Rent and the purchase option amount or full replacement value of the Equipment and with a deductible not exceeding $5,000.00.  You will furnish us with a certificate of insurance evidencing the issuance of a policy or policies in at least the minimum amounts required herein naming us as an additional insured thereunder for the liability coverage and as sole loss payee for the property damage coverage. Each such policy shall be in such form and with such insurers as may be satisfactory to us, and shall contain a lender loss payee clause requiring the insurer to give to us at least 10 days prior written notice of any alteration in the terms of such policy or the cancellation thereof, and a clause specifying that no action or misrepresentation by you shall invalidate such policy.  You agree to provide us with written evidence of this insurance immediately upon request.  We shall be under no duty to ascertain the existence of or to examine any such policy or to advise you in the event any such policy shall not comply with the requirements hereof.  If you do not provide us with acceptable evidence of insurance on demand, we may, but will not be required to, buy insurance protecting our interests.  No such insurance will name you as an insured or protect or relieve you from liability.  In the event you fail to deliver to us a certificate evidencing liability and physical damage insurance complying with the terms of this Lease, you will pay us for the insurance we obtain, with each Rent payment, an amount we calculate that will include (a) a premium that may be higher than if you maintained the required insurance, (b) a finance charge of up to 1.5% per month on any advances of premium made by us or our agents or a monthly property damage surcharge up to .35% of the equipment cost and (c) billing and processing fees which generate a profit to us and our agents. YOU HEREBY ACKNOWLEDGE AND AGREE THAT YOU WILL INCUR ADDITIONAL EXPENSE BY FAILING TO COMPLY WITH THESE INSURANCE REQUIREMENTS. We agree to discontinue billing these charges upon receipt of satisfactory evidence of the required insurance.

**12. Casualty and Risk of Loss:** You assume and shall bear the entire risk of loss, theft, destruction, damage, condemnation, or other casualty, whether or not insured against, of the Equipment from any and every cause whatsoever from and after the date of this Lease, and will hold us harmless from and against such risk.  In the event the Equipment is physically damaged to a material extent by any occurrence whatsoever, or is lost, stolen, condemned or destroyed (a "Casualty Occurrence"), you shall immediately notify us and shall, at our option, either: (a) place such Equipment in good repair, condition, and working order, acceptable to us, or (b) replace the same with like equipment of the same or later model in good repair, condition, and working order (free from all liens), or (c) pay to us an amount equal to the Casualty Value. As used herein, the "Casualty Value" shall be an amount which we reasonably calculate (without regard to insurance) to give us all of the benefits of our ownership of such Equipment and amounts payable hereunder but for such Casualty Occurrence, including: (i) any accrued and unpaid Rent as of the date of such Casualty Occurrence; (ii) the present value of all future Rent payments discounted to present value at a rate equal to 3% per annum (the "Discount Rate"); (iii) the Purchase Option Price set forth in Paragraph 5(c) discounted to present value at the Discount Rate; (iv) any depreciation or other tax benefits of ownership of the Equipment which we would have received under this Lease but for such Casualty Occurrence; and (vi) the amount of any indemnity or other obligations owed to us hereunder. In addition to the foregoing, you shall also pay to us interest from the date we calculate the Casualty Value until paid at a rate equal to the Late Charge Rate. No such Casualty Occurrence will relieve you of your duties hereunder or at the end of the Term; provided, however, that after payment in full of the Casualty Value, you shall have no further rental obligations hereunder with respect to such Equipment and shall be responsible for the sale or other disposition of such Equipment.

**13. Indemnification:** You shall  indemnify us, our officers, shareholders, employees, agents, successors or assigns ("Indemnified Parties"), against and hold all Indemnified Parties harmless from, any and all claims, actions, suits, proceedings, damages, cost, expenses, obligations, liabilities and liens, including without limitation any of the foregoing arising or imposed in connection with  latent or other defects of the Equipment, negligence, gross negligence, strict liability, patent liability or any other malfeasance, on account of personal injury, property damage or otherwise, imposed on or incurred by or asserted against any Indemnified Parties including, without limitation, reasonable attorneys' fees incurred in connection with the foregoing, in any way relating to this Lease, or in any way relating to the manufacture, purchase, acceptance, rejection, ownership, delivery, installation, possession, use, operation, maintenance, condition, registration, sale, return, replacement, storage or disposition of the Equipment, or any accident in connection therewith or by operation of law. You shall give us prompt written notice of any matter hereby indemnified against and agrees

that unless directed to the contrary by notice from us, you shall assume full responsibility for the defense thereof. The indemnity in this Paragraph shall include all occupational safety and environmental liability, including any that result from your breach of the terms hereof.

**14. Taxes and Fees:** You shall be responsible for and shall indemnify and hold us harmless against any and all sales, use, property, excise and other taxes, all license, penalties and fines, and registration fees now or hereafter imposed by any governmental body or agency upon the Equipment or its use or the Rent hereunder.  If we pay any of the above for you, you agree to reimburse us on demand.  You also agree to reimburse us on demand for any filing or release fees and other reasonable administrative expenses. Sales or use tax due up front may be billed monthly, plus a finance charge.  Upon our request, you shall prepare and file all tax returns relating to taxes for which you are permitted to file under the laws of the applicable taxing jurisdiction.

**15. Assignment:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN OR SUBLEASE THE EQUIPMENT OR THIS LEASE WITHOUT OUR PRIOR WRITTEN CONSENT AND ANY SUCH EVENT SHALL CONSTITUTE AN IMMEDIATE EVENT OF DEFAULT. You shall not (i) permit the sale or transfer of any shares of your capital stock or of any of your ownership interest to any person, persons, entity or entities (whether in one transaction or in multiple transactions) which results in a transfer of a majority interest in your ownership and/or the control of the Lessee from the person, persons, entity or entities who hold ownership and/or control of the Lessee as of the date of this Equipment Master Lease; (ii) consolidate with or merge into or with any other entity, or purchase or otherwise acquire all or substantially all of the assets or stock or other ownership interest of any person or entity or sell, transfer, lease or otherwise dispose of all or substantially all of your assets to any person or entity; or (iii) allow a Blocked Person to have an ownership interest in or control of Lessee. "Blocked Person" means any person or entity that is now or at any time (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed  by law, including any executive order of any branch or department of the United States government or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over us, to be a person with whom we are not permitted to extend credit to or with regard to whom, a lessee relationship may result in penalties against us or limitations on a lessor's ability to enforce a transaction. Any change in ownership or control of you or any sale of your assets outside of the ordinary course of business constitutes reasonable grounds for insecurity, entitling us to proceed under Minn. Stat. § 336.2A-401.  You shall provide us written notice of such change or sale fifteen (15) days prior to the change or sale occurring. We may sell, assign or transfer this Lease and our interest in the Equipment without any notice to you. You agree that if we sell, assign or transfer any interest in this Lease or the Equipment, the transferee will have the same rights and benefits that we have and will not have to perform any of our obligations.  You agree that the rights of the transferee will not be subject to any claims that you may have against us.

**16. Default:** Any one or more of the following will constitute an Event of Default under this Lease:

a. You fail to pay Rent or any other sum to be paid under this Lease as and when due;

b. You fail at any time to procure or maintain any insurance coverage required by this Lease;

c. You attempt to sell, transfer, assign or sublease the Equipment or your interest in any Lease in violation of Paragraph 15 hereof;

d. You fail to perform or observe any duty, obligation or covenant contained in this Lease other than those set forth in subparagraph (a) through subparagraph (c) above, inclusive, and such failure continues for ten (10) days after the earlier of: (i) the day we provide you written notice of such default; or (ii) the date that any of your officers or employees have actual knowledge of the event, condition or occurrence  that constitutes the Event of Default;

e. You become insolvent or unable to pay your debts as they mature or in accordance with customary business practice or you commit an act of bankruptcy, or apply for, consent to, or acquiesce in the appointment of a trustee or a receiver for you or any of your property or in the absence of such application, consent or acquiescence, a trustee or receiver is appointed for you or for a substantial part of your property  or any bankruptcy, insolvency, dissolution or liquidation proceeding is instituted by or against you and, in each case, is not discharged within thirty (30) days thereof;

f. There is a  transfer, termination, cessation or liquidation of your business or that of any corporate guarantor or if an individual guarantor should die or any guarantor shall suffer an event described in subsection e, above;

g. Any representation, warranty or statement of material fact made or furnished to us or our representatives by or on behalf of you, or any financial statement, document, instrument or other information submitted to us or our representatives by or on behalf of you, is false or misleading in any material respect;

h. An event of default shall occur under any Lease or other obligation you owe to us;

*TWS*

i. You change your name or jurisdiction of organization without 90 days prior written notice to us;

j. You merge, consolidate or otherwise change your organizational form without our prior written consent.

**17. Remedies Upon Default:** Upon the occurrence of any Event of Default as defined in Paragraph 16 above, and at any time thereafter, we may, at our option, and with or without notice, declare the Casualty Value and other amounts payable or to become payable to us under and by reason of this Lease and any other Lease or obligation you owe to us, to be immediately due and payable, and may proceed to enforce payment of such obligations and to exercise any and all rights and remedies provided for by this Lease and any other obligation, by any statute or otherwise available by law, in equity or in bankruptcy, or insolvency proceeding, including without limitation the following:

a.    proceed by appropriate court actions to enforce performance by you or to recover from you any and all damages and expenses which we sustain by reason of your default or an account of our enforcement of remedies under this Lease, including without limitation reasonable attorneys' fees;

b.    terminate your rights under this and any other Lease or other obligation to us; and/or

c.    take possession of or disable the Equipment.  We will have the right to remove the Equipment from your property, and, for the purposes of removal and possession, we or our representatives may enter any of your premises without legal process.  We may require you to assemble the Equipment and to make it available to us at any place we designate.  You voluntarily and knowingly waive, to the extent permitted by law, any and all rights to notice and/or hearing prior to any retaking of possession of the Equipment by us or our representatives.  Upon any retaking of possession of the Equipment by us, all your rights in the Equipment, or to its use and possession, shall terminate.  Repossession will not, however, constitute a termination of this Lease unless we expressly so notify you in writing, and notwithstanding any repossession of the Equipment, or any other action which we may take under this Lease, you shall be and remain liable for the full performance of all obligations on your part to be performed under this Lease including the payment of all Rent, maintenance of all insurance and indemnification of us.

All remedies hereunder are cumulative, and may be exercised concurrently or separately; provided, however that: (i) nothing in this Paragraph 17 shall be construed as granting or conferring to us or imposing on you a duplicative right, entitlement, obligation, or recovery with respect to any matter arising out of the same facts and circumstances; (ii) no provision hereof shall be construed to provide us recovery for any costs, damages or other amounts for which we have been fully compensated by you under any other provision of this Lease; and (iii) remedies hereunder are intended only to allow us to enjoy the benefit of the bargain and to make us whole.

If we incur any expenses, including attorneys' fees, in the enforcement of any of our rights under this Lease, or if we bring any action, proceeding or suit, then we may recover from you such reasonable expenses so incurred.  Promptly after you have notice thereof, you shall give notice to us of any Event of Default and any event that has occurred and is continuing which constitutes an Event of Default but for the requirement that notice be given or time lapse or both.

**18. Non-Cancellable Lease:** This Lease cannot be cancelled or terminated except as expressly provided herein. YOU CONFIRM FOR OUR BENEFIT AND THE BENEFIT OF ANY ASSIGNEE OR TRANSFEREE OF ANY OF OUR INTEREST IN THE LEASE THAT THE LEASE IS YOUR ABSOLUTE, UNCONDITIONAL OBLIGATION AND NOT SUBJECT TO ANY RIGHT OF SETOFF OR REDUCTION OF RENT OR OTHER OBLIGATIONS OR ANY COUNTERCLAIM OR DEFENSE FOR ANY REASON WHATSOEVER, ALL OF WHICH ARE HEREBY WAIVED TO THE FULLEST EXTENT PERMITTED BY LAW. This understanding is a material consideration to our entering into this Lease and is consistent with your decision to finance acquisition of the Equipment hereunder rather than by borrowing the funds and purchasing the Equipment. YOUR OBLIGATIONS HEREUNDER SHALL SURVIVE EXPIRATION OR TERMINATION FOR ANY REASON OF THE LEASE.

**19. Finance Lease; Security Interest:** This is an agreement of lease and it is the intention of the parties that this agreement constitutes a true lease that is a finance lease as that term is defined in Article 2A of the Uniform Commercial Code. You acknowledge that (a) you have reviewed and approved any written contract with the Supplier pursuant to which the Equipment is purchased (the "Supply Contract"); and (b) we have informed or advised you in writing, either previously or by this Lease of the identity of the Supplier; that you may have rights under the Supply Contract; and that you may contact the Supplier for a description of any such rights you may have under the Supply Contract. If, notwithstanding the intention of the parties, this Lease is deemed to be a loan, you hereby grant to us a first priority purchase money security interest in the Equipment (including all inventory, fixtures and

other property comprising the same). In any event, as additional security for your obligations under this Lease, you hereby grant us a first priority security interest in the any and all general intangibles, additions, attachments, accessories and accessions to the Equipment and any subleases, chattel paper, accounts and security deposits relating to the foregoing and any and all proceeds therefore. References to replacements, substitutions, additions, attachments, chattel paper, accounts, proceeds or any of the foregoing do not authorize any sale, lease, transfer, modification, replacement, alteration or other actions impacting the Equipment and such activities are allowed only to the extent provided for hereunder.

**20. Security Deposit:** You shall pay to us the security deposit on the first page of this Lease upon execution. If for any reason this Lease is not finalized or the Equipment not accepted, it is specifically agreed that we may retain this security deposit as liquidated damages for loss of a bargain and that we have fully earned such amount.  You agree that the security deposit will not bear interest, may be commingled with other funds and that we may apply it to any amount due under this Lease, in which event you will restore the security deposit to its original amount promptly. Such security deposit will be returned to you at the expiration of this Lease, less any amounts outstanding hereunder and any outstanding charges or expense.

**21. Consent to Minnesota Law, Jurisdiction and Venue:** It is agreed between the parties that this Lease has been negotiated within Stearns County, Minnesota, and finally executed within Stearns County, Minnesota, and accordingly, the Lease and all related documentation shall be governed by, and construed in accordance with, the laws of the State of Minnesota (without regard to principles of conflicts of laws) and any suit by either of the parties pursuant to this Lease shall be maintained in and the venue for any such litigation shall be in Stearns County District Court, Stearns County, Minnesota.

**22. Waivers:** No party hereto will be deemed to have waived any right, power, or privilege under this Lease or any provision hereof unless such waiver shall have been executed in writing by the party to be charged with such waiver or expressly stated herein.  The failure of any party hereto to enforce at any time any of the provisions of this Lease will in no way be construed to be a waiver of such provisions, nor in any way affect the validity of this Lease or any part thereof, or the right of any party to thereafter enforce each and every such provision.  No waiver of any breach of this Lease will be held to be a waiver of any other or subsequent breach.  All remedies afforded in this Lease will be taken and construed as cumulative and in addition to every other remedy provided herein or by law. EACH PARTY WAIVES THE RIGHT TO TRIAL BY JURY.  You waive all rights and remedies under UCC Article 2A to the extent permitted by law.

**23. Integration:** This Lease shall constitute the entire agreement between the parties, and shall not be modified except in writing signed by an authorized executive officer on behalf of the parties hereto. Without limiting the foregoing, it is expressly agree that this Lease cannot be modified by course of performance.

**24. Further Assurances:** You grant us authority to file any financing statements necessary to protect and preserve our ownership of or rights in the Equipment. Promptly upon our written request, you agree at your expense to execute, acknowledge and deliver such instruments, and to take such other action, as may reasonably be necessary in our opinion to protect our or our assignee's or transferee's interest in the Equipment, this Lease and any Rent, including without limitation the obtaining and execution of landlord and mortgagee waivers, certificates of title, financing statements in recordable form, and a search for any judgment or liens against you.  You also agree to provide such financial information relating to you as we may from time to time reasonably request.  We may file or record a copy of this Lease as a financing statement or for any other purpose. You acknowledge that we may change insertions in any Lease to correct obvious clerical errors or adjust for final, documented costs and Equipment price and description. In the event there is more than one Lessee named in this Lease, the obligations of each shall be joint and several. Time is of the essence with respect to the obligations of Lessee under this Lease.

**25. Binding Effect:** This Lease shall be binding upon the parties hereto and upon their respective successors, and permitted assigns.

**26. Severability:** If this Lease or any provision hereof shall be deemed invalid, illegal or unenforceable in any respect or in any jurisdiction, the validity, legality and enforceability of this Lease in all other respects and in other jurisdictions shall not be in any way impaired or affected thereby

**27. Notices:** Unless otherwise specifically provided hereunder, any notice, consent or other communication required or permitted to be given by any provision of this Lease shall be in writing and shall be deemed to have been duly and properly given or served for any purpose if delivered via United States First Class mail, postage prepaid, and addressed to the address set forth at the first page hereof or at such other address as such party may give notice of in accordance with this paragraph from time to time. We may rely on your facsimile signature or copies of signed documents transmitted to us by electronic mail or fax.

# Exhibit 5

Exhibit A - Form of Participation Certificate
PARTICIPATION CERTIFICATE

This Participation Certificate is entered into by Farm Credit Leasing Services Corporation and Northland Capital Financial Services, LLC, pursuant to that Master Participation Agreement ("Agreement") dated as of July 14, 2008. The capitalized terms herein shall have the meanings provided in the agreement unless otherwise defined herein.

Total Consideration: [redacted] [redacted] 5/23/2018

| Lessee No. | Lessee | Consideration Amount | Proportionate Share (FCL Purchase | FCL Buy Rate | Closing Date of Participation | Lease Start Date | Maturity Date | Equipment | Equipment Cost | Original Term | Remaining Payments | Payment Amount | Pmt Freq | P.O. Type | Residual | Total Lease Receivable | Receivable + Residual |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [redacted] | | $ [redacted] | 100% | [redacted] | 5/22/2018 | 9/8/17 | 10/29/22 | 2016 Trail King Belt Trailer | 64,640.00 | 61 | 52 | 900.00 | Monthly | 10% | 16,000.00 | 46,800.90 | 62,800.00 |
| | | $ | 100% | | 5/22/2018 | 3/19/18 | 3/15/23 | 2018 Soil Max ZC Stealth Tile Plc | 40,758.00 | 60 | 13 | 4,285.19 | Semi-Annual | $1.00 | 101.00 | 42,651.30 | 42,752.30 |
| | | $ | 100% | | 5/22/2018 | 2/14/18 | 2/10/23 | 2017 Massey Ferguson 2170 XD Bale | 108,800.00 | 60 | 58 | 1,949.98 | Monthly | 10% | 10,880.00 | 109,109.44 | 120,089.44 |
| | | $ | 100% | | 5/22/2018 | 9/26/17 | 10/1/22 | 2016 John Deere 640FD HydraFlex. | 83,700.00 | 60 | 4 | 17,783.89 | Annual | 10% | 8,000.00 | 71,135.56 | 79,135.56 |
| | | $ | 100% | | 5/22/2018 | 9/23/17 | 3/25/23 | 2016 Timpte 4368 Super Hopper Tra | 37,268.00 | 66 | 5 | 7,552.61 | Various | $1.00 | 101.00 | 35,263.25 | 35,364.09 |
| | | $ | 100% | | 5/22/2018 | 10/2/17 | 1/15/23 | 2015 Aulick Belt Trailer | 71,250.00 | 63 | 4 | 14,894.90 | Annual | 10% | 7,100.00 | 59,576.30 | 66,676.00 |
| | | $ | 100% | | 5/22/2018 | 9/19/17 | 11/25/22 | 2009 John Deere 9630 Tractor | 130,631.00 | 62 | 4 | 25,456.26 | Various | 10% | 18,633.00 | 101,821.04 | 120,454.04 |
| | | $ | 100% | | 5/22/2018 | 2/16/18 | 3/16/24 | 2018 Western 48' Ag Live Floor Tr | 75,950.00 | 73 | 69 | 1,173.01 | Monthly | $1.00 | 101.00 | 80,937.89 | 81,038.89 |
| | | $ | 100% | | 5/22/2018 | 9/19/17 | 5/1/23 | 2018 Wilson DWH550 Hopper Trailer | 53,910.00 | 68 | 10 | 4,815.56 | Semi-Annual | $1.00 | 101.00 | 40,155.50 | 40,256.50 |
| | | $ | 100% | | 5/22/2018 | 11/9/17 | 1/5/23 | 2011 Huhn 6750 Manure Tank w/201 | 64,246.37 | 62 | 4 | 13,790.25 | Annual | 10% | 6,200.00 | 55,041.00 | 61,329.00 |
| | | $ | 100% | | 5/22/2018 | 10/8/17 | 11/28/22 | 2015 Eby Possum Belly Livestock T | 58,979.00 | 61 | 53 | 1,140.00 | Monthly | $1.00 | 101.00 | 60,420.00 | 60,521.00 |
| | | $ | 100% | | 5/22/2018 | 10/2/17 | 11/4/22 | 2018 Peler Tanker Trailer | 60,960.00 | 61 | 53 | 1,166.81 | Monthly | $1.00 | 101.00 | 61,899.93 | 62,000.93 |
| | | $ | 100% | | 5/22/2018 | 12/1/17 | 12/1/22 | 2016 BWS EZ-2-Load Low Boy Trailer | 45,900.00 | 60 | 4 | 9,807.12 | Annual | 10% | 4,250.00 | 38,228.48 | 43,478.48 |
| | | $ | 100% | | 5/22/2018 | 1/24/18 | 1/20/23 | 2012 Caterpillar Excavator | 101,469.00 | 60 | 9 | 9,702.10 | Semi-Annual | 10% | 9,950.00 | 87,318.90 | 97,268.90 |
| | | $ | 100% | | 5/22/2018 | 6/18/16 | 11/20/21 | 2012 Claas 760 Combine | 401,510.00 | 77 | 3 | 28,410.00 | Annual | 10% | 15,513.85 | 85,232.67 | 100,746.52 |
| | | $ | 100% | | 5/22/2018 | 12/22/15 | 12/15/20 | 2016 Aztec TR3805-8 Live Bottom | 114,400.00 | 60 | 5 | 11,885.00 | Various | 10% | 11,000.00 | 59,425.00 | 70,425.00 |
| | | $ | 100% | | 5/22/2018 | 10/12/17 | 11/16/22 | 2018 MAC Dump Trailer | 68,321.00 | 61 | 53 | 1,335.35 | Monthly | $1.00 | 101.00 | 70,773.55 | 70,874.55 |
| | | $ | 100% | | 5/22/2018 | 12/11/17 | 12/1/21 | 2017 MacDon FD75 45' FlexDraper & | 90,900.00 | 48 | 3 | 14,815.74 | Annual | 10% | 9,006.00 | 44,447.22 | 53,447.22 |
| | | $ | 100% | | 5/22/2018 | 3/7/18 | 3/7/23 | 2017 Houle 5300 Gator Manure Tan | 53,800.00 | 60 | 57 | 880.00 | Monthly | 10% | 5,380.00 | 56,430.00 | 61,810.00 |
| | | $ | 100% | | 5/22/2018 | 3/16/18 | 4/28/24 | 2018 Travis End Dump Trailer | 54,290.00 | 73 | 70 | 831.62 | Monthly | 10% | 8,085.00 | 58,213.40 | 66,298.40 |
| | | $ | 100% | | 5/22/2018 | 9/13/17 | 8/15/21 | 2012 Aulick Trailer | 58,275.00 | 48 | 7 | 6,682.83 | Semi-Annual | $1.00 | 101.00 | 46,849.81 | 46,950.81 |
| | | $ | 100% | | 5/22/2018 | 3/27/18 | 3/21/23 | 2017 Jamesway 7400 GL Spreader | 60,955.82 | 60 | 19 | 2,733.98 | Various | 10% | 7,312.56 | 51,945.62 | 59,258.12 |
| | | $ | 100% | | 5/22/2018 | 10/10/16 | 11/14/21 | 2017 Merritt Livestock Trailer | 67,300.00 | 61 | 41 | 1,225.15 | Monthly | 10% | 6,650.00 | 50,231.15 | 56,881.15 |
| | | $ | 100% | | 5/22/2018 | 2/6/18 | 1/25/22 | 2011 Wilson Livestock Trailer | 38,380.00 | 47 | 43 | 856.82 | Monthly | 10% | 3,800.00 | 36,800.26 | 40,600.26 |
| | | $ | 100% | | 5/22/2018 | 10/27/17 | 9/24/22 | 2015 Merritt Livestock Trailer | 56,180.00 | 59 | 51 | 1,022.98 | Monthly | 10% | 5,550.00 | 52,171.98 | 57,721.98 |
| | | $ | 100% | | 5/22/2018 | 10/30/17 | 1/20/22 | 2016 New Holland C227 Track Load | 84,026.00 | 51 | 7 | 11,134.01 | Semi-Annual | 10% | 8,372.90 | 77,938.07 | 86,310.97 |
| | | $ | 100% | | 5/22/2018 | 5/4/17 | 5/10/22 | 4- 2016 Western Hopper Trailers | 182,276.00 | 60 | 47 | 3,225.06 | Monthly | 10% | 27,468.00 | 152,047.82 | 179,515.82 |
| | | $ | 100% | | 5/22/2018 | 8/28/17 | 8/20/21 | 2011 Western 53' Chip Trailer | 51,430.00 | 48 | 38 | 1,130.51 | Monthly | 10% | 4,800.00 | 42,959.38 | 47,759.38 |
| | | $ | 100% | | 5/22/2018 | 3/28/18 | 3/28/24 | 2018 Walker 3A Tanker Trailer | 63,400.32 | 72 | 69 | 1,003.00 | Monthly | 10% | 6,283.20 | 69,207.00 | 75,490.20 |
| | | $ | 100% | | 5/22/2018 | 1/18/18 | 2/15/22 | 2017 Wilson Possum Belly Trailer | 56,100.00 | 48 | 44 | 1,037.00 | Monthly | 10% | 5,500.00 | 45,628.00 | 51,128.00 |
| | | $ | 100% | | 5/22/2018 | 11/29/17 | 12/1/23 | 2018 Timpte T3682 Hopper Trailer. | 50,910.00 | 72 | 67 | 724.84 | Monthly | $1.00 | 101.00 | 48,570.98 | 48,671.98 |
| | | $ | 100% | | 5/22/2018 | 11/13/17 | 10/10/22 | 2015 Merritt 4-Deck CS Livestock | 60,600.00 | 58 | 52 | 1,098.21 | Monthly | 10% | 6,000.00 | 57,106.92 | 63,106.92 |
| | | $ | 100% | | 5/22/2018 | 2/22/18 | 3/23/22 | 2018 Merritt Livestock Trailer | 46,404.00 | 49 | 46 | 1,003.16 | Monthly | $1.00 | 101.00 | 46,141.75 | 46,242.75 |
| | | $ | 100% | | 5/22/2018 | 2/27/18 | 1/23/22 | 2018 Merritt Pork Pot Livestock | 41,500.00 | 47 | 43 | 984.58 | Monthly | $1.00 | 101.00 | 42,353.26 | 42,454.26 |
| | | $ | 100% | | 5/22/2018 | 9/30/15 | 10/25/20 | 2016 Wilson Patriot Ball Trailer | 78,780.00 | 61 | 28 | 1,202.83 | Monthly | 20% | 15,600.00 | 33,682.04 | 49,282.04 |
| | | $ | 100% | | 5/22/2018 | 11/10/15 | 12/17/20 | 2016 Wilson Patriot Ball Trailer | 81,604.00 | 61 | 30 | 1,253.92 | Monthly | 20% | 16,175.00 | 37,617.60 | 53,792.60 |
| | | $ | 100% | | 5/22/2018 | 3/5/18 | 2/5/24 | 2019 Wilson DWHT-650PS Double Wo | 84,750.20 | 71 | 69 | 1,339.49 | Monthly | 10% | 8,382.00 | 92,445.32 | 100,827.32 |
| | | $ | 100% | | 5/22/2018 | 10/19/17 | 11/23/21 | 2012 Wilson PSDCL-411P Livestock | 58,750.25 | 49 | 41 | 1,396.38 | Monthly | $1.00 | 101.00 | 57,210.66 | 57,311.50 |
| | | $ | 100% | | 5/22/2018 | 4/3/18 | 5/28/23 | 2012 John Deere 1770NT 24r30 | 89,345.00 | 61 | 4 | 19,137.37 | Various | 10% | 8,450.00 | 76,549.46 | 85,039.46 |
| | | $ | 100% | | 5/22/2018 | 4/11/19 | 5/28/24 | 2019 Merritt Livestock Trailer. | 76,152.99 | 73 | 71 | 1,313.73 | Monthly | $1.00 | 101.00 | 93,274.83 | 93,375.83 |
| | | $ | 100% | | 5/22/2018 | 12/26/17 | 12/28/22 | 2017 Western Walking Floor Traile | 93,480.00 | 60 | 54 | 1,689.19 | Monthly | 10% | 8,904.00 | 90,136.26 | 99,040.26 |
| | | $ | 100% | | 5/22/2018 | 1/16/18 | 1/1/23 | 2014 Roto-Mix 620-16 Mixer | 168,958.86 | 60 | 55 | 2,729.22 | Monthly | 20% | 33,291.74 | 150,052.10 | 183,343.88 |
| | | $ | 100% | | 5/22/2018 | 12/19/16 | 12/1/21 | 2013 Merritt Livestock Trailer | 56,193.90 | 60 | 42 | 966.83 | Monthly | 20% | 11,000.00 | 40,144.86 | 51,144.86 |
| | | $ | 100% | | 5/22/2018 | 7/13/16 | 11/13/21 | 2015 Oxbo 6120 Grape Harvester | 313,500.00 | 64 | 3 | 52,884.87 | Various | 20% | 62,560.00 | 158,094.91 | 220,634.91 |
| | | $ | 100% | | 5/22/2018 | 8/3/16 | 11/25/23 | 2016 Oxbo Grape Harvester | 314,865.00 | 87 | 5 | 51,413.02 | Various | 10% | 31,396.50 | 257,065.10 | 288,460.80 |
| | | $ | 100% | | 5/22/2018 | 10/31/17 | 7/15/22 | 2018 John Deere 7750 Forage Harve | 236,474.24 | 57 | 5 | 78,823.86 | Various | 10% | 24,977.54 | 228,990.88 | 253,967.82 |
| | | $ | 100% | | 5/22/2018 | 9/26/17 | 10/25/22 | 2018 Western 48' Express Wea Bel | 94,771.00 | 61 | 62 | 1,383.06 | Monthly | 20% | 18,854.20 | 72,469.80 | 89,324.00 |
| | | $ | 100% | | 5/22/2018 | 11/16/17 | 12/10/23 | 2018 Tremcar Tanker Trailer | 56,100.00 | 73 | 66 | 880.83 | Monthly | 10% | 5,500.00 | 57,400.78 | 62,900.78 |
| | | $ | 100% | | 5/22/2018 | 1/8/18 | 2/8/24 | 2018 Wilson Livestock Trailer | 90,640.47 | 73 | 64 | 1,252.21 | Monthly | 20% | 18,580.00 | 85,150.28 | 103,730.28 |
| | | $ | 100% | | 5/22/2018 | 1/10/18 | 1/10/23 | 2017 McHale Baler | 42,000.00 | 60 | 55 | 720.42 | Monthly | 10% | 3,850.00 | 39,823.10 | 43,673.10 |
| | | $ | 100% | | 5/22/2018 | 2/15/17 | 8/15/23 | 2016 Soil Max 3PT Tile Plow | 51,306.13 | 78 | 20 | 2,137.27 | Various | 10% | 5,119.61 | 42,745.40 | 47,865.01 |
| | | $ | 100% | | 5/22/2018 | 2/17/17 | 10/26/22 | 2014 HAGIE 2007 WILLMAR WRANG | 204,275.00 | 68 | 8 | 19,505.00 | Various | 10% | 20,497.60 | 156,527.92 | 177,025.52 |
| | | $ | 100% | | 5/22/2018 | 2/27/17 | 3/27/21 | 2018 Timpte Super Hopper Trailer | 46,228.56 | 49 | 33 | 810.00 | Monthly | 20% | 13,552.50 | 26,730.00 | 40,282.50 |
| | | $ | 100% | | 5/22/2018 | 8/7/17 | 9/27/21 | 2016 Timpte Super Hopper Trailer | 46,381.50 | 49 | 39 | 813.00 | Monthly | 20% | 13,597.50 | 31,707.00 | 45,304.50 |
| | | $ | 100% | | 5/22/2018 | 3/26/18 | 4/27/22 | 2019 Timpte Super Hopper Trailer | 46,407.00 | 49 | 46 | 821.00 | Monthly | 20% | 13,605.00 | 37,766.00 | 51,371.00 |
| | | $ | 100% | | 5/22/2018 | 3/27/17 | 3/25/22 | 2013 Landoll 7450 Coulter | 72,800.00 | 60 | 4 | 12,574.36 | Various | 10% | 10,500.00 | 50,297.44 | 60,797.44 |
| | | $ | 100% | | 5/22/2018 | 8/26/17 | 8/28/22 | 2012 Case IH 8120 Combine | 121,399.00 | 60 | 9 | 11,335.00 | Monthly | 20% | 24,200.00 | 102,015.60 | 126,215.60 |
| | | $ | 100% | | 5/22/2018 | 3/30/18 | 12/26/23 | 2011 Regular Sprayer | 132,290.00 | 69 | 5 | 14,080.00 | Annual | 10% | 13,200.00 | 70,400.00 | 83,600.00 |
| | | $ | 100% | | 5/22/2018 | 3/20/17 | 3/23/22 | 2017 Fiedly PtoSlab 155 Self-Pro | 277,506.20 | 60 | 45 | 3,982.00 | Monthly | 10% | 39,204.00 | 179,190.00 | 218,394.00 |
| | | $ | 100% | | 5/22/2018 | 2/7/18 | 2/1/23 | 2018 Brouwer Kesmac Sod Harvester | 240,483.32 | 60 | 9 | 23,192.00 | Various | 10% | 36,863.75 | 208,728.00 | 244,591.75 |
| | | $ | 100% | | 5/22/2018 | 11/1/17 | 11/20/22 | 2015 MacDon DF75 Flex Draper Head | 71,075.00 | 60 | 4 | 14,283.91 | Annual | 10% | 6,750.00 | 57,135.64 | 63,885.64 |
| | | $ | 100% | | 5/22/2018 | 6/22/17 | 5/28/23 | 2017 Dion F-41 Kernal Processor | 98,725.75 | 71 | 10 | 9,875.00 | Semi-Annual | $1.00 | 101.00 | 98,750.00 | 98,851.00 |
| | | $ | 100% | | 5/22/2018 | 6/30/17 | 6/28/22 | 2018 John Deere S670 Combine | 180,300.00 | 60 | 4 | 33,798.78 | Various | 10% | 33,798.78 | 135,199.12 | 168,998.90 |
| | | $ | 100% | | 5/22/2018 | 4/5/18 | 4/1/22 | 2019 Timpte Hopper Trailer | 62,750.00 | 48 | 3 | 14,029.44 | Annual | 20% | 14,029.44 | 42,088.32 | 56,117.76 |
| | | $ | 100% | | 5/22/2018 | 8/30/17 | 8/28/22 | 2018 John Deere S670 Combine | 180,300.00 | 60 | 4 | 33,799.78 | Annual | 10% | 33,799.78 | 135,199.12 | 168,998.90 |
| | | $ | 100% | | 5/22/2018 | 7/26/17 | 7/26/23 | 2017 FeeFly Sod Harvester | 200,225.44 | 72 | 61 | 3,902.00 | Monthly | $1.00 | 101.00 | 236,022.00 | 236,123.00 |
| | | $ | 100% | | 5/22/2018 | 7/31/17 | 1/5/23 | 2017 New Leader Spreader Box | 56,000.30 | 66 | 4 | 11,015.40 | Various | 10% | 5,500.00 | 44,061.60 | 49,611.60 |
| | | $ | 100% | | 5/22/2018 | 7/31/17 | 5/20/23 | 2017 Weldcraft Pistachio | 220,483.77 | 70 | 4 | 40,594.36 | Various | 10% | 20,927.50 | 182,377.44 | 183,304.84 |
| 16538-001 | Todd W. Smith | $ 207,450.42 | 100% | [redacted] | 5/22/2018 | 8/28/17 | 7/1/22 | 2016 Deutz Fahr 7250 Agrotron Tra | 250,825.00 | 58 | 5 | 45,481.80 | Various | $1.00 | 101.00 | 232,408.40 | 232,509.40 |
| [redacted] | | $ [redacted] | 100% | [redacted] | 5/22/2018 | 9/13/17 | 10/20/23 | 2017 Polar Tanker Trailer | 80,388.00 | 73 | 64 | 1,241.23 | Monthly | 10% | 7,950.00 | 79,430.72 | 87,380.72 |
| | | $ | 100% | | 5/22/2018 | 3/15/17 | 8/1/23 | 2018 JET Ag Detachable Self Conta | 74,522.00 | 71 | 62 | 1,240.31 | Monthly | $1.00 | 101.00 | 77,283.02 | 77,384.02 |

# Exhibit 6



ARKANSAS
SECRETARY OF STATE
*Mark Martin*

ATTN: To ensure that your payment is processed in a timely manner, please confirm that the following originator id for ACH Debit ████ 7581 is on file with your bank.

ATTN: To ensure that your payment is processed in a timely manner, please confirm that the following originator id for ACH Debit ████ 7581 is on file with your bank.

Thank you! Your UCC Filing was submitted successfully.

### UCC - New Filing

| | |
|---|---|
| Filing Number: | 40000154575899 |
| Filing Time: | 8/29/2017 01:03 PM |
| Expiration Date: | 8/29/2022 12:00 AM |
| Reference Number: | 16538-001 |
| Optional Filer Reference Data: | 16538-001 |

### Debtor (1)

| | |
|---|---|
| Surname: | SMITH |
| First Personal Name: | TODD |
| Additional Name (s)/Initial(s): | WELDON |
| Suffix: | |
| Mailing Address: | 138 BAXLEY ROAD |
| City: | MC RAE |
| State: | AR |
| Zip Code: | 72102 |
| Country: | USA |

### Secured Party (3)

| | |
|---|---|
| Company Name: | NORTHLAND CAPITAL FINANCIAL SERVICES, LLC |
| Mailing Address: | PO BOX 7278 |
| City: | SAINT CLOUD |
| State: | MN |
| Zip Code: | 56302 |
| Country: | USA |

| | |
|---|---|
| Description of Collateral: | 2015 DEUTZ FAHR 7250 AGROTRON TRACTOR. SN: WSXV910200ID10724 |

Alternative Designation (if applicable):

X   Lessee/Lessor
    Consignee/Consignor
    Bailee/Bailor
    Seller/Buyer
    Licensee/Licensor

**This FINANCING STATEMENT is to be filed [for record](or recorded) in the REAL ESTATE RECORDS.**

This FINANCING STATEMENT covers:
    timber to be cut
    as-extracted collateral
    is filed as a fixture filing.



**Description of Real Estate:**

Name and address of a
RECORD OWNER of above-
described real estate (if Debtor
does not have a record interest):

**Collateral is:**

    held in a trust

    being administered by a Decedent's Personal Representative

X  **Not Applicable**

    **Ag. Lien**

    **Non-UCC Filing**

X  **Not Applicable**

    **Debtor is a Transmitting Utility**

    **Filed in connection with a Manufactured-Home Transaction - effective 30 years.**

    **Filed in connection with a Public-Finance Transaction - effective 30 years.**

Submit another UCC Filing    Return to Main Menu

# Exhibit 7



**STINSON
LEONARD
STREET**

Benjamin J. Court
612.335.1615 **DIRECT**
612.335.1657 **DIRECT FAX**
benjamin.court@stinson.com

January 24, 2019

**Via US Mail and Certified Mail**

Scott Bles
Bles Law Firm, PLC
900 W. Center St.
P.O. Box 995
Beebe, AR 72012

Re:   NOTICE OF DEFAULT AND DEMAND FOR PAYMENT CONCERNING
TODD WELDON SMITH

Dear Mr. Bles:

We serve as legal counsel to Farm Credit Leasing Services Corporation ("FCL"). We understand that you represent Todd Weldon Smith. Please let us know immediately if our understanding is incorrect.

As Mr. Smith's counsel, please be advised that Mr. Smith **IS IN DEFAULT** of: (1) that certain Lease Agreement and Schedule A identified as Contract Number 001-0088777-000, both dated July 24, 2017, by and between Mr. Smith and FCL; and (2) that certain Equipment Master Lease Agreement identified as Contract Number 16538-001, dated August 1, 2017, by and between Mr. Smith and Northland Capital Financial Services, LLC, which agreement was subsequently assigned to FCL (collectively the "Leases"), concerning the following personal property owned by FCL and leased to Mr. Smith pursuant to the terms and conditions set forth in the Leases:

- 2015 Deutz-Fahr tractor, model 7250 Agrotron, serial number WSXV910200LD01109; and

- 2015 Deutz-Fahr tractor, model 7250 Agrotron, serial number WSXV910200LD10724.

(the "Leased Assets").

This correspondence serves as notice that events of default have occurred as a consequence of Mr. Smith failing to make payments required pursuant to the terms and conditions of the Leases. As of January 4, 2019, Mr. Smith owes FCL $97,525.49.

Such failure constitutes events of default pursuant to Paragraphs 16 and 18 of the Leases.

Demand is hereby made for payment of $97,525.49, which must be received by FCL on or before January 28, 2019. If full payment is unconditionally and timely received, FCL will consider the default identified above cured. Partial payments or payments returned for insufficient funds will not cure the default.

Scott Bles
Bles Law Firm, PLC
January 24, 2019
Page 2


If full payment is not timely received, FCL will proceed with enforcement of its legal rights and remedies under the Leases and applicable law. Enforcement of such rights and remedies may include:

- Accelerating all remaining amounts due under the Leases;

- Repossessing the Leased Assets without demand or notice, and with or without court order or legal proceedings;

- Recovering all of FCL's costs and expenses, including attorneys' fees and all costs and expenses incurred by FCL in any repossession, recovery, storage, repair, sale, re-lease, or other disposition of the Leased Assets;

- Initiating a lawsuit against Mr. Smith to obtain a judgment for all aforementioned payments and other amounts due under the Leases; and

- Exercising any other remedy available in the Leases or at law or in equity, including but not limited to seeking damages, specific performance, or an injunction in federal or state court.

This correspondence is not intended to provide an exhaustive list of all events of default that may have occurred under the Leases or under any other agreement between Mr. Smith and FCL. FCL does not waive any other default not specifically listed in this correspondence, whether known or unknown to FCL, or whether such default arises under the Leases or any other agreement between Mr. Smith and FCL. Indeed, FCL does not waive, but rather it specifically reserves, all rights it may have, claims it may assert, and remedies to which it may be entitled pursuant to the Leases and all applicable laws.

Failure to timely provide payment to FCL will result in FCL exercising its rights and remedies without further notice. Your prompt attention to this matter is appreciated.

Sincerely,

Stinson Leonard Street LLP

Benjamin J. Court

Enclosures

# Exhibit 8

 **CoBANK™**

**Delivery and Acceptance**

Contract No: 001-0088777-000
Customer No: ███9576

600 Highway 169 South, Suite 300
Minneapolis, MN 55426

This Certificate is delivered to and for the benefit of Lessor and pertains to the following personal property (the "Property") which is the subject of Contract Number 001-0088777-000, to Master Lease Agreement dated as of July 24, 2017, between Farm Credit Leasing Services Corporation, as Lessor, and TODD W. SMITH as Lessee, (the "Lease"):

[See attached for equipment detail]

To the extent that the above description has been altered by us or differs from the Property description set forth in the Lease (including, but not limited to, changes to model or serial numbers), we certify that such alterations or differences are accurate and we acknowledge that, based upon this certification: 1) the Lease is hereby amended to reflect the above Property description; and 2) Lessor is hereby authorized to execute on our behalf and to file amendment(s) to any Financing Statements filed under the Uniform Commercial Code in connection with the Lease, provided that all such amendments are consistent with the above Property description.

WE HEREBY CERTIFY AND ACKNOWLEDGE that, after full inspection of the Property specified herein or in any schedule attached hereto (the 'Property') to our complete satisfaction, we have decided to lease the Property from Lessor and to accept full responsibility for the Property "AS IS" and "WHERE IS," including (without limitation) the acceptance of full responsibility for any necessary delivery and/or installation thereof.

WE HEREBY FURTHER ACKNOWLEDGE AND AGREE: 1) that the Lessor is relying on this Certificate as a condition to making payment for the Property and that, upon Lessor's remitting or becoming obligated to remit such payment, Lessor will have fully and satisfactorily performed and satisfied all its obligations under the Lease; 2) that any and all conditions to the effectiveness of the Lease or to our obligations under the Lease have been satisfied, and that we have no defenses, set-offs or counterclaims to any such obligations, and that the Lease is in full force and effect; 3) to indemnify and hold Lessor harmless from and against any and all losses and liabilities in any way arising out of any loss of or damage to the Property.

WE HEREBY FURTHER ACKNOWLEDGE THAT: 1) THE LEASE IS A NONCANCELABLE OBLIGATION; 2) OUR OBLIGATIONS THEREUNDER ARE NOT CONTINGENT UPON DELIVERY, INSTALLATION OR PROPER PERFORMANCE OF THE PROPERTY AND WILL NOT BE ABATED FOR ANY REASON WHATSOEVER; 3) UPON OUR EXECUTION OF THIS CERTIFICATE, LESSOR SHALL MAKE PAYMENT AND/OR BECOME OBLIGATED TO MAKE PAYMENT IN REGARD TO THE PURCHASE OF THE PROPERTY; 4) WE HEREBY AFFIRMATIVELY WAIVE ANY RIGHT WE HAVE OR MAY HAVE TO REQUIRE DELIVERY, INSTALLATION, OR PROPER PERFORMANCE OF THE PROPERTY AS A CONDITION PRECEDENT TO OUR OBLIGATIONS UNDER THE LEASE OR TO AVOID OR TERMINATE ANY SUCH OBLIGATIONS ON THE BASIS OF ANY SUCH RIGHT.

Delivery of an executed counterpart of a signature page of this Certificate by facsimile or email shall be as effective as delivery of a manually executed counterpart of this Certificate.

IN WITNESS WHEREOF, we have executed this Certificate as of the 25 day of JULY, 2017.

Lessee(s): TODD W. SMITH

*Todd W. Smith*
Signature

Todd W. Smith
Name

Individual
Title

## EQUIPMENT DETAIL*

| N/U | Qty | Year | Manufacturer | Model | Description | Serial No |
|-----|-----|------|--------------|-------|-------------|-----------|
| Used | 1 | 2015 | DEUTZ FAHR | 7250 Agrotron | Tractor | WSXV910200ID01109 |

* TOGETHER WITH ALL REPLACEMENTS, PARTS, REPAIRS, ADDITIONS, ACCESSIONS AND ACCESSORIES INCORPORATED THEREIN OR AFFIXED OR ATTACHED THERETO AND ANY AND ALL PROCEEDS OF THE FOREGOING, INCLUDING, WITHOUT LIMITATION, INSURANCE RECOVERIES.

Delivery and Acceptance (07/30/2015)          Contract Number  001-0088777-000          Page 1 of 1

 NORTHLAND CAPITAL

## DELIVERY AND ACCEPTANCE CERTIFICATE

To:    Northland Capital Financial Services, LLC
       333 33rd Ave S.  St. Cloud, MN 56301

The undersigned hereby certifies that all the Equipment described in the Equipment Lease Agreement ("Lease") between Northland Capital Financial Services, LLC(Lessor) and the undersigned, Contract #16538-001 dated 06-25-17 is in accordance with the terms of the said Lease, has been delivered, inspected, installed, is in good working condition, and accepted by the undersigned as satisfactory.  This Delivery and Acceptance Certificate supersedes and replaces that certain Acceptance Certificate on the Lease.  The decals, labels, etc., if required and supplied, have been affixed to the equipment as listed in said Lease.  The undersigned hereby approves payment by Lessor to the Supplier.

Notwithstanding anything in this Lease to the contrary, the Commencement Date shall be the date set forth on this Delivery and Acceptance Certificate.

A facsimile signature or copies of signed documents transmitted to us by electronic mail or fax shall be as binding as an original signature for execution of this document.

X 08-25-17
Date of Delivery

08-25-17
Commencement Date


Todd W. Smith
(Lessee)

By: X  _____

Title: _____