IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS


FARM CREDIT LEASING SERVICES CORPORATION

PLAINTIFF,

V.                                      NO. 4:19-cv-00280-KGB

TODD WELDON SMITH,

DEFENDANT

## ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIM

Comes the Defendant, Todd Weldon Smith, and for his answer to amended complaint and counterclaim, states:

1.      Defendant admits paragraphs 1 and 2.

2.      Defendant denies paragraphs 3 and 4 because Defendant never received the personal property Plaintiff's complaint mentions.

3.      Defendant denies paragraphs 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33 and 34.

4.      That Defendant never received the subject tractor that Plaintiff has filed suit over.

5.      That the lease agreement was forged and Defendant did not sign Exhibit 1 on August 1, 2017. Defendant did not receive the 2015 subject tractor. Exhibit 1 of Plaintiff's complaint refers to a tractor Defendant never received.

6.      The Defendant cannot read Exhibit 2, therefore it is denied.

7.     Exhibit 3 of Plaintiff's amended complaint is denied.  This is a false lien filed with the Arkansas Secretary of State.

8.     Exhibit 4 of Plaintiff's amended complaint is denied.  Defendant's attorney at the time explained the problem to Plaintiff's counsel.  See Defendant's Exhibit 1.

9.     Exhibit 5 of Plaintiff's amended complaint is denied.  Defendant did not sign Exhibit 5.

10.     That pursuant to FRCP Rule 12(b)(6)-(7) Plaintiff's complaint should be dismissed.

11.     That pursuant to FRCP Rule 8, Plaintiff's complaint should be denied for failure of consideration, fraud, illegality, set-off, statute of frauds, and any other matter constituting an affirmative defense.

12.     That Defendant affirmatively pleads fraud and lack of good faith and fair dealing on behalf of Plaintiff.

13.     That Plaintiff did not substantially perform the contract because Defendant never received the subject tractor mentioned in Exhibit 1 or the two tractors mentioned in Exhibit 4 of Plaintiff's amended complaint.

14.     Defendant pleads fraud in the inducement pursuant to AMI 2433.  Defendant never received the tractor or tractors.

15.     Defendant pleads duress as an affirmative defense pursuant to AMI 2435.

16.     Defendant pleads estoppel pursuant to AMI 2438 as an affirmative defense.

17.     Defendant pleads impossibility of performance pursuant to AMI 2439.

18.     Defendant pleads prevention of performance pursuant to 2441.

19.     Defendant pleads fraud as a defense.

20.     That Plaintiff has unclean hands.  Plaintiff was aware that Charles Schindler has been arrested and convicted when it filed its complaint against Defendant.  In fact, Plaintiff was awarded $2,298,983.73 which Defendant believes involves the amount Plaintiff is suing Defendant for.  See Defendant's Exhibit 2.

21.     That the allegations in Plaintiff's amended complaint are denied.  Furthermore, the 2014 tractor was returned.  See Defendant's Exhibit 3.

22.     Defendant requests a jury trial and that his attorney's fees be awarded.

## COUNTERCLAIM

Comes the Defendant and for his compulsory counterclaim pursuant to FRCP Rule 13, states:

23.     That paragraphs 1 and 2 of Plaintiff's amended complaint are admitted and adopted.

24.     That Charles Schindler was the agent for Plaintiff and subsequently was convicted of fraud.  See Defendant's Exhibit 4 which is the indictment.

25.     That on April 27, 2016, Defendant leased a tractor from BNP .  See Defendant's Exhibit 5.  Charles Schindler was the agent.  It was a 2014 model tractor and not a new tractor. Defendant has been a farmer for over 30 years.

26.     That the lease was changed many times by Charles Schindler.  Defendant does not know how many times.

27.     Charles Schindler nor the Plaintiff had a lease agreement with Defendant involving the 2015 tractors.  Defendant never received these tractors.

28.     That Plaintiff was aware of the criminal conduct of Charles Schindler.  See Defendant's Exhibit 2.

29.     Despite being aware of Charles Schindler's criminal conduct, Plaintiff filed suit against Defendant.

30.     That Plaintiff filed suit against Defendant on April 19, 2019.  The service of the Plaintiff's complaint against Defendant caused him to become so ill and stressed that he was admitted into the hospital for over four days.  Defendant cannot participate in the defense of this lawsuit except on a limited basis due to his heart and blood pressure.  Defendant has incurred medical bills, mental anguish, and pain and suffering.

31.     That Plaintiff has been aware throughout this litigation that the filing of the lawsuit was improper and meritless.

## ABUSE OF PROCESS

32.     Plaintiff's actions constitute abuse of process under AMI 416.  Defendant sustained damages by Plaintiff filing its lawsuit.  Plaintiff is aware that Defendant never received two 2015 tractors.  Plaintiff filed suit willfully using the complaint as extortion and is the proximate cause of Defendant's damages.

## TORT OF OUTRAGE

33.     Plaintiff's actions constitute tort of outrage pursuant to AMI 401.  Plaintiff has filed a lawsuit against Defendant that is not true.  Defendant never received any 2015 tractors.  Defendant is not in possession of any tractor and Plaintiff was aware of this when it filed suit.  Defendant now has severe health issues due to Plaintiff's actions and is suffering from severe emotional distress proximately caused by Plaintiff.

## DECEIT

34.     That Plaintiff has made a false misrepresentation of material fact that Defendant has in his possession two 2015 tractors.  Defendant has sustained damages proximately caused by Plaintiff and Plaintiff knew when it sued Defendant that its allegations were false.

## FAIR DEBT COLLECTION ACT

35.     Plaintiff's actions in filing its lawsuit against Defendant violate 15 U.S.C. 1601 et seq.   There is not a debt owed to Plaintiff by Defendant as described herein.

## DAMAGES - COMPENSATORY

36.     That Defendant has suffered harm to his reputation due to Plaintiff filing its complaint, mental anguish, pain, suffering, and attorney's fees due to Plaintiff's conduct in excess of $100,000.00.

## PUNITIVE DAMAGES

37.     That punitive damages should be assessed against Plaintiff due to its conduct. Plaintiff knew or should have known that Defendant does not have the 2015 tractors and Plaintiff intentionally pursued a course of conduct for the purpose of causing Defendant injury and damages.

38.     Defendant requests a jury trial on his counterclaim.

WHEREFORE, Defendant, Todd Weldon Smith, requests this Court deny and dismiss Plaintiff's amended complaint, grant Defendant judgment against Plaintiff, Farm Credit Leasing Services Corporation, for compensatory damages in excess of $100,000.00, punitive damages in excess of $100,000.00, costs, attorney's fees and all other proper relief.

Respectfully submitted,

John Ogles
Arkansas Bar No. 89003
Texas Bar No. 00797922
OGLES LAW FIRM, P.A.
200 S. Jeff Davis
P.O. Box 891
Jacksonville, AR 72078
(501) 982-8339
jogles@aol.com

# BLES LAW FIRM, PLC | Scott Bles, Attorney at Law*+
## 900 W. Center St. ▪ Beebe, Arkansas 72012
### 501-882-6599 | 866-423-3341 (Facsimile)

| | |
|---|---|
| **City Attorney Office:** | **201 W. Illinois · Beebe, Arkansas 72012 | 501-882-8132** |
| **Missouri Office:** | **5709 Telegraph Rd. · St. Louis, Missouri 63129 | 314-846-5005** |
| **Send Mail To:** | **P.O. Box 935 · Beebe, Arkansas 72012** |
| **Email:** | **office@bleslawfirm.com (Private) | sbles@beebeark.org (City)** |
| **Web Address:** | ***www.bleslawfirm.com*** |

**\* Licensed in Arkansas & Missouri**          **+ Elected Beebe City Attorney**

MAY 10, 2018                         VIA FACSIMILE / CERTIFIED US MAIL
                                     AS INDICATED DIRECTLY BELOW

Attn: Ms. Connie Weaver
DLL Financial Services, Inc.
Fax 515-334-5834

Farm Credit Services of America
PO Box 2409
Omaha, NE 68103-2409

Farm Credit Leasing
600 Highway 169 S,
Saint Louis Park, MN 55426

Attn: Ms. Michele Hiscock
Northland Capital
Fax 866-950-2111

First National Bank of Omaha
1620 Dodge Street
Omaha, Nebraska, 68197

Greetings,

I represent Todd Smith regarding the matters addressed herein.

In the spring of 2016 and thereafter, Todd entered into negotiations with one Charles Schindler, who held himself out as an agent of several business and financing entities, including your entity, to rent a tractor for Todd's farming operations. Todd did, in fact, rent a tractor by and through Schindler. Over the last year and a half, the following has occurred:

- Todd has had a series of in-person, verbal, and text communications with Charles Schindler, whereby Schindler made several commitments, promises, and statements regarding the transactions described herein that just don't add up.

**EXHIBIT 1**

- A tractor was delivered to Todd that had a specific ID number, but at least one alternative ID number was used by Schindler and others involved with the tractor lease over the last year and a half.

- There were a series of financing and refinancing agreements that Schindler had Todd sign, or tried to have Todd sign, that were supposed to set things right regarding the financing that corresponded to the tractor lease. In addition, there are documents in Todd's possession regarding financing which purport to bear Todd's signature, but bear a forged signature for Todd. Todd has checked his credit report and there are multiple financing companies related to this transaction that show hits on his credit report .

- The tractor has remained on Todd's property since the spring of 2016, and he has put minimal hours on the tractor.

Todd wants to turn the tractor over asap. You can contact my office to effectuate that transfer. Todd will turn over the tractor at or around the location of his chicken farm in McRae, Arkansas.

In addition, Todd and I are putting together a file that will either be used to either initiate civil litigation against the appropriate parties or to assist others in initiating civil litigation or federal criminal charges against the appropriate parties. Todd and I will be happy to assist you in any way.

Thanks for your time and attention to this matter.

Cordially,

*Scott Bles*

Scott Bies
Attorney at Law
ABN 97105 / MBN 65716

Cc:          File
Encl/Attch:  0

AO 245B    (Rev. 11/16) Judgment in a Criminal Case
            Sheet 1

# UNITED STATES DISTRICT COURT

Northern District of Mississippi

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| Charles Schindler | Case Number:    0537 4:19CR00001-001 |
| | USM Number:    26263-017 |
| | Whitman D. Mounger |
| | Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to count(s)   1 of the Superseding Indictment

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1343 | Wire Fraud | 08/25/2017 | 1 |

The defendant is sentenced as provided in pages 2 through    8    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Count(s) 2-9 of the Superseding Indictment and 1-2 of the Indictment are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

January 21, 2020
Date of Imposition of Judgment

_Signature of Judge_

Sharion Aycock, Chief U.S. District Judge
Name and Title of Judge

January 22, 2020
Date

**EXHIBIT 2**

AO 245B    (Rev. 11/16) Judgment in Criminal Case
           Sheet 2 — Imprisonment

Judgment — Page __2__ of __8__

DEFENDANT:      Charles Schindler
CASE NUMBER:    4:19CR00001-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Seventy-two (72) months on Count 1 of the Superseding Indictment.

☒ The court makes the following recommendations to the Bureau of Prisons:
    -The defendant is recommended for placement in the Trauma Focused Counseling, specifically The Resolve Program.
    - It is recommended the defendant be housed at FCI, Danbury, CT, if not then ADX, Florence, CO for The Resolve Program

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant
delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B   (Rev. 11/16) Judgment in a Criminal Case
          Sheet 3 — Supervised Release

|  |  | Judgment—Page | 3 | of | 8 |

DEFENDANT:        Charles Schindler
CASE NUMBER:      4:19CR00001-001

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:   Three (3) years on Count 1 of the Superseding Indictment.

1.   You must not commit another federal, state or local crime.

2.   You must not unlawfully possess a controlled substance.

3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determine by the court.

     ☐   The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable.)*

4.   ☒   You must cooperate in the collection of DNA as directed by the probation officer. *(check , if applicable.)*

5.   ☐   You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable.)*

6.   ☐   You must participate in an approved program for domestic violence. *(check if applicable)*

 You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B    (Rev. 11/16) Judgment in a Criminal Case
           Sheet 3A — Supervised Release

Judgment—Page    4    of    8

DEFENDANT:        Charles Schindler
CASE NUMBER:      4:19CR00001-001

## STANDARD CONDITIONS OF SUPERVISION

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

### U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

AO 245B    (Rev. 11/16) Judgment in a Criminal Case
           Sheet 3C — Supervised Release

Judgment—Page ___5___ of ___8___

DEFENDANT:        Charles Schindler
CASE NUMBER:      4:19CR00001-001

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in Title 18, United States Code, Section 1030e(1)), other electronic communications or data storage devices or media, or office, to a search conducted by the United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision. Any search must be conducted at a reasonable time and in a reasonable manner.

2. The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer.

3. The defendant shall provide the probation officer with access to any requested financial information.

4. The defendant shall participate in a program of testing and treatment for substance abuse, details of which will be outlined and supervised by the probation officer, until such time as the defendant successfully completes the program or is deemed by the treatment provider to no longer be in need of treatment.

5. The defendant shall participate in a program of mental health treatment, details of which will be outlined and supervised by the probation officer, until such time as the defendant is released from the program by the probation officer.

AO 245B     (Rev. 11/16) Judgment in a Criminal Case
           *Sheet 5 — Criminal Monetary Penalties*

Judgment — Page   **6**   of   **8**

DEFENDANT:      Charles Schindler
CASE NUMBER:     4:19CR00001-001

# CRIMINAL MONETARY PENALTIES

    The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $   100 | $ | $ 4,397,615.23 |

☐    The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐    The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

    If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

**\*\* All payments are to be made payable to Clerk of Court by money order or cashier's check and mailed to: Clerk of Court, 911**

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| First South Farm Credit 574 Highland Colony Parkway, Suite 100 Ridgeland, MS 39157 | | | |
| **TOTALS** | $   482,478.00 | $   4,397,615.23 | |

☐    Restitution amount ordered pursuant to plea agreement $ _____

☒    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

      ☐   the interest requirement is waived for the    ☐ fine    ☐ restitution.

      ☐   the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 11/16) Judgment in a Criminal Case
          *Sheet 5B — Criminal Monetary Penalties*

| | | Judgment—Page 7 of 8 |
|---|---|---|

DEFENDANT:     Charles Schindler
CASE NUMBER:    4:19CR00001-001

## ADDITIONAL RESTITUTION PAYEES

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Farm Credit Leasing<br>7700 Forsyth Blvd., Ste. 1100<br>St. Louis, MO 63105 | $2,298,983.73 | | |
| Northland Capital<br>333 3rd Avenue South<br>St. Cloud, MN 56301 | $270,000.00 | | |
| Hardi<br>c/o Adam Arceneaux, Attorney<br>Ice Miller LLP<br>One American Square, Ste. 2900<br>Indianapolis, IN 46282-0200 | $743,121.00 | | |
| DLL Finance<br>P. O. Box 2000<br>Johnston, IA 50131 | $472,430.65 | | |
| Falcon Leasing<br>28 11th Avenue South #103<br>St. Cloud, MN 56301 | $130,601.85 | | |

AO 245B    (Rev. 11/16) Judgment in a Criminal Case
        Sheet 6 — Schedule of Payments

Judgment — Page    __8__    of    __8__

DEFENDANT:      Charles Schindler
CASE NUMBER:    4:19CR00001-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**   ☒ Lump sum payment of $   4,397,715.23   due immediately, balance due

     ☐ not later than _____ , or
     ☒ in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☒ F below; or

**B**   ☐ Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

**C**   ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
     _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**   ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
     _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
     term of supervision; or

**E**   ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
     imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   ☒ Special instructions regarding the payment of criminal monetary penalties:

     * Payments to begin immediately in equal monthly installments while incarcerated. Payments made after placement on
     probation, or after release from incarceration, shall be made in regular monthly installments of not less than 10 percent of the
     defendant's gross monthly income or not less than $100 per month, whichever is greater. Such payments to commence 60 days
     upon release from incarceration to a term of supervised release.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due
during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial
Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

     Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount,
     and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# RECEIPT

DATE: __6/9/2018__          TIME: __9:00am - 9:30am__

TRACTOR DESCRIPTION.: __Deutz - FAHR 7250 HV Agrotron__

TRACTOR I.D. NO.: __2014 model , WSXV910200LD10724__

PIC OF TRACTOR: _____ SEE ATTACHED _____

RECEIVED BY: __Mike Turner__          _(signature)_
                    PRINT NAME          SIGNATURE

                    __Truck Driver__          __870-538-7122__ Driver
                    TITLE          PHONE NO.

                                      870-382-9830 Dolly
                                        Confirmed
                                          4:30pm 6/8/2018
                                              TWS

FOR:

Tractor Finders
106891 US-65
Dumas AR 71639
870-382-9830
POC: Wayne Caldwell

&

Connie J. Weaver
DLL FINANCIAL
SR Bankruptcy & Litigation Specialist
connie.weaver@dllgroup.com
Phone: 1-515-251-2806
Cell: 1-515-537-6122
Fax: 1-515-334-5833

                                    picked up at my
                              FARM 152 Weldon Lane
                                    McRae AR 72102

                              Departed at 9:45 am
                                        6/9/2018

                                      _(signature)_

**EXHIBIT 3**

FILED

JAN 17 2019

DAVID CREWS, CLERK
BY_____ Ente
                    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                                    CRIMINAL CASE NO. 4:19-cr- \
                                      18 U.S.C. § 1343

CHARLES SCHINDLER

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

## INTRODUCTION

At all times material to this indictment:

1.     Delta Southern Chemical Company, LLC was a Mississippi-based company, located at 223 Highway 322, Clarksdale, MS 38614, that sold or leased farm equipment. The company was registered with the Mississippi Secretary of State.

2.     CHARLES SCHINDLER was listed as the registered agent and officer of Delta Southern and Ashley Schindler, his wife, was also listed as an officer.

3.     CoBank was one of the largest private providers of credit to the U.S. rural economy. CoBank delivered loans, leases, and other financial services to agribusiness, rural infrastructure, and Farm Credit Leasing customers. CoBank was headquartered at 6340 South Fiddlers `Green Circle, Greenwood Village, CO 80111.

4.     Farm Credit Leasing was a subsidiary of CoBank. Farm Credit Leasing provided credit and other financial services for farmers and other agricultural providers. Farm Credit Leasing was headquartered at 600 Highway 169 South, Minneapolis, MN, 55426. Farm Credit

1

**EXHIBIT 4**

Leasing was a System institution of the Farm Credit System, as defined in section 5.35(3) of the Farm Credit Act of 1971.

5.      Kisco Leasing Company was an originator of loans for farm and construction equipment. Kisco assisted farmers with obtaining financing for agricultural equipment. Kisco Leasing was located at 603 North Avenue H, Haskel, TX 79521.

6.      Planters Bank and Trust was a federally insured bank with a branch location in Clarksdale, Mississippi, and its headquarters in Indianola, Mississippi.

7.      Hardi North America, Inc. was a manufacturer and vendor of agricultural sprayers.

8.      F.Z. was a farmer and former Delta Southern customer.

### THE SCHEME

9.      From on or about January 1, 2016 and continuing until on or about November 2018, in the Northern District of Mississippi, CHARLES SCHINDLER, devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing this scheme, caused to be transmitted by means of wire communication in interstate commerce the writings, signs, signals, or sounds described herein, in violation of 18 U.S.C. § 1343.

**The following includes, but is not limited to, the parts of the scheme:**

10.      From on or about January 1, 2016 and continuing until on or about November 2018, CHARLES SCHINDLER defrauded financial institutions, farm equipment manufacturers, vendors, and farmers in the Northern District of Mississippi and elsewhere by taking money from financial institutions intended to pay for leased farm equipment and not delivering the farm equipment to the farmers. As a result of this scheme, SCHINDLER caused financial institutions

2

to seek repayment for loans on equipment that farmers never received, leaving the financial institutions, manufacturers and venders, and the farmer to suffer financial loss.

11.     CHARLES SCHINDLER was the primary operator and salesperson for Delta Southern. As a part of his sales pitch, SCHINDLER would approach local and regional farmers about their interest in leasing farm equipment, such as a Hardi sprayer. If a farmer agreed to lease the equipment, SCHINDLER would either have farmers complete a financing application for the equipment with Kisco Leasing or complete the financing application with Kisco Leasing himself.

12.     Kisco Leasing, in turn, would attempt to find a financial institution to finance a lease of the equipment, such as a Hardi sprayer. Farm Credit Leasing, among others, was a financial institution with which Kisco Leasing would attempt to obtain financing.

13.     Once a financial institution was found, SCHINDLER or Kisco Leasing on behalf of SCHINDLER would submit various documents to the financial institutions to finalize the loan, which included a lease agreement setting the terms of the loan for the farm equipment. SCHINDLER would either have the farmers sign these lease agreements and other related documents or forge signatures on these documents to finalize the lease.

14.     After submitting the lease agreement, SCHINDLER or Kisco Leasing on behalf of SCHINDLER would submit a document to the financial institutions, such as a Delivery and Acceptance form, indicating that the customer had received the equipment when in fact the customer never received the equipment.

15.     Once the lease agreement and the document confirming delivery was provided to the financial institutions, the financial institutions would wire funds by means of wire communication in interstate commerce to Delta Southern's bank account at Planters Bank and Trust for payment to the vendors for the leased equipment. Rather than pay the vendor, such as

3

Hardi, for the machines that SCHINDLER fraudulently represented had been delivered to the farmers, SCHINDLER would keep the loan amount, leaving the vendor unpaid and the farmer responsible for repaying the loan amount.

## EXECUTION OF THE SCHEME

16.     On or before August 21, 2017, SCHINDLER and F.Z., a local Mississippi farmer, agreed that F.Z. would trade in the sprayer he was currently using and lease a new Hardi sprayer. F.Z. agreed to use his old sprayer through the upcoming farming season and deliver the old sprayer to SCHINDLER when the new sprayer arrived.

17.     On or about August 17, 2017, SCHINDLER submitted a Customer Application to Kisco Leasing on behalf of F.Z.

18.     On or about August 21 2017, SCHINDLER or Kisco Leasing on behalf of SCHINDLER submitted a Customer Application form, Customer Number 5340045, to Farm Credit Leasing, on CoBank paperwork, for approval for credit or financing.

19.     On or about August 21, 2017, SCHINDLER or Kisco Leasing on behalf of SCHINDLER submitted an executed lease agreement, Customer Number 5340045, Contract Number 001-0089252-000, to Farm Credit Leasing, on CoBank paperwork, for a new 2017 Hardi Presido Self-Propelled Sprayer, Serial No. PR25400026, at a cost of $260,000. F.Z. was listed as the Lessee, and his signature appeared on the lease agreement. The terms of the lease were 63 months with no security deposit, a $78,000 initial payment, and purchase option amount of $104,000.

20.     On or about August 22, 2017, SCHINDLER or Kisco Leasing on behalf of SCHINDLER submitted a form titled Delivery and Acceptance, to Farm Credit Leasing, on CoBank paperwork, purportedly signed by F.Z. The document represented that F.Z. received the

4

new 2017 Hardi Presido Self-Propelled Sprayer, Serial No. PR25400026, in reference to the lease agreement. F.Z. did not receive the 2017 Hardi Presido Self-Propelled Sprayer, Serial No. PR25400026.

21.    On or about August 25, 2017, CoBank, on behalf of Farm Credit Leasing, sent a wire transfer, Reference Number 2017082500000975, across state lines to Delta Southern's bank account at Planters Bank and Trust in the amount of approximately $182,000 to pay for the Hardi Presido Self-Propelled Sprayer, Serial No. PR25400026.

22.    F.Z. was not aware of and had no knowledge of the submission of this wire transfer of funds.

23.    SCHINDLER never delivered the 2017 Hardi Presido Self-Propelled Sprayer, Serial No. PR25400026 to F.Z.

24.    Sometime in October 2017, SCHINDLER took possession of F.Z.'s old sprayer based on the trade-in agreement. SCHINDLER promised that he would pay off the amount owed on the old sprayer but never paid off the amount owed.

25.    On or about October 16, 2017, SCHINDLER or Kisco Leasing on behalf of SCHINDLER submitted a lease agreement, Customer Number 5340045, Contract Number 001-0090535-000 to Farm Credit Leasing, on CoBank paperwork, for a new 2017 Hardi Presido Sprayer, Serial No. PR2540028, at a cost of approximately $260,000. F.Z. was listed as the Lessee and his signature appears on the lease agreement. The terms of the lease were 63 Months with no security deposit, a $70,000 initial payment, and a purchase option amount of $104,000.

26.    On or about October 18, 2017, SCHINDLER or Kisco Leasing on behalf of SCHINDLER submitted a form titled, Delivery and Acceptance, to Farm Credit Leasing, on CoBank paperwork, purportedly signed by F.Z. The document represented that F.Z. received the

5

new 2017 Hardi Presido Self-Propelled Sprayer, Serial No. PR25400028 in reference to the lease agreement.

27. On or about October 24, 2017, CoBank, on behalf of Farm Credit Leasing, sent a wire transfer, Reference Number 2017102400000845, across state lines to Delta Southern's bank account at Planters Bank and Trust in the amount of approximately $190,000 to pay for the 2017 Hardi Presido Self-Propelled Sprayer, Serial No. PR25400028.

28. F.Z. was not aware of and had no knowledge of the submission of the aforementioned lease application and wire transfer of funds.

29. SCHINDLER never delivered the 2017 Hardi Presido Self-Propelled Sprayer, Serial No. PR25400028 to F.Z.

## USE OF THE WIRES

30. On or about August 25, 2017, in the Northern District of Mississippi, CHARLES SCHINDLER, devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as aforesaid, and for the purpose of executing this scheme, caused to be transmitted by means of wire communication in interstate commerce the writings, signs, signals, or sounds described herein, to wit, SCHINDLER made fraudulent representations to Farm Credit Leasing causing CoBank, on behalf of Farm Credit Leasing, to send a wire transfer, Reference Number 2017082500000975, across state lines to Delta Southern's bank account at Planters Bank and Trust in the amount of approximately $182,000, all in violation of Title 18 United States Code Section 1343.

## COUNT TWO

31. The allegations contained in paragraphs 1 through 15 and 25-29 of Count One of this Indictment, are incorporated herein as though wholly set forth herein.

6

## USE OF THE WIRES

32.     On or about October 18, 2017, in the Northern District of Mississippi, CHARLES SCHINDLER, devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as aforesaid, and for the purpose of executing this scheme, caused to be transmitted by means of wire communication in interstate commerce the writings, signs, signals, or sounds described herein, to wit, SCHINDLER made fraudulent representations to Farm Credit Leasing causing CoBank, on behalf of Farm Credit Leasing, to send a wire transfer, Reference Number 2017102400000845, across state lines to Delta Southern's bank account at Planters Bank and Trust in the amount of approximately $190,000, all in violation of Title 18 United States Code Section 1343.


A TRUE BILL


WILLIAM C. LAMAR
UNITED STATES ATTORNEY

/s/ Signature Redacted
FOREPERSON



**BNP PARIBAS**
LEASING SOLUTIONS

**ACCEPTANCE CERTIFICATE**
**HOLD FOR DELIVERY**

FOR EQUIPMENT SCHEDULE NO: 380-1483582-001
TO COMMERCIAL MASTER LEASE NO: 1483582
DATED: APRIL 26, 2016

LESSEE: TKK FARMS, LLC
138 BALEY RD
MCRAE, AR 72102

PHONE: 501-940-3475

SUPPLIER: DELTA SOUTHERN CHEMICAL COMPANY, LLC
PO BOX 1772
CLARKSDALE, MS 38614

PHONE: 859-963-6035

EQUIPMENT: See Exhibit A to Equipment Schedule
EQUIPMENT SCHEDULE LEASE TERMS:

| | |
|---|---|
| Commencement Date of Lease: | 04-27-2016 (To be filled in by us per Section 2 of the Schedule) |
| Lease Term (number of months): | 60, plus any extension and renewal periods |
| Number of Rentals Paid in advance: | 0 (First and Last 0) |
| End of Term: | Purchase Option: $1.00 |
| Annual Rental Amount: | $43,048.94 each, due in May of each year beginning in 2017, tax exempt |

This Acceptance Certificate has been written in plain English. The word "Schedule" refers to the specific Equipment Schedule referenced above which is part of the above referenced Commercial Master Lease Agreement ("Agreement"). The word "Equipment" refers to the personal property leased under the Schedule. The words "you" and "your" refer to the Lessee listed above. The words "we", "us" and "our" refer to the Lessor, Bank of the West. You agree that an electronically transferred or faxed version of this signed Acceptance Certificate shall be deemed to be of the same force and effect as an original of a manually signed Acceptance Certificate.

You hereby acknowledge the receipt in good condition of all of the Equipment in accordance with the terms and conditions of the Schedule and the Agreement as it relates to the Schedule. You accept this Equipment and agree that we have performed all of our obligations under the Agreement pertaining to this Schedule. You acknowledge that the lease established by this Schedule is NON-CANCELABLE for any reason until all of your obligations under this Agreement have been fulfilled. You acknowledge that you have selected the supplier and the Equipment based on your own judgment and that we have NO RESPONSIBILITY AS TO THE SATISFACTORY PERFORMANCE OR MAINTENANCE of the Equipment. WE MAKE NO WARRANTIES REGARDING THE EQUIPMENT. In reliance upon your execution of this Acceptance Certificate, we will pay the supplier for the Equipment. This Acceptance Certificate cannot be changed except in writing signed by you and us. Your Rentals due under the Schedule shall commence in accordance with the terms of the Schedule.

LESSEE:
TKK FARMS, LLC
Upon signing below you affirm that you are an authorized corporate officer, partner or proprietor of the Lessee.

Signature: _____

Print Name: Todd W Smith

Title: Owner

Acceptance Date: 4/27/2016

*After signing this form, please fax it to Contract Administration at 415-956-5187 to expedite the commencement of your agreement.*

**EXHIBIT 5**