**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

**FARM CREDIT LEASING SERVICES**
**CORPORATION,**

      **Plaintiff,**

                                      **Case No. 4:19-CV-280-KGB**

**VS.**

**TODD WELDON SMITH,**

      **Defendant.**

**PLAINTIFF'S FIRST SET OF INTERROGATORIES,**
**REQUESTS FOR PRODUCTION OF DOCUMENTS AND REQUESTS FOR**
**ADMISSION TO DEFENDANT TODD WELDON SMITH**

Plaintiff, FARM CREDIT LEASING CORPORATION ("Farm Credit Leasing") by and through its attorneys, Adams & Reese, LLP, requests that Defendant TODD WELDON SMITH ("SMITH"), answer in writing and under oath the following interrogatories and produce the following documents and things within thirty (30) days from the date of service pursuant to Rules 26, 33 and 34 of the Arkansas Rules of Civil Procedure and admit or deny the following requests for admission and furnish a copy of the answers to Henry C. Shelton, III, Adams and Reese LLP, 6075 Poplar Ave., Ste. 700, Memphis, TN 38119, 901.525.3234.  Documents produced should be indexed or itemized according to the particular Request(s) to which they respond.

-1-

## INSTRUCTIONS

A.      The Interrogatories shall be answered under oath, in writing, separately, and in the fullest detail possible in accordance with the definitions and instructions set forth below.  Answers shall be signed by the party making the answers.

B.      These discovery requests shall be as broadly construed as possible to include all information and documents that may conceivably fall within its scope.  The specificity of any interrogatory or document request shall not be construed to limit the generality of any other interrogatory or document request.  Whenever appropriate, the singular form of a word shall be interpreted in the plural, and the plural in the singular.  The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this discovery request any information which might otherwise be construed to be outside its scope.

C.      If you withhold any information or documents from your response to any interrogatory or document request because of a claim of privilege or work product, state the specific grounds for withholding the information or document, identify the source of such information or document, identify the persons with knowledge of such information or document, and describe the subject matter of such information or document.

D.      As used herein, the terms "you" or "your" refer to Defendant and each of his agents, representatives, attorneys, and each person acting or purporting to act on its behalf.  The term "representative" means any and all agents, employees, servants, officers, directors, attorneys, or other persons acting or purporting to act on Defendant's behalf.

E.      Where these interrogatories request certain information requiring you to identify an individual, you should state the individual's full name, residential address, business address,

including street number, street name, city, state, zip code, and both business and residential telephone number.

F.      If any answer herein requires you to identify a document, then you should identify that document by giving the number of pages, the nature of the document, its title, its date, name or names of its authorities, name or names of its recipients, and its present location and custodian.

G.      The terms "document" and "documents" as used herein shall mean any and all tangible things and documents, and all copies, including all copies that are different in any way from the original (whether by interlineations, receipt stamp, notation, indication of copy sent or received or otherwise), regardless of location or by whom prepared, and whether preserved on paper, electronically, on computer or by any other means, including, but not limited to: writings, drawings, graphs, charts, photographs, phone records, drafts, external communications, interoffice communications, letters, faxes, e-mails, cables, telegrams, wires, voice mail or other audio recordings, memoranda, reports, summaries, studies, other data compilations from which information can be obtained, minutes, notes, agendas, transcripts, tape recordings, and other reproductions of sound or voices, films, videotapes, computer generated documents, recordings, APAs, agreements, published material of any kind, books, records, invoices, checks, receipts, calendars, notebooks, appointment books, diaries, schedules, and handwritten or other notes.

H.      If any document responsive to these Interrogatories or Requests was, but is no longer within Defendant's care, custody or control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred voluntarily or involuntarily to others; or (d) has been otherwise disposed of, and for each of the foregoing instances explain the circumstances surrounding the disposition thereof and state the date or approximate date thereof.

CORE/3009126.0135/153045735.1

I.     If in answering these interrogatories you are required to identify a communication or part of a communication, then if such communication was written, you should identify the document or documents which refer to or evidence the communication, and to the extent the communication was unwritten, you should identify the persons participating in the communication, state the date, manner, place and substance of the communication.

J.     If any of these interrogatories or portions thereof cannot be answered fully, such portions shall be answered to the extent possible, and you should set forth in writing the reasons for not answering more fully.  The response should be made to each question individually and to each part of the question containing more than one part.  If a question or a part thereof is not applicable to the circumstances of the party responding, then such question should be answered "not applicable."

K.     These interrogatories shall be deemed continuing so as to require you to seasonably supplement your response with respect to any interrogatory if you obtain information on the basis of which you know that the response was incorrect or the response was not complete.

L.     All capitalized words or terms in these discovery requests shall have the same meaning as the Verified Complaint filed in this case.

M.     "Delta Southern" shall mean Defendant Delta Southern Chemical Company, LLC along with Charles Schindler, Ashlee Schindler, and any of its agents, alleged agents, attorneys, experts, representatives, subsidiaries, parents, affiliates, and all other persons acting (or alleged to have been acting) at its direction or under its control.

N.      "FCL" shall mean Plaintiff Farm Credit Leasing Services Corporation along with its agents, alleged agents, attorneys, experts, representatives, subsidiaries, parents, affiliates, and

-4-

all other persons acting (or alleged to have been acting) at its direction or under its control, including CoBank.

O.     "Northland Capital" means Northland Capital Financial Services, LLC, dba "Nothland Capital Equipment Finance," along with its agents, alleged agents, attorneys, experts, representatives, subsidiaries, parents, affiliates, and all other persons acting (or alleged to have been acting) at its direction or under its control.

P.     "DLL" means DLL Finance, LLC, along with its agents, alleged agents, attorneys, experts, representatives, subsidiaries, parents, affiliates, and all other persons acting (or alleged to have been acting) at its direction or under its control.

Q.     "Bank of the West" manes Bank of the West, along with its agents, alleged agents, attorneys, experts, representatives, subsidiaries, parents, affiliates, and all other persons acting (or alleged to have been acting) at its direction or under its control.

S.     "Communication" or "communications" means any document reflecting any conversation, discussion, meeting, correspondence, or other conveyance of ideas or information.

T.     "Concerning" or "relating to" means commenting on, referring to, pertaining to, discussing, or tending to support in any way.

## INTERROGATORIES

1.     State the full name, current address, date of birth, employer and title, and relationship with Defendant of the person or persons providing information used in responding to these Interrogatories.

2.      Identify each person or entity known to you to have knowledge of any facts relating in any way to any issue, contention, claim, or defense in this action or otherwise having knowledge of the subject matter of this action, and for each such person or entity, state in detail the matters concerning which each person identified has knowledge; describe in detail their relationship to Plaintiff or Defendants, and give their addresses.

3.      Please identify each person or entity you intend to call as a witness at the trial of this matter.

4.      Please identify any and all documents, written materials and/or communications that relate in any way to or contain facts or opinions related to the claims raised in the Verified Complaint and/or the defenses raised by the Defendant in this matter.

5.      State whether Todd Weldon Smith entered into a Lease Agreement with Farm Credit Leasing on July 24, 2017.

6.      State whether the document attached as Exhibit 1 to the Complaint and also attached hereto as **Exhibit 1** (defined therein as the "Master Lease") is a full, true and correct copy of that contract, and, if not, describe in detail all respects in which the instrument differs from the Master Lease.

7.      State whether the document attached as Exhibit 2 to the Complaint and also attached hereto as **Exhibit 2** (defined therein as the "88777 Schedule") is a full, true and correct copy of that 88777 Schedule, and, if not, describe in detail all respects in which the instrument differs from the 88777 Schedule.

8.      State whether the document attached as Exhibit 3 to the Complaint and also attached hereto as **Exhibit 3** (defined therein as the "88777 Financing Statement") is a full, true and correct copy of that Financing Statement, and, if not, describe in detail all respects in which

CORE/3009126.0135/153045735.1

the instrument differs from the Financing Statement (the Master Lease, 88777 Schedule and Financing Statement are referred to jointly as the "Master Lease Documents").

9.      State whether the document attached as Exhibit 4 to the Complaint and also attached hereto as **Exhibit 4** (defined therein as the "16538 Lease") is a full, true and correct copy of that 16538 Lease, and, if not, describe in detail all respects in which the instrument differs from the 16538 Lease.

10.     State whether the document attached as **Exhibit 5** to the Complaint and also attached hereto as Exhibit 5 (defined therein as the "Participation Certificate") is a full, true and correct copy of that Certificate, and, if not, describe in detail all respects in which the instrument differs from the Participation Certificate.

11.     State whether the document attached as Exhibit 6 to the Complaint and also attached hereto as **Exhibit 6** (defined therein as the "16538 Financing Statement") is a full, true and correct copy of that Financing Statement, and, if not, describe in detail all respects in which the instrument differs from the Financing Statement (the Master Lease, 88777 Schedule, 16538 Lease and Financing Statements are referred to jointly as the "1658 Lease Documents").

12.     State whether the document attached as **Exhibit 7** to the Complaint and also attached hereto as Exhibit 7 (defined therein as the "Notice of Default") is a full, true and correct copy of that Notice, and, if not, describe in detail all respects in which the instrument differs from the Notice of Default.

13.     State whether the document attached as Exhibit 8 to the Complaint and also attached hereto as **Exhibit 8** (defined therein as the "Delivery Certificate") is a full, true and correct copy of that Certificate, and, if not, describe in detail all respects in which the instrument differs from the Delivery Certificate.

14.     State whether you possess a Deutz Fahr Agrotron Tractor(s).

15.     If you do possess a Deutz Fahr Agrotron Tractor(s), identify it by model and serial number and specify when and how it came into your possession.

16.     Describe in detail the circumstances in which you signed the Lease Documents, including, but not limited to, the time, date and place you signed the Lease Documents and identify any and all persons who were present when you signed the Lease Documents.

17.     State whether you failed to perform any of your obligations under the Lease Documents at the time appointed for their performance, and, if so, set forth a description of each obligation that you did not perform; and the date when the performance was due according to the Lease Documents.

18.     State whether you claim that you were excused from performing any of the obligations under the Lease Documents, and, if so, for each excuse, state the facts constituting the excuse; the date and duration of each fact; and whether it was possible for you to perform your obligation despite these facts, and, if so, describe in detail how your performance would be made more expensive, time-consuming or difficult by reason of these facts.

19.     State whether you informed Farm Credit Leasing of any reason for your non-performance under the Lease Documents, and, if so, state the date when you informed the plaintiff; the manner in which you informed the plaintiff; the name and address of each person having knowledge of your communication; the substance of your communication; and whether any written record was made of the communication to Farm Credit Leasing and, if so, provide the identity of the record, the name and address of the present custodian of each record, and attach a copy of each record to your answers to these interrogatories.

20.     Describe in detail the circumstances in which you signed the 1658 Lease Documents, including, but not limited to, the time, date and place you signed the 1658 Lease Documents and identify any and all persons who were present when you signed the Lease Documents.

21.     State whether you failed to perform any of your obligations under the 1658 Lease Documents at the time appointed for their performance, and, if so, set forth a description of each obligation that you did not perform; and the date when the performance was due according to the 1658 Lease Documents.

22.     State whether you claim that you were excused from performing any of the obligations under the 1658 Lease Documents, and, if so, for each excuse, state the facts constituting the excuse; the date and duration of each fact; and whether it was possible for you to perform your obligation despite these facts, and, if so, describe in detail how your performance would be made more expensive, time-consuming or difficult by reason of these facts.

23.     State whether you informed Farm Credit Leasing of any reason for your non-performance under the 1658 Lease Documents, and, if so, state the date when you informed the plaintiff; the manner in which you informed the plaintiff; the name and address of each person having knowledge of your communication; the substance of your communication; and whether any written record was made of the communication to Farm Credit Leasing and, if so, provide the identity of the record, the name and address of the present custodian of each record, and attach a copy of each record to your answers to these interrogatories.

24.     Identify how and when Plaintiffs first entered into a business transaction with Delta Southern.

25.     Identify all persons Plaintiffs contacted at Delta Southern in the last three years.

26.     Identify all transactions Plaintiffs entered into with Delta Southern, including the transaction that is at issue in this suit, and identify all potential transactions Plaintiffs discussed with Delta Southern.

27.     For each transaction and potential transaction Plaintiffs identified in response to Interrogatory No. 26, provide a brief summary of the nature of the transaction, including any equipment that was sold or exchanged in the transaction.

## **REQUESTS FOR PRODUCTION**

1.     Documents or materials relied upon or identified in responding to the above Interrogatories.

2.     Documents or materials that support or form the basis of your alleged defenses in this matter.

3.     Produce any and all documents evidencing the receipt, actual use, storage and disposition of either the 2015 Deutz-Fahr tractor, model 7250 Agrotron, serial number WSXV910200LD01109; 2015 Deutz-Fahr tractor, model 7250 Agrotron, serial number WSXV910200LD10724; or any tractor received or used by you in connection with any transaction involving Charles Schindler or Delta Southern  (together, the "Equipment").

4.     Documents and communications to, from, or concerning Charles Schindler and/or Delta Southern, including all text messages with Schindler.

5.     Documents and communications referencing or concerning Charles Schindler and/or Delta Southern.

6.     Communications between you and any other person(s) or entity(ies), that included Schindler and/or Delta Southern on the communication.

7.      Documents and communications to, from, or concerning FCL or CoBank concerning the transactions and circumstances at issue in FCL's Complaint.

8.      Communications between Plaintiffs and any other person that included an employee or agent of FCL or CoBank on the Communication, and concerning the transactions and circumstances at issue in FCL's Complaint.

9.      Documents and communications to, from, or concerning Kisco Leasing Company or L. Tucker McCormick.

10.     Documents and communications to, from, or concerning Northland Capital and concerning the transactions and circumstances at issue in FCL's Complaint.

11.     Documents and communications to, from, or concerning DLL, and concerning the transactions and circumstances at issue in FCL's Complaint.

12.     Documents and communications to, from, or concerning Bank of the West, concerning the transactions and circumstances at issue in FCL's Complaint.

13.     Photographs of the Equipment.

14.     Documents and communications, including any photographs, of any other equipment delivered to you, that you believe may be relevant to your claims or affirmative defenses.

15.     Documents and communications that you plan to use as exhibits at trial in this case.

16.     Documents and communications that you have provided to any expert who may testify in this case.

17.     All agreements, lease documents, financing/refinancing documents, and related paperwork or other documents sent, offered, or otherwise presented to you by Charles Schindler and/or Delta Southern.

18. Documents you provided to or received from the Federal Bureau of Investigations, United States' Attorneys' Office, or any other government or law enforcement agency regarding Delta Southern and/or Charles Schindler, any transactions involving Delta Southern and/or Charles Schindler, the lease agreements or equipment at issue in this lawsuit, or any of the facts and circumstances concerning the claims and defenses asserted in this lawsuit.

## REQUESTS FOR ADMISSION

1. Admit that Farm Credit Leasing is a federally chartered instrumentality of the United States with its principal place of business at 1665 Utica Avenue South, Suite 400, Minneapolis, Minnesota 55416.

2. Admit that Defendant is an individual citizen of the State of Arkansas residing at 138 Baxley Road, McRae, Arkansas 72102.

3. Admit that This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.

4. Admit that Venue is appropriate in the Eastern District of Arkansas pursuant to 28 U.S.C. § 1391, because the Defendant resides, and the personal property at issue is located, in this district.

5. Admit that Farm Credit Leasing is engaged, among other things, in the business of leasing equipment and other personal property to businesses and sole proprietors in the agriculture industry. Defendant is a customer of Farm Credit Leasing who obtained possession of agriculture equipment from Farm Credit Leasing pursuant to a certain commercial equipment lease agreement.

6. Admit that on or about July 24, 2017, Defendant entered into a master equipment lease agreement with Farm Credit Leasing as evidenced by that certain Lease Agreement dated July 24, 2017, executed and delivered by Defendant in favor of Farm Credit Leasing (the "Master Lease"), for the purpose of leasing certain equipment more specifically identified in related lease

schedules, pursuant to the terms and conditions as are more specifically identified therein. A true

and correct copy of the Master Lease is attached as **<u>Exhibit 1</u>** to the Complaint, and is incorporated

by reference.

7.      Admit that according to Paragraph 8 of the Master Lease, Defendant agreed that

the equipment would remain at the address identified in the applicable lease schedule and that,

according to Paragraph 9 of the Master Lease, "all Equipment[1] will only be used in [Defendant's]

trade or business . . . in accordance with applicable operating instructions, laws, government

regulations, and applicable insurance policies."

8.      Admit that, pursuant to Paragraph 18 of the Master Lease, Defendant shall be in

default if he:

- Shall fail to pay all or any part of a rental payment or other payment within 10 days after due and payable;

- Shall be in material default under any other agreement executed with Farm Credit Leasing at any time; or

- Shall be in material default under any obligation for the payment of borrowed money, for the deferred purchase price of property or any payment under any lease agreement.

9.      Admit that Paragraph 19 of the Master Lease further provides that upon a default,

Farm Credit Leasing shall have the right, in its sole discretion to exercise its remedies, which

include, but are not limited to:

- Declaring the entire amount of rental and other charges due and to become due hereunder for the entire Lease Term immediately due and payable;

- Taking immediate possession of any and all Equipment without notice;

---

[1] As defined therein.

- Selling or leasing any Equipment or otherwise disposing, holding, or using such Equipment at Farm Credit Leasing's sole discretion;

- Demanding payment of all costs incurred by Farm Credit Leasing in the course of correcting any default (including attorneys' fees and costs);

- Exercising any other right or remedy available to Farm Credit Leasing under the Uniform Commercial Code or any other applicable law; and

- Recovering from Defendant an amount equal to the sum of:

  ▪ Any accrued and unpaid rentals as of the date Farm Credit Leasing obtains possession of the Equipment following Defendant's default; plus

  ▪ The present value of all future rentals reserved in the Lease[2] and contracted to be paid over the unexpired term of the Lease discounted at a rate equal to the 6 month U.S. Treasury Bill rate as of the repossession date; plus

  ▪ All costs and expenses incurred by Farm Credit Leasing in any repossession, recovery, storage, repair, sale, re-lease, or other disposition of the Equipment including reasonable attorney's fees resulting from Defendant's default; plus

  ▪ The present value of the estimated residual value of the Equipment as of the expiration of the Lease, discounted at a rate equal to the 6 month U.S. Treasury Bill Rate as of the repossession date; less the amount received by Farm Credit Leasing upon the sale or re-lease of the Equipment, if any.

10.   Admit that on or about July 24, 2017, Defendant entered into a lease schedule with Farm Credit Leasing in connection with the Master Lease, as evidenced by that certain Schedule A identified as contract 001-0088777-000 dated on July 24, 2017, executed and delivered by Defendant in favor of Farm Credit Leasing (the "88777 Schedule"), for the purpose of leasing a Deutz Fahr Agrotron Tractor, model number 7250, serial number WSXV910200ID01109  (The

---

[2] As defined therein.

"88777 Tractor"), pursuant to the terms and conditions as more specifically identified therein and that a true and correct copy of the 88777 Schedule is attached as **Exhibit 2.**

11.     Admit that pursuant to the 88777 Schedule, Defendant agreed to make one payment of $47,700.00 in July 2017, followed by five consecutive annual payments of $46,829.17 commencing in July 2018. According to the plain language of the Master Lease and 88777 Schedule, Defendant's right to possession of the 88777 Schedule expires upon the earlier of the Defendant defaulting on the Master Lease or 88777 Schedule, or Farm Credit Leasing's receipt of Defendant's final lease payment at the end of the term in August 2022. Defendant agreed to an end-of-lease residual and purchase option price of $1.00.

12.     Admit that although unnecessary because the transaction involving the 88777 Tractor was a lease under Article 2A of the UCC rather than a loan governed by Article 9 of the UCC, on or about July 25, 2017, Farm Credit Leasing caused a UCC-1 Financing Statement identifying the 88777 Tractor to be filed with the Arkansas Secretary of State, file number 40000152664452 (the "88777 Financing Statement") and that a true and correct copy of the 88777 Financing Statement is attached as **Exhibit 3**.

13.     Admit that Defendant failed to adhere to his payment obligations under the 88777 Schedule and is in default. Accordingly, and pursuant to the terms and conditions set forth in the Master Lease, Farm Credit Leasing is entitled to recover the amounts due under the terms of the 88777 Schedule as of January 4, 2019, of not less than $238,361.49, in addition to prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred, and Farm Credit Leasing is entitled to recover the 88777 Tractor.

14.     Admit that on or about August 1, 2017, Defendant entered into an equipment lease agreement with Northland Capital Financial Services, LLC ("Northland Capital") as evidenced by

that certain Equipment Master Lease Agreement dated August 1, 2017, identified as contract number 16538-001, executed and delivered by Defendant in favor of Northland Capital (the "16538 Lease"; collectively with the Master Lease and 88777 Schedule, the "Leases"), for the purpose of leasing a 2015 Deutz Fahr Agrotron Tractor, model number 7250, serial number WSXV910200ID10724 (the "16538 Tractor"; together with the 88777 Tractor, the "Equipment"), pursuant to the terms and conditions as are more specifically identified therein. A true and correct copy of the 16538 Lease is attached as **Exhibit 4** and is incorporated by reference.

15.     Admit that subsequent to entering the 16538 Lease, Northland Capital assigned the 16538 Lease to Farm Credit Leasing as evidenced by that certain Participation Agreement by and between Northland Capital and Farm Credit Leasing dated July 14, 2009, and that certain Participation Certificate identifying the 16538 Tractor. A true and correct copy of the Participation Certificate evidencing the assignment to Farm Credit Leasing is attached as **Exhibit 5** and is incorporated by reference.

16.     Admit that according to Paragraph 8 of the 16538 Lease, Defendant agreed that he will "cause the Equipment[3] to be installed, operated and maintained: (i) SOLELY FOR BUSINESS AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (ii) only in the ordinary course of [Defendant's] business . . . (iv) in accordance with applicable manuals and instructions . . . ."

17.     Admit that according to Paragraph 9 of the 16538 Lease, Defendant agreed that the 16538 Tractor would remain at the address identified in the 16538 Lease.

18.     Admit that pursuant to Paragraph 16 of the 16538 Lease, Defendant shall be in default if:

---

[3] As defined herein.

CORE/3009126.0135/153045735.1

- He fails to pay rent or any other sum to be paid under the 16538 Lease as and when due; or

- An event of default shall occur under any Lease or other obligation Defendant owes to Farm Credit Leasing.

19.     Admit that paragraph 17 of the 16538 Lease further provides that upon a default, Farm Credit Leasing shall have the right, in its sole discretion, to exercise its remedies, which include but are not limited to:

- Declaring all amounts payable and to become payable to be immediately due and payable and to exercise all rights and remedies available in the 16538 Lease or otherwise available by law;

- Proceeding by appropriate court actions to enforce performance by Defendant or to recover from Defendant any and all damages and expenses which Farm Credit Leasing sustains by reason of Defendant's default or on account of Farm Credit Leasing's enforcement of remedies under the 16538 Lease, including without limitation reasonable attorneys' fees; and

- Taking possession of or disabling the 16538 Tractor.

20.     Admit that pursuant to the 16538 Lease, Defendant agreed to make one payment of $50,000.00 in August 2017, followed by five consecutive annual payments of $46,481.68 commencing in July 2018. According to the plain language of the 16538 Lease, Defendant's right to possession of the 16538 Tractor expires upon the earlier of the Defendant defaulting on the 16538 Lease, or Farm Credit Leasing's receipt of Defendant's final lease payment at the end of the term in July 2022. Defendant agreed to an end-of-lease residual and purchase option price of $101.00.

21.     Admit that to perfect its interest in the 16538 Tractor, a UCC-1 Financing Statement identifying the 16538 Tractor was filed with the Arkansas Secretary of State on August 29, 2017, file number 40000154575899 (the "16538 Financing Statement"). A true and correct copy of the 16538 Financing Statement is attached as **Exhibit 6** and is incorporated by reference.

CORE/3009126.0135/153045735.1

22.     Admit that Defendant failed to adhere to his payment obligations under the 16538 Lease and is in default. Accordingly, and pursuant to the terms and conditions set forth in the 16538 Lease, Farm Credit Leasing is entitled to recover the amounts due under the terms of the 16538 Lease, as of January 4, 2019, of not less than $232,509.40, in addition to prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred, and Farm Credit Leasing is entitled to recover the 16538 Tractor.

23.     Admit that as a consequence of Defendant's defaults, Farm Credit Leasing issued a Notice of Default to Defendant on January 24, 2019, and that a true and correct copy of the Notice of Default is attached as **Exhibit 7**. Defendant ignored Farm Credit Leasing's correspondence and failed to cure the defaults.

24.     Admit that Defendant is in default and is in breach of the Leases. Consequently, Farm Credit Leasing is entitled to exercise its remedies afforded under the Leases and state law. Such remedies include, without limitation, recovering the total amounts due under the terms of the Leases as of January 4, 2019, of not less than $470,870.89, plus prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred, and taking possession of the Equipment.

25.     Admit that Farm Credit Leasing and Defendant are parties to the Leases, each of which constitutes an enforceable contract.

26.     Admit that Farm Credit Leasing has performed all conditions precedent as required of it pursuant to the Leases.

27.     Admit that Defendant has breached the Leases by failing to make the required payments due to Farm Credit Leasing.

28.     Admit that as a direct and proximate result of Defendant's ongoing and uncured defaults, Farm Credit Leasing has suffered damages as of January 4, 2019, of not less than

$470,870.89, plus prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred, and it is entitled to possession of the Equipment.

29.     Admit that Farm Credit Leasing leased the Equipment to Defendant, who received and utilized, and continues to utilize, the Equipment.

30.     Admit that Demand has been made for payment but Defendant has failed and refused to make payment.

31.     Admit that Defendant has been unjustly enriched in the amount of at least, as of January 4, 2019, of not less than $470,870.89, plus prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred, and it would be unjust for Defendant to retain the benefits received from Farm Credit Leasing without payment.

32.     Admit that Pursuant to the terms and conditions of the Leases, Farm Credit Leasing is entitled to possession of the Equipment upon a default of Defendant's obligations to Farm Credit Leasing.

33.     Admit that Defendant took possession of the Equipment at or about the time he executed  acceptance certificates, as evidenced by that certain: (a) Delivery and Acceptance Certificate for the 88777 Tractor, executed by Defendant and dated July 24, 2017; and (b) Delivery and Acceptance Certificate for the 16538 Tractor, executed by the Defendant and dated August 25, 2017 (collectively, the "Delivery Certificates"), and that a true and correct copy of the Delivery Certificates are attached as **Exhibit 8** and is incorporated by reference.

34.     Admit that Defendant is in breach of his obligations under the Leases by failing to make the required payments due to Farm Credit Leasing.

35.     Admit that Defendant has not cured the defaults under the Leases.

36.     Admit that Defendant is no longer entitled to use and possess the Equipment, he is wrongfully detaining it, he is seriously impairing Farm Credit Leasing's ownership interest in the Equipment, and he is using the Equipment in a manner that is inconsistent with the parties' contractual arrangement.

37.     Admit that the Equipment constitutes agricultural equipment that can be easily transferred, disassembled, separated, moved at will, concealed in numerous locations, and sold, all of which to frustrate the exercise of Farm Credit Leasing's bargained-for remedies.

38.     Admit that the Equipment is of such a nature that is depreciate in value through continued use and as it ages. Thus, its resale value will steadily decline as it is used over a period of time. Farm Credit Leasing therefore expects that if Defendant continues to possess and use the Equipment, the value of Farm Credit Leasing's interest in the Equipment will steadily and irretrievable erode, which harms Farm Credit Leasing and its efforts to recover and preserve the economic usefulness of the Equipment.

39.     Admit that Farm Credit Leasing is entitled to an order (i) directing Defendant to deliver, or cause to be delivered, the Equipment to a location to be designated by Farm Credit Leasing, or such other locations as agreed by the parties; (ii) directing that the Equipment be immediately and permanently seized and taken from the possession of Defendant; and (iii) directing that the Equipment be delivered to Farm Credit Leasing or its designated agent

Respectfully submitted,

_____
Henry C. Shelton, III (BPR # 008207)
ADAMS AND REESE LLP
Crescent Center
6075 Poplar Avenue, Suite 700
Memphis, Tennessee 38119

-20-

Phone  (901) 525-3234
Fax      (901) 524-5419
Henry.Shelton@arlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the following party by Certified Mail, Return Receipt Requested, this _____ day of ___, 2019, to:

John Ogles
OGLES LAW FIRM, P.A.
200 S. Jeff Davis
P.O. Box 891
Jacksonville, AR 72078
(501) 982-8339
jogles@aol.com

_____
  Henry C. Shelton, III

CORE/3009126.0135/153045735.1