**0.THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**FARM CREDIT LEASING SERVICES CORPORATION** **PLAINTIFF**

**v.** **Case No. 4:19-cv-00280-KGB**

**TODD WELDON SMITH** **DEFENDANT**

**ORDER**

Before the Court is plaintiff Farm Credit Leasing Services Corporation's ("Farm Credit") motion to dismiss defendant Todd Weldon Smith's counterclaim (Dkt. No. 25). Also pending before the Court is a motion for declaratory judgment filed by Mr. Smith (Dkt. No. 39). Based upon the parties' filings, the Court directed the parties to file status reports regarding this action (Dkt No. 42). The parties have now done so (Dkt. Nos. 43, 44). For the following reasons, the Court denies Mr. Smith's motion for declaratory judgment (Dkt. No. 39) and grants Farm Credit's motion to dismiss and dismisses without prejudice Mr. Smith's counterclaim (Dkt. No. 25). The Court has under advisement Farm Credit's motion to enforce settlement (Dkt. No. 45).

**I. Factual And Procedural History**

This is a breach-of-contract case. Farm Credit commenced this action on April 19, 2019, seeking amounts allegedly owed under two commercial equipment leases with Mr. Smith (Dkt. No. 1). Thereafter, Farm Credit sought leave to file an amended complaint (Dkt. No. 18), which Mr. Smith did not oppose, and the Court granted on February 5, 2020 (Dkt. No. 19). Farm Credit filed its amended complaint on February 7, 2020, which narrowed the scope of the case by removing the allegations and claims related to one of the two commercial equipment leases (Dkt. No. 20).

In the amended complaint, Farm Credit alleges that, on August 1, 2017, Mr. Smith entered into an equipment lease agreement with Northland Capital Financial Services, LLC ("the Lease"), for the purpose of leasing a 2015 Deutz Fahr Agrotron Tractor, Serial Number WSXV910200ID10724 ("the Tractor") (*Id.*, ¶ 6). The Lease was subsequently assigned to Farm Credit (*Id.*, ¶ 7). Farm Credit alleges that, under the terms and conditions of the Lease, Mr. Smith agreed to make one payment of $50,000.00 in August 2017, followed by five consecutive annual payments of $46,481.68, beginning in July 2018 (*Id.*, ¶ 12). According to Farm Credit, Mr. Smith failed to adhere to his payment obligations under the Lease and is in default (*Id.*, ¶ 14). Based on these allegations, Farm Credit asserts claims for breach of contract, unjust enrichment, and replevin and seeks damages in the amount of $238,888.62, as well as possession of the Tractor (*Id.*, ¶¶ 17–34).

On February 10, 2020, Mr. Smith filed an answer to amended complaint and counterclaim (Dkt. No. 22). In his counterclaim, Mr. Smith asserts that "Charles Schindler was the agent for Plaintiff and subsequently was convicted of fraud." (*Id.*, ¶ 24). Mr. Smith attached to his answer to amended complaint and counterclaim what he represents to be a copy of the indictment charging Mr. Schindler with "defraud[ing] financial institutions, farm equipment manufacturers, vendors, and farmers in the Northern District of Mississippi and elsewhere by taking money from financial institutions intended to pay for leased farm equipment and not delivering the farm equipment to the farmers." (*Id.*, at 18). Mr. Smith also attached to his answer to amended complaint and counterclaim what he represents to be a copy of the judgment in Mr. Schindler's criminal case, which indicates that he pled guilty to wire fraud and was sentenced to 72 months of imprisonment and 3 years of supervised release, and was ordered to pay $4,397,615.23 in restitution (*Id.*, at 8–15).

Mr. Smith explains that, on April 27, 2016, he leased a tractor from BNP Paribas Leasing Solutions ("BNP") and that Mr. Schindler was the agent for BNP (*Id.*, ¶ 25). Mr. Smith attached to his answer to amended complaint and counterclaim what he represents to be a copy of the Acceptance Certificate for this tractor (*Id.*, at 24). Mr. Smith believes that "the lease was changed many times by Charles Schindler." (*Id.*, ¶ 26). Mr. Smith maintains that neither "Charles Schindler nor the Plaintiff had a lease agreement with Defendant involving the 2015 tractors," and that he "never received these tractors." (*Id.*, ¶ 27). Mr. Smith claims that "Plaintiff was aware of the criminal conduct of Charles Schindler," and that, "[d]espite being aware of Charles Schindler's criminal conduct, Plaintiff filed suit against Defendant." (*Id.*, ¶¶ 28, 29). Mr. Smith represents that "[t]he service of the Plaintiff's complaint against Defendant caused him to become so ill and stressed that he was admitted into the hospital for over four days," and that he "has incurred medical bills, mental anguish, and pain and suffering." (*Id.* ¶ 30). Finally, Mr. Smith claims that "Plaintiff has been aware throughout this litigation that the filing of the lawsuit was improper and meritless." (*Id.*, ¶ 31).

Based on these allegations, Mr. Smith asserts counterclaims for abuse of process, outrage, deceit, and violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p (*Id.*, ¶¶ 32–35). Mr. Smith seeks compensatory and punitive damages for alleged damage to his reputation, as well as mental anguish, pain, and suffering (*Id.*, ¶¶ 36–37).

On March 2, 2020, Farm Credit filed a motion to dismiss Mr. Smith's counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 25). Mr. Smith filed a response in opposition to the motion on March 16, 2020 (Dkt. No. 29).

On June 17, 2020, Mr. Smith filed a motion for declaratory judgment (Dkt. No. 39). Farm Credit filed a response (Dkt. No. 40), and Mr. Smith replied (Dkt. No. 41). By Order of the Court, the parties also filed status reports recently (Dkt. Nos. 42, 43, 44).

On February 19, 2021, Farm Credit filed a motion to enforce settlement and request for attorney's fees, which Mr. Smith opposed on March 8, 2021 (Dkt. Nos. 45, 46). Farm Credit replied on March 19, 2021 (Dkt. No. 47).

## II. Motion For Declaratory Judgment

Mr. Smith filed a motion for declaratory judgment, essentially requesting that this Court declare the rights and responsibilities of entities with respect to language in a settlement agreement being negotiated between Farm Credit and Mr. Smith (Dkt. No. 39). For the following reasons, the Court denies the motion (Dkt. No. 39).

In his motion, Mr. Smith puts before the Court the status of the parties' settlement discussions in this case. The Court observes that no party has moved to dismiss, or informed the Court that this action should be dismissed, on the basis of settlement. Further, the Court has not yet dismissed this action on the basis of settlement. As a result, it is unclear to the Court on what basis Mr. Smith asserts this Court has authority to grant a declaratory judgment such as he seeks.

In *Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375 (1994), the Supreme Court held that district courts do not have inherent power, that is, automatic ancillary jurisdiction, to enforce an agreement settling federal litigation. *Miener By & Through Miener v. Missouri Dep't of Mental Health*, 62 F.3d 1126, 1127 (8th Cir. 1995) (citing *Lucille v. City of Chicago,* 31 F.3d 546, 548 (7th Cir.1994), *cert. denied,* 513 U.S. 1154 (1995); *Sheng v. Starkey Labs., Inc.,* 53 F.3d 192, 195 (8th Cir.1995)). Ancillary jurisdiction to enforce a settlement agreement exists only "if the parties' obligation to comply with the terms of the settlement

agreement [is] made part of the order of dismissal—either by. . . a provision 'retaining jurisdiction' over the settlement agreement [ ] or by incorporat[ion of] the terms of the settlement agreement in the order." *Kokkonen,* 511 U.S. at 380-81. Ancillary jurisdiction to enforce the agreement exists in these situations because breach of the agreement violates the district court's judgment. *Id.* Absent action making the settlement agreement part of a dismissal order, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.*

The Court acknowledges that Farm Credit recently filed a motion to enforcement settlement (Dkt. No. 45). The Court has that motion under advisement.

**III. Motion To Dismiss Counterclaim**

Because the parties have not informed the Court of final settlement of the claims and counterclaims in this matter, the Court turns to examine the pending motion to dismiss Mr. Smith's counterclaim (Dkt. No. 25).

**A. Legal Standard**

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims asserted in a pleading. *See Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555. Stated differently, the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A court considering a motion to dismiss must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences from those facts in favor of the non-moving party, here, Mr. Smith. *See Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 804 (8th Cir. 2013); *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 914 (8th Cir. 2001). However, a court need not credit conclusory allegations or "naked assertion[s] devoid of further factual enhancement." *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). Finally, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider documents or exhibits attached to a complaint, as well as matters of public and administrative record referenced in the complaint. *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008); *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006).

In short, "[a] complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

**B. Discussion**

Having carefully reviewed Farm Credit's motion to dismiss Mr. Smith's counterclaim, the applicable legal authorities, and the entire record in this matter, the Court determines that Mr. Smith's counterclaims fail to state a claim upon which relief can be granted and, therefore, are dismissed.

**1. Abuse Of Process**

Both parties assume that Arkansas law applies. To prevail on his abuse-of-process claim against Farm Credit, Mr. Smith is required to prove:

> (1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding.

*S. Ark. Petroleum Co. v. Schiesser*, 36 S.W.3d 317, 323 (Ark. 2001) (quoting *Routh Wrecker Serv., Inc. v. Washington*, 980 S.W.2d 240, 243 (Ark. 1998)). "The key to an abuse-of-process claim is improper use of process after issuance, even when issuance has been properly obtained." *Wal-Mart Stores, Inc. v. Binns*, 15 S.W.3d 320, 323 (Ark. 2000) (citing *Union Nat. Bank of Little Rock v. Kutait*, 846 S.W.2d 652, 654 (Ark. 1993)). Thus, to sustain an abuse-of-process claim, "there must have been issuance of process subsequent to initiation of suit, and the additional process must have been utilized for a coercive or improper purpose." *Kutait*, 846 S.W.2d at 655; *see also Sundeen v. Kroger*, 133 S.W.3d 393, 399 (Ark. 2003) ("[I]t is the purpose for which the process is used, once issued, that is important in reaching a conclusion."). "Abuse of process is a narrow tort." *Nat'l Bank of Ark. v. River Crossing Partners*, LLC, 385 S.W.3d 754, 762 (Ark. 2011). As distinguished from malicious prosecution, abuse of process is "somewhat in the nature of extortion or coercion." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 844–45 (8th Cir. 2009) (quoting *Kutait*, 846 S.W.2d at 654).

The Court finds that there was no "process" abused by Farm Credit *subsequent to the initiation of this action* and that, therefore, Mr. Smith has not established the second element of his abuse-of-process claim.

To be liable for the tort of abuse of process, a party must have abused *process* in the sense of a summons, writ, rule, order, execution, warrant, or mandate issued by a court during the

pendency of an action. *See Panther Mountain Land Dev., LLC v. Nat'l Bank of Ark.*, No. 4:12CV00619 JLH, 2013 WL 12149256, at *5 (E.D. Ark. Jan. 28, 2013). Arkansas courts have consistently refused to extend the tort to include the filing of a vexatious or malicious action. *See Carmical v. McAfee*, 7 S.W.3d 350, 360–61 (Ark. 1999) ("Proof that a litigant filed a vexatious lawsuit is not sufficient by itself to prove that the litigant committed abuse of process because there must also be proof of a specific abusive use of process."); *McNair v. McNair*, 870 S.W.2d 756, 760 (Ark. 1994) ("Showing that a vexatious lawsuit was filed is not enough by itself. There must be a specific abusive use of 'process' . . . ."); *see also Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 845 (8th Cir. 2009) ("The test of process abuse is not whether the process was originally issued with malice and without probable cause. The remedy in that situation would be an action for malicious prosecution . . . ." (alteration in original) (quoting *Smith v. Nelson*, 501 S.W.2d 769, 770 (Ark. 1973))).

For example, in *Kutait*, the Supreme Court of Arkansas found that abuse of process did not occur on the facts before it, reasoning that:

> The only process issued in the 1987 suit was the summons which accompanied the complaint served on Dr. Kutait. It was the fact of the filing of the lawsuit against him which formed the basis for Dr. Kutait's complaint and not a specific abusive use of any "process" like the issuance of summons, serving of an arrest warrant, or improper actions in the process used to obtain discovery.
>
> In each of our prior cases we have had some specific act of this nature to consider in determining that the elements of abuse of process were met, and we have not extended the tort to include the filing of a vexatious action.

846 S.W.2d at 654 (citations omitted). The Arkansas Supreme Court went on to reason that:

> Were we to hold that the filing of the action satisfied the "process" requirement we would put ourselves in the position of holding that one may be liable for the filing of an action with probable cause. Even if the Bank had an ulterior motive for suing Dr. Kutait, and even if that motive had been improper, we would not wish to say that any citizen is precluded from bringing an action when there is probable cause

> to do so. Abuse of process issued thereafter is a different matter, and that did not occur here.

*Id.* at 655.

Here, Mr. Smith has not alleged that Farm Credit abused any process in the sense required for the tort of abuse of process. Mr. Smith has not alleged that Farm Credit, in the course of these proceedings, caused, in an abusive manner, the Court to issue some writ, order, execution, warrant, or mandate. Nor has Mr. Smith alleged an abusive or coercive act subsequent to the issuance of a writ, order, execution, warrant, or mandate. Instead, Mr. Smith merely alleges that Farm Credit pursued this action in bad faith. Litigating in a vexatious manner is not actionable under the tort of abuse of process.

Mr. Smith's reliance on *Schiesser* is inapposite. In that case, an employee brought claims against her former employer for malicious prosecution and abuse of process and, following a jury trial, was awarded a $360,000.00 judgment. *See Schiesser*, 36 S.W.3d at 495. The employer appealed, and the Arkansas Supreme Court found, as relevant here, that the evidence supported the jury's finding that the employer abused process. *See id.* at 501–02. Specifically, the *Schiesser* court held that the evidence demonstrated that the employer abused process when its owner filed criminal charges against the employee for allegedly stealing $7,800.00 and testified as such before the magistrate judge at the probable-cause hearing, as the owner admitted that his intention in filing the charges was to get his money back, and he knew that the employee could not have stolen the money on several occasions for which she was accused. *See id.* at 502. From this, the *Schiesser* court reasoned that "there was substantial evidence from which the jury could conclude that [the employer] used the criminal process, after its issuance, to accomplish an ulterior purpose for which the process was not designed." *Id.* at 324.

The facts of this case do not present a similar situation. Mr. Smith has not asserted a claim for malicious prosecution in any pleading in this case, nor has he alleged that Farm Credit used a judicial process to extort or coerce him.[1] Accordingly, Mr. Smith's abuse-of-process counterclaim fails and is dismissed.

**2. Outrage**

To establish a claim for outrage under Arkansas law, a plaintiff must demonstrate:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his or her conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*FMC Corp. v. Helton*, 202 S.W.3d 490, 504 (Ark. 2005) (quoting *Allen v. Allison*, 155 S.W.3d 682, 691 (Ark. 2004)). While "[t]he type of conduct that meets the standard for outrage must be determined on a case-by-case basis," *Crockett v. Essex*, 19 S.W.3d 585, 589 (Ark. 2000), "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Palmer v. Ark. Council on Econ. Educ.*, 40 S.W.3d 784, 791–92 (Ark. 2001) (quoting *Givens v. Hixson*, 631 S.W.2d 263, 264 (Ark. 1982))). The tort of outrage requires "clear-cut proof," *Renfro v. Adkins*, 914 S.W.2d 306, 312 (Ark. 1996),

[1] In responding to Farm Credit's motion to dismiss, Mr. Smith claims, for the first time, that Farm Credit "filed a claim with the U.S. Attorney but refuses to give [it] to Defendant." (Dkt. No. 30, at 2). "However, it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Further, even if the Court were to consider this allegation, merely alleging that Farm Credit "filed a claim" with the United States Attorney's Office and that Farm Credit refuses to show Mr. Smith a copy of the claim is woefully insufficient to establish an abuse of process. Indeed, the Court could not infer from such an allegation that Farm Credit used a *judicial* process, let alone that it *abused* such process.

and "[m]erely describing the conduct as outrageous does not make it so," *Crockett*, 19 S.W.3d at 589. "Recognition of the tort of outrage should not and does not open the doors of the courts to every slight insult or indignity one must endure in life." *Travelers Ins. Co. v. Smith*, 991 S.W.2d 591, 595 (Ark. 1999).

In support of his tort-of-outrage claim, Mr. Smith alleges that "Plaintiff has filed a lawsuit against Defendant that is not true." (Dkt. No. 22, ¶ 33). Mr. Smith elaborates: "Defendant never received any 2015 tractors. Defendant is not in possession of any tractor and Plaintiff was aware of this when it filed suit. Defendant now has severe health issues due to Plaintiff's actions and is suffering from severe emotional distress proximately caused by Plaintiff." (*Id.*)

The Court finds that Mr. Smith's allegations, even if proven, do not establish that Farm Credit's conduct was so extreme or outrageous as to rise to the level of "outrage." Farm Credit commenced this action to recover amounts allegedly owed under two commercial equipment leases.[2] Mr. Smith accuses Farm Credit of falsely claiming to have leased him two 2015 Deutz Fahr Agrotron Tractors. Such an allegation, even if true, does not describe conduct so "extreme and outrageous" as to go "beyond all possible bounds of decency" and to be regarded as "utterly intolerable in a civilized community." *Helton*, 202 S.W.3d at 504 (quoting *Allen*, 155 S.W.3d at 691); *cf. McQuay v. Guntharp*, 963 S.W.2d 583, 586 (Ark. 1998) (finding outrage where defendant-doctor fondled plaintiffs' breasts in a sexually suggestive manner under the ruse of needing to check their heart rate or lungs). Notably, Mr. Smith has not cited any cases, and the Court has found none, supporting his contention that filing a complaint with knowingly false allegations is outrageous conduct. *Cf. Marlar v. Daniel*, 247 S.W.3d 473, 477 (Ark. 2007)

[2] As noted above, Farm Credit subsequently dropped the allegations and claims related to one of the equipment lease agreements.

("Certainly, the allegation that an expert hired by the opposing party in a lawsuit intentionally issued an inaccurate report falls far short of alleging conduct so extreme and outrageous as to be considered intolerable in a civilized society.").

Mr. Smith's reliance on *Cordes v. Outdoor Living Center, Inc.*, 781 S.W.2d 31 (Ark. 1989), is misplaced. Mr. Smith represents that, in *Cordes*, the Arkansas Supreme Court allowed a debtor to proceed on his tort-of-outrage claim against his secured creditor (Dkt. No. 30, at 2–3). In fact, the court did just the opposite, holding that summary judgment was properly awarded to defendant-creditor on plaintiff-debtor's outrage claim because the creditor's allegation that the debtor caused him to be arrested, even if true, "did not rise to a level sufficient to support a claim for damages for the tort of outrage." *Cordes*, 781 S.W.2d at 35.

For these reasons, Mr. Smith's outrage counterclaim fails and is dismissed.

**3. Deceit**

To establish fraud, misrepresentation, or deceit under Arkansas law, a plaintiff must show, by a preponderance of the evidence:

> (1) a false representation of a material fact, (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation, (3) intent to induce action or inaction in reliance upon the representation, (4) justifiable reliance, and (5) damage suffered as a result of that reliance.

*Wheeler Motor Co. v. Roth*, 867 S.W.2d 446, 449 (Ark. 1993). The Arkansas Supreme Court has explained that justifiable reliance means that "the plaintiff acted or did not act by reason of the defendant's misrepresentation." *SEECO, Inc. v. Hales*, 22 S.W.3d 157, 172 (Ark. 2000).

Here, Mr. Smith alleges that Farm Credit "has made a false misrepresentation of material fact that Defendant has in his possession two 2015 tractors." (Dkt. No. 22, ¶ 34). Mr. Smith further alleges that he "has sustained damages proximately caused by Plaintiff and Plaintiff knew when it sued Defendant that its allegations were false." (*Id.*).

Mr. Smith has not alleged that he *relied* on Farm Credit's representation that he leased and has in his possession two 2015 Deutz Fahr Agrotron Tractors and is, therefore, unable to establish the fourth element of a claim for deceit. There being no allegation of justifiable reliance, Mr. Smith's counterclaim for deceit fails and is dismissed.

**4. Violation Of The FDCPA**

The FDCPA prohibits abusive debt collection practices by "debt collectors." *See* 15 U.S.C. § 1692(e). The term "debt collector" includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," as well as "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Additionally, for the limited purpose of 15 U.S.C. § 1692f(6), a debt collector "also includes" a "business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).

"For an FDCPA claim against a 'debt collector' to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege facts that make it plausible to believe that the defendant is in fact a debt collector as defined by the FDCPA." *Givens v. Citimortgage, Inc.*, No. CIV. PJM 10-1249, 2011 WL 806463, at *2 (D. Md. Feb. 28, 2011). Here, Mr. Smith alleges that Farm Credit violated the FDCPA by filing suit against him to recover amounts allegedly owed under two commercial equipment leases, which, according to Mr. Smith, are fraudulent (Dkt. No. 22, ¶ 35).

It is well-settled that creditors, with few exceptions, are not liable under the FDCPA. *See Marshall v. Deutsche Bank Nat. Tr. Co.*, 445 F. App'x 900, 901 (8th Cir. 2011) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the

consumer's creditors, . . . as long as the debt was not in default at the time it was assigned." (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985))); *Schmitt v. FMA All.*, 398 F.3d 995, 998 (8th Cir. 2005) (observing that "a distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all" (alteration omitted) (quoting *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004))); *see also Martinez v. Citimortgage, Inc.*, No. 2:14-CV-329, 2015 WL 12734040, at *4 (S.D. Tex. Mar. 10, 2015) (explaining that, "generally, the FDCPA does not apply to creditors" (quoting *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 777 (E.D.N.C. 2011))); *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709, 717 (E.D. Va.) (reasoning that "creditors are not liable under the FDCPA"), *aff'd sub nom. Scott v. Wells Fargo & Co.*, 67 F. App'x 238 (4th Cir. 2003).

Mr. Smith's pleadings demonstrate that Farm Credit was, at all relevant times, acting as a creditor to collect a debt owed to itself, not to a third party. *See* 15 U.S.C. § 1692a(4) (defining "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed," but excluding from that definition "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another"). There is no allegation that Farm Credit is collecting (or attempting to collect) its debt with the aid of a third party, nor is there any allegation that Mr. Smith was in default at the time the commercial equipment leases were assigned to Farm Credit. Additionally, Mr. Smith has not cited any cases, and the Court has found none, holding that filing suit in federal court is a debt-collection activity within the meaning of the FDCPA.

It follows that Farm Credit is not a debt collector under 15 U.S.C. § 1692a(6) and did not participate in debt-collection activities by commencing this action for breach of contract. Mr. Smith's FDCPA counterclaim against Farm Credit fails and is dismissed.

**IV. Conclusion**

For the foregoing reasons, the Court denies Mr. Smith's motion for declaratory judgment (Dkt. No. 39) and grants Farm Credit's motion to dismiss Mr. Smith's counterclaim (Dkt. No. 25). The Court dismisses without prejudice Mr. Smith's counterclaim against Farm Credit. The Court has under advisement Farm Credit's motion to enforce settlement (Dkt. No. 45).

It is so ordered this 30th day of March, 2021.

Kristine G. Baker
United States District Judge