0.THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**FARM CREDIT LEASING SERVICES CORPORATION**                                **PLAINTIFF**

v.                             Case No. 4:19-cv-00280-KGB

**TODD WELDON SMITH**                                                       **DEFENDANT**

**ORDER**

Before the Court are a motion to enforce settlement and motion for dismissal of action filed by Farm Credit Leasing Services Corporation ("Farm Credit") (Dkt. Nos. 45, 49). The Court denies Farm Credit's motion to enforce settlement (Dkt. No. 45). The Court takes under advisement Farm Credit's motion for dismissal of action (Dkt. No. 49). Within 14 days from entry of this Order, Farm Credit must file with the Court to inform the Court whether, given the Court's ruling on the motion to enforce settlement and the Court's denial of Farm Credit's request that the Court incorporate into a dismissal Order the terms of the purported settlement, Farm Credit persists in its request that this Court dismiss this action.

**I.      Analysis**

In *Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375 (1994), the Supreme Court held that district courts do not have inherent power, that is, automatic ancillary jurisdiction, to enforce an agreement settling federal litigation. *Miener By & Through Miener v. Missouri Dep't of Mental Health*, 62 F.3d 1126, 1127 (8th Cir. 1995) (citing *Lucille v. City of Chicago,* 31 F.3d 546, 548 (7th Cir.1994), *cert. denied,* 513 U.S. 1154 (1995); *Sheng v. Starkey Labs., Inc.,* 53 F.3d 192, 195 (8th Cir.1995)). Ancillary jurisdiction to enforce a settlement agreement exists only "if the parties' obligation to comply with the terms of the settlement agreement [is] made part of the order of dismissal—either by. . . a provision 'retaining jurisdiction'

over the settlement agreement [ ] or by incorporat[ion of] the terms of the settlement agreement in the order." *Kokkonen,* 511 U.S. at 380-81.  Ancillary jurisdiction to enforce the agreement exists in these situations because breach of the agreement violates the district court's judgment.  *Id.*  Absent action making the settlement agreement part of a dismissal order, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.*  Farm Credit requests that this Court enforce the terms of the settlement agreement or dismiss this action on its motion and essentially make the contemplated settlement agreement a part of the Court's order of dismissal (Dkt. Nos. 45, 49).  Farm Credit cites no basis for this Court's jurisdiction to do either of these.

Even if this Court has jurisdiction to rule on Farm Credit's motion to enforce settlement agreement or to dismiss the action on the terms Farm Credit requests, the Court is skeptical the parties reached a meeting of the minds necessary to enforce settlement, based on the record before the Court.  Basic principles of contract formation govern the existence and enforcement of settlement agreements.  *Chaganti & Assoc., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006) (citing *In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 623 (8th Cir. 2001)).  "Courts will enforce contracts of settlement if they are not in contravention of law." *DaimlerChrysler Corp. v. Smelser*, 289 S.W.3d 466, 470 (Ark. 2008) (citing *McCoy Farms, Inc. v. J & M McKee*, 563 S.W.2d 409 (1978)).  "The essential elements of a contract include (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations." *Id.* (citing *Ward v. Williams*, 118 S.W.3d 513, 521 (Ark. 2003)).  A court should keep in mind two legal principles when deciding whether a valid contract was entered into:  (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and (2) to make a contract there must be a meeting of the minds as to all terms, using objective

indicators. *Id.* (citing *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 80 (Ark. 2005)). Both parties must manifest assent to the particular terms of the contract. *DaimlerChrysler Corp.*, 289 S.W.3d at 470. Further, a party to a voluntary settlement agreement cannot avoid the agreement simply because the agreement ultimately proves to be disadvantageous or because he later feels that the amount of the settlement is unsatisfactory. *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985) (citing *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1227 (8th Cir. 1983)); *Rutherford v. Rutherford*, 98 S.W.3d 842, 845 (Ark. App. 2003) ("One party's displeasure with an agreement that she had previously entered into is no ground for relief.").

Despite Farm Credit's assertions, the evidence before the Court suggests that there was never a "meeting of the minds" between Farm Credit and Mr. Smith. Record evidence suggests that, on May 5, 2020, the parties, through their counsel, conducted settlement discussions that "contemplated a straightforward 'walk-away' agreement: the parties would dismiss and release their respective claims, ending the litigation." (Dkt. No. 45, at 1-2). The issue of Northland being included in the settlement arose near that time, resulting in further negotiation among counsel.

On May 12, 2020, counsel for Farm Credit emailed:

John,

Rather than go back-and-forth about the many issues raised in your email, F[arm] C[redit ]L[easing] will agree to proceed without your client releasing Northland. I understand from talking to Hank Shelton that you're OK with a mutual walk-away, where both sides release their respective claims. Please let us know if we have a deal.

(Dkt. No. 45-2).

In response, counsel for Mr. Smith wrote:

We do have an agreement. Do you know if your client reported my clients as a bad credit risk or anything similar?

(*Id.*).

Based on this exchange, Farm Credit prepared a draft settlement agreement and mutual release, which Mr. Smith's counsel found inadequate (Dkt. No. 45, ¶¶ 6-7). Then, on May 20, 2020, Mr. Smith sent his proposed agreement (Dkt. No. 45, ¶ 8, Ex. 45-4). Farm Credit made edits to the draft and then accepted and agreed to the agreement proposed by counsel for Mr. Smith (Dkt. No. 45, ¶ 8). On May 26, 2020, Mr. Smith's counsel stated *via* email, "*I think* I am ok with everything" (*Id.*, Ex. 45-6) (emphasis added). Farm Credit executed the proposed agreement and sent an executed version to Mr. Smith's counsel for Mr. Smith to execute in turn (*Id.*, ¶ 10). However, Farm Credit's "multiple requests to Mr. Smith inquiring about the status of a final executed agreement [] were ignored." (*Id.*, ¶ 11, Ex. 45-6). A few weeks later, on June 17, 2020, Mr. Smith filed his motion for declaratory judgment. On June 29, 2020, in response to Farm Credit's continued inquiries concerning Mr. Smith's intentions of signing the proposed settlement agreement, Mr. Smith's counsel responded, "You need to respond to my motion. I suspect we are being set up." (*Id.*, Ex. 45-6). That same day, Mr. Smith's counsel stated: "The only agreement is that you dismiss your client[']s baseless complaint and I will agree to dismiss our counterclaim and go after Northland. The release was not part of the agreement although I will agree if it does not affect our case against Northland." (*Id.*, Ex. 45-6). Farm Credit responded: "You think we agreed to dismiss claims without getting a release from you? It's a mutual release, which is what we discussed in emails. Even you included release language in your draft. The document you sent to us is entitled 'Mutual Release.'" (*Id.*).

These communications suggest to the Court that Mr. Smith and Farm Credit never had a "meeting of the minds," such that a binding settlement agreement was formed. Mr. Smith's actions in response to Farm Credit's attempts to finalize the proposed settlement agreement objectively show that his understanding of the proposed terms was contrary to the understanding put forward

4

by Farm Credit. Mr. Smith not only refused to execute the proposed settlement agreement, but he filed a motion for declaratory judgment, asking that this Court declare the rights and responsibilities of entities with respect to language in a settlement agreement then being negotiated between Farm Credit and Mr. Smith (Dkt. No. 39).

According to Mr. Smith, Mr. Smith is concerned that, if he executes the agreement contemplated by Farm Credit, he will release Northland anyway, despite his attempted carve out to preserve claims against Northland and Charles Schindler, because Farm Credit refuses to affirm it is not a subsidiary of Northland and *vice versa*, according to Mr. Smith (Dkt. No. 46, at 2). The proposed mutual release includes language intended to cover the signatories and any "past, present and future parent and subsidiary corporations, divisions, affiliates, partners, joint venturers, stockholders, predecessors, successors, assigns, officers, directors, employees, agents, or representatives. . . ." (Dkt. No. 49-1, at 1). Farm Credit takes the position that Mr. Smith's counsel drafted the release and that Farm Credit agreed to Mr. Smith's demands that Northland and Mr. Schindler be expressly excluded from the mutual release (Dkt. No. 47, at 1). Based upon the Court's review of the record, the Court has no information to assure it that Farm Credit has affirmed to Mr. Smith at any point that Farm Credit is not a subsidiary of Northland and *vice versa*.

For these reasons, the Court denies Farm Credit's motion to enforce settlement and is not inclined to grant Farm Credit's motion to dismiss this action on the terms Farm Credit demands (Dkt. Nos. 45, 49).

## II. Conclusion

The Court denies Farm Credit's motion to enforce settlement (Dkt. No. 45). The Court takes under advisement Farm Credit's motion for dismissal of action (Dkt. No. 49). Within 14 days from entry of this Order, Farm Credit must file with the Court to inform the Court whether,

given the Court's ruling on the motion to enforce settlement and the Court's denial of Farm Credit's request that the Court incorporate into a dismissal Order the terms of the purported settlement, Farm Credit persists in its request that this Court dismiss this action.

It is so ordered this 10th day of September, 2021.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge